UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ARLENE HODGES, | ) | |
| 8003 Belton Circle | ) | |
| Mechanicsville, VA 23116, | ) | Civil No. _____ |
| on behalf of herself, individually, and on behalf of | ) | |
| all others similarly situated, and on behalf of the | ) | |
| BON SECOURS Plan, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| v. | ) | |
| | ) | **CLAIM OF** |
| BON SECOURS HEALTH SYSTEM, INC., a | ) | **UNCONSTITUTIONALITY** |
| Maryland Non-profit Corporation, The BENEFIT | ) | |
| PLAN ADMINISTRATIVE COMMITTEE, *both* | ) | |
| *located at* | ) | |
| 1505 Marriottsville Road | ) | |
| Marriottsville, MD 21104-Howard County, | ) | |
| JOHN and JANE DOES 1-20, members of the | ) | |
| Benefit Plan Administrative Committee, each an | ) | |
| individual, and JOHN and JANE DOES 21-40, each | ) | |
| an individual, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## **Table of Contents**

I.      INTRODUCTION ............................................................................... 1

II.     JURISDICTION AND VENUE ......................................................... 4

III.    PARTIES ........................................................................................... 4

    A.    Plaintiff Arlene Hodges ........................................................... 4

    B.    Defendants ................................................................................ 5

IV.    THE BACKGROUND OF THE CHURCH PLAN EXEMPTION ................................ 6

    A.    The Adoption of ERISA ........................................................... 6

    B.    The Scope of the Church Plan Exemption in 1974 ................... 7

    C.    The Changes to the Church Plan Exemption in 1980 ............... 8

V.     BON SECOURS ............................................................................. 11

    A.    Bon Secours's Operations ...................................................... 11

    B.    The Bon Secours Plans ........................................................... 13

        1.    The Bon Secours Plans Meet the Definition of an ERISA
              Defined Benefit Plan ......................................................... 13

        2.    The Defendants Meet the Definition of ERISA Fiduciaries .................. 14

            a.    Nature of Fiduciary Status ......................................... 14

            b.    Defendants Are Each ERISA Fiduciaries .................. 15

        3.    The Bon Secours Plans Are Not Church Plans ..................... 16

            a.    Only Two Types of Plans May Qualify as Church
                  Plans and the Bon Secours Plans are Neither ............. 17

            b.    Even *if* the Bon Secours Plans Could Otherwise
                  Qualify as Church Plans under ERISA §§ 3(33)(A)
                  or (C)(i), they are Excluded From Church Plan
                  Status under ERISA § 3(33)(B)(ii) ............................. 22

        c.      Even if the Bon Secours Plans Could Otherwise
Qualify as Church Plans under ERISA, the Church
Plan Exemption, as Claimed By Bon Secours,
Violates the Establishment Clause of the First
Amendment of the Constitution, and is Therefore
Void and Ineffective ................................................. 22

VI.     CLASS ALLEGATIONS ......................................................... 23

     A.     Numerosity .................................................................... 24

     B.     Commonality ................................................................. 24

     C.     Typicality ...................................................................... 24

     D.     Adequacy ....................................................................... 25

     E.     Rule 23(b)(1) Requirements ........................................ 26

     F.     Rule 23(b)(2) Requirements ........................................ 26

     G.     Rule 23(b)(3) Requirements ........................................ 26

VII.    CAUSES OF ACTION .......................................................... 27

     COUNT I ................................................................................ 27

     (Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and
502(a)(3) Against Defendants Bon Secours, Defendant
Committee and John and Jane Does 1-20, the Committee
Member Defendants) ............................................................ 27

     COUNT II ............................................................................... 29

     (Claim for Violation of Reporting and Disclosure Provisions
Against Defendant Committee and John and Jane Does 1-
20, the Committee Member Defendants) ............................. 29

     1.     Summary Plan Descriptions .................................. 29

     2.     Annual Reports ...................................................... 29

     3.     Summary Annual Reports ..................................... 30

     4.     Notification of Failure to Meet Minimum Funding ............... 30

5.      Funding Notices ...................................................................... 31

COUNT III ............................................................................................................. 31

(Claim for Failure to Provide Minimum Funding Against
Defendant Bon Secours) ................................................................ 31

COUNT IV ............................................................................................................. 32

(Claim for Failure to Establish the Plan Pursuant to a Written
Instrument Meeting the Requirements of ERISA § 402
Against Defendant Bon Secours) .................................................. 32

COUNT V ............................................................................................................... 33

(Claim for Clarification of Future Benefits Under ERISA §§
502(a)(1)(B) and 502(a)(3) Against Defendant Bon
Secours) ........................................................................................ 33

COUNT VI .............................................................................................................. 33

(Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A)
Against Defendant Bon Secours, Defendant Committee,
and John and Jane Does 1-20, the Committee Member
Defendants) .................................................................................. 33

COUNT VII ............................................................................................................ 35

(Claim for Breach of Fiduciary Duty Against All Defendants) ........................ 35

1.      Breach of the Duty of Prudence and Loyalty .......................... 35

2.      Prohibited Transactions ........................................................ 36

3.      Failure to Monitor Fiduciaries ............................................... 38

COUNT VIII ........................................................................................................... 39

(Claim for Declaratory Relief That the Church Plan Exemption
Violates the Establishment Clause of the First Amendment
of the Constitution, and Is Therefore Void and Ineffective) .................. 39

A.     Not Necessary to Further Stated Purpose .......................................... 40

B.     Harms Workers ................................................................................. 40

C.    Puts Bon Secours's Competitors at an Economic Disadvantage ........................ 41

D.    Relieves No Genuine Religious Burden Imposed by ERISA ............................ 41

E.    Creates Government Entanglement with Alleged Religious Beliefs ................. 42

VIII.   PRAYER FOR RELIEF ................................................................................................ 42

Plaintiff Arlene Hodges, individually and on behalf of all those similarly situated, as well as on behalf of the Bon Secours Plans, as defined herein, by and through her attorneys, upon information and belief, hereby alleges as follows:

## I.    INTRODUCTION

1.      Defendant Bon Secours Health Systems, Inc., by and through its subsidiaries and/or affiliates ("Bon Secours" or "Defendant"), operates a healthcare conglomerate in six states and provides healthcare services in the communities it serves. This case concerns whether Bon Secours properly maintains its pension plans under the Employee Retirement Income Security Act ("ERISA"). As demonstrated herein, Bon Secours fails to do so, to the detriment of its over 22,000 employees who deserve better.

2.      As its name implies, ERISA was crafted to protect employee retirement funds. A comprehensive history of ERISA put it this way:

> Employees should not participate in a pension plan for many years only to lose their pension  . . . because their plan did not have the funds to meet its obligations. The major reforms in ERISA—fiduciary standards of conduct, minimum vesting and funding standards, and a government-run insurance program—aimed to ensure that long-service employees actually received the benefits their retirement plan promised.

James Wooten, THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, at 3 (U. Cal. 2004).

3.      This class action is brought on behalf of all participants and beneficiaries of seven Bon Secours Pension Plans that purport to be church plans, including the Memorial Regional Medical Center Pension Plan, (collectively referred to as the "Bon Secours Plans" or simply the "Plans").

4.      The Bon Secours Plans are defined benefit pension plans that are established, maintained, administered, and sponsored by Bon Secours (referred to as the "Bon Secours Plans" or simply the "Plans").

5.      Bon Secours is violating numerous provisions of ERISA—including, on information and belief, underfunding the Bon Secours Plans—while erroneously claiming that the Plans are exempt from ERISA's protections because they are "Church Plans." But the Bon Secours Plans do not meet the definition of a Church Plan under ERISA because Bon Secours plainly is not a church or a convention or association of churches and because the Bon Secours Plans were not established by a church or a convention or association of churches. That should be the end of the inquiry under ERISA, resulting in a clear finding that the Bon Secours Plans are not Church Plans.

6.      Even if a non-church entity such as Bon Secours were able to establish its own Church Plans, however, Bon Secours could not because substantially all of the participants in the Plans are *not* employed by either a church or an organization that is controlled by or associated with a church within the meaning ERISA.  Bon Secours is not controlled by a church, as the evidence will show. Moreover, Bon Secours is not associated with a church within the meaning of ERISA because it does not, as ERISA requires, "share common religious bonds and convictions" with a church.

7.      Bon Secours is a non-profit healthcare conglomerate, not unlike other non-profit healthcare conglomerates with which Bon Secours competes in its commercial healthcare activities. Bon Secours is not owned or operated by a church and does not receive funding from a church. No denominational requirement exists for Bon Secours employees. Indeed, Bon Secours tells prospective employees that any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of Bon Secours employees. In choosing to recruit and hire from the population at large, Bon Secours must also be willing to accept neutral, generally applicable regulations, such as ERISA, imposed to protect those employees' legitimate interests.

8.     If Bon Secours, a non-church organization, could itself establish a Church Plan, which Plaintiff disputes, the Court would be required to evaluate many levels of evidence to determine whether Bon Secours shares common "religious bonds and convictions" with a church.

9.     Moreover, if the Court weighed all this evidence and determined that Bon Secours did share such common religious bonds and convictions with a church, the Church Plan exemption would then be, as applied to Bon Secours, an unconstitutional accommodation under the Establishment Clause of the First Amendment. Bon Secours claims, in effect, that the participants in its defined benefit pension plans must be exempted from ERISA protections, and Bon Secours must be relieved of its ERISA financial obligations, because Bon Secours claims certain religious beliefs. The Establishment Clause, however, does not allow such an economic preference for Bon Secours and burden-shifting to Bon Secours employees. Extension of the Church Plan exemption to Bon Secours would be unconstitutional under Supreme Court law because it: (A) is not necessary to further the stated purposes of the exemption; (B) harms Bon Secours workers; (C) puts Bon Secours competitors at an economic disadvantage; (D) relieves Bon Secours of no genuine religious burden created by ERISA; and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

10.     Bon Secours's claim of Church Plan status for its defined benefit pension plans fails under both ERISA and the First Amendment. Plaintiff seeks an Order requiring Bon Secours to comply with ERISA and afford the Class all of ERISA's protections, with respect to Bon Secours's defined benefit pension plans, as well as an Order finding that the Church Plan exemption, as claimed by Bon Secours, is unconstitutional because it violates the Establishment Clause of the First Amendment.

## II.   JURISDICTION AND VENUE

11.   **Subject Matter Jurisdiction.** This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

12.   **Personal Jurisdiction.** This Court has personal jurisdiction over all Defendants because ERISA provides for nationwide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of the Defendants are either residents of the United States or subject to service in the United States, and the Court therefore has personal jurisdiction over them. The Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would all be subject to a court of general jurisdiction in Maryland as a result of Defendant Bon Secours transacting business in, and/or having significant contacts with this District.

13.   **Venue.** Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because (a) the Plan is administered in this District, (b) some or all of the violations of ERISA took place in this District, and/or (c) Defendant Bon Secours may be found in this District.

14.   Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Bon Secours systematically and continuously does business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## III.   PARTIES

### A.   Plaintiff Arlene Hodges

15.   Plaintiff Arlene Hodges was an employee of Bon Secours from 1992 until 2003. Plaintiff Hodges is a participant in a pension plan maintained by Bon Secours because she is or will become

eligible for pension benefits under the Plan to be paid at normal retirement age. Additionally and alternatively, Plaintiff Hodges has a colorable claim to benefits under a pension plan maintained by Bon Secours and is a participant within the meaning of ERISA section 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Bon Secours Plans pursuant to ERISA §§ 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3).

**B.    Defendants**

16.    **Defendant Bon Secours Health Systems, Inc. and Subsidiaries** ("Bon Secours"). Defendant Bon Secours is a 501(c)(3) non-profit corporation organized under, and governed by, Maryland law. Bon Secours is headquartered in Marriotsville, Maryland. Bon Secours operates in Kentucky, Florida, Maryland, New York, South Carolina, and Virginia and owns, manages, or joint ventures 19 acute-care hospitals, one psychiatric hospital, five nursing care facilities, four assisted living facilities, and 14 home care and hospice services.  In 2015, Bon Secours had approximately $3.3 billion in assets, annual operating revenues of approximately $3.4 billion, and operating income of $115 million.   Bon Secours employs more than 22,000 people.

17.    **Defendant Benefit Plan Administrative Committee** and **Defendants John and Jane Does 1-20**, Members of Benefit Plan Administrative Committee (the "Committee"). The Committee is an unincorporated association, which, upon information and belief, is the Plan Administrator and fiduciary of the Bon Secours Plans. Defendants John and Jane Does 1-20 are individuals who, through discovery, are found to be members of the Committee. These individuals will be added by name as Defendants in this action upon motion by Plaintiff at an appropriate time.

18.     **Defendants John and Jane Does 21-40**. Defendants John and Jane Does 21-40 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to the Bon Secours Plans and are fiduciaries within the meaning of ERISA. These individuals will be added by name as Defendants in this action upon motion by Plaintiff at an appropriate time.

19.     Defendant members of the Committee and John and Jane Does 21-40 are collectively referred to herein as the "Individual Defendants."

### IV.   THE BACKGROUND OF THE CHURCH PLAN EXEMPTION

**A.     The Adoption of ERISA**

20.     Following years of study and debate, and broad bipartisan support, Congress adopted ERISA in 1974, and the statute was signed into law by President Ford on Labor Day of that year. Among the factors that led to the enactment of ERISA were the widely publicized failures of certain defined benefit pension plans, especially the plan for employees of Studebaker Corporation, an automobile manufacturing company, which defaulted on its pension obligations in 1965. *See generally* John Langbein, *et al.*, PENSION AND EMPLOYEE BENEFIT LAW 78-83 (2010) ("The Studebaker Incident").

21.     As originally adopted in 1974, and today, ERISA protects the retirement savings of pension plan participants in a variety of ways. As to participants in traditional defined benefit pension plans, such as the Plans at issue here, ERISA mandates, among other things, that such plans be currently funded and actuarially sound, that participants' accruing benefits vest pursuant to certain defined schedules, that the administrators of the plan report certain information to participants and to government regulators, that the fiduciary duties of prudence, diversification, loyalty, and so on apply to those who manage the plans, and that the benefits promised by the plans be guaranteed, up to certain

limits, by the Pension Benefit Guaranty Corporation. *See, e.g.*, ERISA §§ 303, 203, 101-106, 404-406, 409, 4007, 4022, 29 U.S.C. §§ 1083, 1053, 1021-1026, 1104-1106, 1109, 1307, 1322.

22.     ERISA centers on pension plans, particularly defined benefit pension plans, as is reflected in the very title of the Act, which addresses "retirement income security." However, ERISA also subjects to federal regulation defined contribution pension plans (such as 401(k) plans) and welfare plans, which provide health care, disability, severance and related non-retirement benefits. ERISA §§ 3(34) and (1), 29 U.S.C. §§ 1002(34) and (1).

**B.      The Scope of the Church Plan Exemption in 1974**

23.     As adopted in 1974, ERISA provided an exemption from compliance for certain plans, in particular governmental plans and Church Plans. Plans that met the statutory definitions were exempt from all of ERISA's substantive protections for participants. ERISA § 4(b)(2), 29 U.S.C. § 1003(b)(2) (exemption from Title I of ERISA); ERISA § 4021(b)(3), 29 U.S.C. § 1321(b)(3) (exemption from Title IV of ERISA).

24.     ERISA defined a Church Plan as a plan "established and maintained for its employees by a church or by a convention or associations of churches."[1]

25.     Under the 1974 legislation, although a Church Plan was required to be established and maintained by a church, it could also include employees of certain pre-existing agencies of such church, but only until 1982. ERISA § 3(33)(C) (1974), 29 U.S.C. § 1002(33)(C) (1974) (current version as

---

[1]     ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A). ERISA is codified in both the labor and tax provisions of the United States Code, titles 29 and 26 respectively.  Many ERISA provisions appear in both titles. For example, the essentially identical definition of Church Plan in the Internal Revenue Code is found at 26 U.S.C. § 414(e).

amended at 29 U.S.C. § 1002(33) (West 2013)). Thus, under the 1974 legislation, a pension plan that was not established and maintained by a church could not be a Church Plan. *Id*.

**C.      The Changes to the Church Plan Exemption in 1980**

26.      Church groups had two major concerns about the definition of "Church Plans" in ERISA as adopted in 1974. The first, and far more important, concern was that Church Plans after 1982 could not include the lay employees of agencies of a church. The second concern that arose in the church community after 1974 was more technical. Under the 1974 statute, all Church Plans, single-employer or multiemployer, had to be "established and maintained" by a church or a convention/association of churches. This ignored the role of the churches' financial services organizations in the day-to-day management of the pension plans. In other words, although Church Plans were "established" by a church, in practice they were often "maintained" and/or "administered" by a separate financial services organization of the church, usually incorporated and typically called a church "pension board."

27.      These two concerns ultimately were addressed when ERISA was amended in 1980 in various respects, including a change in the definition of "Church Plan." Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), P.L. No. 96-364. The amended definition is current law.

28.      As to the first concern (regarding lay employees of agencies of a church), Congress included a new definition of "employee" in subsection (C)(ii)(II) of section 3(33) of ERISA. 29 U.S.C. § 1002(33)(C)(ii)(II) (1980) (current version at 29 U.S.C. § 1002(33)(C)(ii)(II) (West 2013)). As amended, an "employee" of a church or a convention/association of churches includes an employee of an organization "which is controlled by or associated with a church or a convention or association of churches." *Id.* The phrase "associated with" is then defined in ERISA § 3(33)(C)(iv) to include only those organizations that "share[] common religious bonds and convictions with that church or

convention or association of churches." 29 U.S.C. § 1002(33)(C)(iv) (1980) (current version at 29

U.S.C. § 1002(33)(C)(iv) (West 2013)). Although this new definition of "employee" permitted a

"Church Plan" to include among its participants employees of organizations controlled by or associated

with the church, convention, or association of churches, it remains the case that a plan covering such

"employees" cannot qualify as a "Church Plan" unless it was "established by" the church, convention, or

association of churches. ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A) (West 2013).

      29.    As to the second concern (regarding plans "maintained by" a separate church pension

board), the 1980 amendments spoke to the issue as follows:

> A plan established and maintained for its employees (or their beneficiaries) by a church
> or by a convention or association of churches includes a plan maintained by an
> organization, whether a civil law corporation or otherwise, *the principal purpose or*
> *function of which is the administration or funding of a plan or program for the provision*
> *of retirement benefits or welfare benefits*, or both, for the employees of a church or a
> convention or association of churches, if such organization is controlled by or associated
> with a church or a convention or association of churches.

ERISA § 3(33)(C)(i) (1980), 29 U.S.C. § 1002(33)(C)(i) (1980) (emphasis added) (current version at 29

U.S.C. § 1002(33)(C)(i) (West 2013)). Accordingly, under this provision, a plan "established" by a

church or by a convention or association of churches could retain its "Church Plan" status even if the

plan was "maintained by" a distinct organization, so long as (1) "the principal purpose or function of

[the organization] is the administration or funding of a plan or program for the provision of retirement

benefits or welfare benefits" and (2) the organization is "controlled by or associated with" the church or

convention or association of churches. *Id*.

      30.    This church "pension board" clarification has no bearing on plans that were not

"established" by a church or by a convention or association of churches.  Thus, a plan "established" by

an organization "controlled by or associated with" a church would not be a "Church Plan" because it was not "established" by a church or by a convention or association of churches.

31.     Further, this "pension board" clarification has no bearing on plans that were not "maintained" by a church pension board. Thus, even if a plan were "established" by a church, and even if it were "maintained by" an organization "controlled by or associated with" a church, such as a school, hospital, or publishing company, it still would not be a "Church Plan" if the principal purpose of the organization was other than the administration or funding of the plan. In such plans, the plan is "maintained" by the school, hospital or publishing company, and usually through the human resources department of such entity. It is not maintained by a church pension board:  No "organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits" maintains the plan. *Compare with* ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i) (1980) (current version at 29 U.S.C. § 1002(33)(C)(i) (West 2013)).

32.     The requirements for Church Plan status under ERISA, both as originally adopted in 1974 and as amended in 1980, are, as explained above, very clear. And there is no tension between the legislative history of the 1980 amendment and the amendment itself:  the Congress enacted exactly what it wanted to enact. Fundamental to the scheme, both as originally adopted and as fine-tuned in 1980, was that neither an "affiliate" of a church (using the 1974 language) nor "an organization controlled by or associated with" a church (using the 1980 language) could itself establish a Church Plan. Its employees could be *included* in a Church Plan, but if it sponsored its own plan, that was not a Church Plan. With respect to "pension boards," the 1980 legislation simply clarified the long standing practice that churches could use their own financial organizations to manage their Church Plans.

33.    Unfortunately, in 1983, in response to a request for a private ruling, the Internal Revenue Service ("IRS") issued a short General Counsel Memorandum that misunderstood the statutory framework. The author incorrectly relied on the "pension board" clarification to conclude that a non-church entity could sponsor its own Church Plan as long as the plan was managed by some "organization" that was controlled by or associated with a Church. This, of course, is not what the statute says, nor what Congress intended. In any event, this mistake was then repeated, often in verbatim language, in subsequent IRS determinations and, after 1990, in Department of Labor determinations. Under the relevant law, these private rulings may only be relied upon by the parties thereto, within the narrow confines of the specific facts then disclosed to the agencies, and are not binding on this Court in any event. Moreover, the IRS and DOL interpretations of the statutory framework, as expressed in these private rulings, are not entitled to judicial deference because the rulings are conclusory, inconsistent, and lack meaningful analysis.

## V.    BON SECOURS

**A.    Bon Secours's Operations**

34.    Bon Secours was formed in 1983. It is a 501(c)(3) non-profit corporation organized under, and governed by, Maryland law. Bon Secours is headquartered in Marriotsville, Maryland. Bon Secours operates in Kentucky, Florida, Maryland, New York, South Carolina, and Virginia, and owns, manages, or joint ventures 19 acute-care hospitals, one psychiatric hospital, five nursing care facilities, four assisted living facilities, and 14 home care and hospice services. Bon Secours employs more than 22,000 people.

35.    As of August 31, 2015, Bon Secours had approximately $3.3 billion in assets and annual operating revenues of approximately $3.4 billion.

36.     Like other large non-profit hospital systems, Bon Secours relies upon revenue bonds to raise money, and it has significant sums invested in, among other things, fixed-income securities, equity securities, and hedge funds.

37.     The principle purpose or function of Bon Secours is not the administration or funding of a plan or program for the provision of retirement or welfare benefits (or both) for the employees of a church or a convention or association of churches.

38.     The management of Bon Secours is comprised primarily of lay people, and Executive Officers of Bon Secours receive compensation in line with executive officers of other hospital systems. For example, in 2013, the Bon Secours President and Chief Executive Officer received reportable compensation of $1.755 million.

39.     Bon Secours is not a church or a convention or association of churches.

40.     Bon Secours is not owned by a church.

41.     Bon Secours does not receive funding from a church.

42.     Bon Secours does not claim that a church has any liability for Bon Secours's debts or obligations.

43.     No church has a role in the governance of Bon Secours.

44.     No church has any role in the maintenance and/or administration of the Bon Secours Plans.

45.     Bon Secours specifically chooses not to impose any denominational requirement on its employees.

46.     Bon Secours has no denominational requirement for its patients and/or clients.

47.     Bon Secours purports to disclose, and not keep confidential, its own highly complex financial records. For example, Bon Secours is required and, in some cases, has voluntarily elected to comply with a broad array of elaborate state and federal regulations and reporting requirements, including Medicare and Medicaid. In addition, Bon Secours makes public its consolidated financial statements, which describe Bon Secours's representations as to its own highly complex operations and financial affairs. Finally, Bon Secours's financial information is regularly disclosed to the rating agencies and the public when tax-exempt revenue bonds are issued.

**B.      The Bon Secours Plans**

48.     Bon Secours maintains the Bon Secours Plans and has the power to continue, amend, or terminate the plans.

49.     The Bon Secours Plans are non-contributory defined benefit pension plans covering substantially all of Bon Secours's employees.

50.     Upon information and belief, the Bon Secours Plans are currently underfunded by about $390 million.

**1.      The Bon Secours Plans Meet the Definition of an ERISA Defined Benefit Plan**

51.     The Bon Secours Plans are plans, funds, or programs that were established or maintained by Bon Secours which, provide retirement income to employees. As such, each of the Bon Secours Plans meet the definition of an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

52.     The Bon Secours Plans do not provide for an individual account for each participant and do not provide benefits based solely upon the amount contributed to a participant's account. As such, the Bon Secours Plans are defined benefit plans within the meaning of ERISA § 3(35), 29 U.S.C. §

1002(35), and are not individual account plans or "defined contribution plans" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

53.     As an employer establishing and/or maintaining the Bon Secours Plans, Defendant Bon Secours is and has been the Plan Sponsor of the Bon Secours Plan within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002(16)(B).

2.     **The Defendants Meet the Definition of ERISA Fiduciaries**

a.     **Nature of Fiduciary Status**

54.     Every ERISA plan must have one or more "named fiduciaries." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). The person named as the "administrator" in the plan instrument is automatically a fiduciary and, in the absence of such a designation, the sponsor is the administrator. ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

55.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

56.     Each of the Defendants was a fiduciary with respect to the Plans and owed fiduciary duties to the Plans and its participants and beneficiaries under ERISA in the manner and to the extent set forth in the Plans' documents and/or through their conduct.

57.     As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), to manage and administer the Plans and the Plans' investments solely in the interest of the Plans' participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

58.     Plaintiff does not allege that each Defendant was a fiduciary with respect to all aspects of the Plans' management and administration. Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

59.     ERISA permits fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA § 408(c)(3), 29 U.S.C. § 1108(c)(3), but insider fiduciaries, like external fiduciaries, must act solely in the interest of participants and beneficiaries, not in the interest of the Plan sponsor.

**b.      Defendants Are Each ERISA Fiduciaries**

60.     **Defendant Bon Secours**. Bon Secours is the employer responsible for maintaining the Bon Secours Plans and is, therefore, the plan sponsor of the Bon Secours Plans within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Upon information and belief, Defendant Bon Secours's responsibilities include fiduciary oversight of the Bon Secours Plans.  Upon information and belief, Defendant Bon Secours had the responsibility to appoint, and hence to monitor and remove, the members of the Committee.

61.     Defendant Bon Secours is a fiduciary with respect to the Bon Secours Plans within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercises discretionary authority or discretionary control respecting management of the Bon Secours Plans, exercises authority and control respecting management or disposition of the Bon Secours Plans' assets, and/or has discretionary authority or discretionary responsibility in the administration of the Bon Secours Plans.

62.     **Committee Defendants**. Defendant Committee and Defendants John and Jane Does 1-20, as members of the Committee, are also fiduciaries with respect to the Bon Secours Plans within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because they exercise discretionary authority or discretionary control respecting management of the Bon Secours Plans, exercise authority and control respecting management or disposition of the Bon Secours Plans' assets, and/or have discretionary authority or discretionary responsibility in the administration of the Bon Secours Plans.

63.     Plaintiff reserves the right to amend this Complaint to name other or additional Defendants once she has had the opportunity to conduct discovery on these issues.

64.     Although Bon Secours maintains that the Bon Secours Plans are exempt from ERISA coverage as Church Plans, it claims ERISA status for its 401(k) plan and welfare benefit plans.

65.     Compliance with ERISA creates no undue, genuine burden on any religious practice of Bon Secours, as evidence by Bon Secours's claimed compliance with ERISA for its 401(k) plan and welfare benefit plans.

3.      **The Bon Secours Plans Are Not Church Plans**

66.     Bon Secours claims that the Bon Secours Plans are Church Plans under ERISA § 3(33), 29 U.S.C. § 1002(33), and the analogous section of the Internal Revenue Code ("IRC"), and are therefore exempt from ERISA's coverage under ERISA § 4(b)(2), 29 U.S.C. § 1003(b)(2).

**a. Only Two Types of Plans May Qualify as Church Plans and the Bon Secours Plans are Neither**

67.     Under § 3(33) of ERISA, 29 U.S.C. § 1002(33), only the following two types of plans

may qualify as Church Plans:

- First, under section 3(33)(A) of ERISA, 29 U.S.C. § 1002(33)(A), a plan *established and maintained* by a church or by a convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B); and

- Second, under section 3(33)(C)(i) of ERISA, 29 U.S.C. § 1002(33)(C)(i), a plan *established* by a church or by a convention or association of churches that is *maintained* by an organization, *the principal purpose or function of which* is the administration or funding of a retirement plan, if such organization is controlled by or associated with a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of section 3(33)(B) of ERISA, 29 U.S.C. § 1002(33)(B).

Both types of plans must be "established" by a church or by a convention or association of churches in

order to qualify as "Church Plans."

68.     Although other portions of ERISA § 3(33)(C) address, among other matters, who can be

*participants* in Church Plans—in other words, which employees can be in Church Plans, etc.—these

other portions of ERISA § 3(33)(C) do not add any other type of *plan* that can be a Church Plan. 29

U.S.C. § 1002(33)(C). The only two types of plans that can qualify as Church Plans are those described

in ERISA § 3(33)(A) and in § 3(33)(C)(i). 29 U.S.C. §§ 3(33)(A) and (C)(i). The Bon Secours Plans do

not qualify as Church Plans under either ERISA § 3(33)(A) or § 3(33)(C)(i). 29 U.S.C. §§ 3(33)(A) or

(C)(i).

69.     First, under ERISA § 3(33)(A), "[t]he term "church plan" means a plan established and

maintained for its employees by a church or by a convention or association of churches which is exempt

from tax under section 501 of title 26."  ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A). A straightforward

reading of this section is that a church plan "means," and therefore by definition, *must be* "a plan established . . . by a church or convention or association of churches."

70.    The Bon Secours Plans at issue here are not Church Plans as defined in ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A), because the Bon Secours Plans were established, maintained, administered or sponsored by Bon Secours for its own, or its affiliates' own, employees.  Because neither Bon Secours nor its affiliates are a church or a convention or association of churches, nor do they claim to be, the Bon Secours Plans were not "established and maintained by" a church or by a convention or association of churches and were not maintained for employees of any church or convention or association of churches. That is the end of the inquiry under ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).

71.    Second, under ERISA § 3(33)(C)(i), a Church Plan also includes a plan "established" by a church or by a convention or association of churches that is "maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches." ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

72.    The Bon Secours Plans are not Church Plans as defined in ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the Bon Secours Plans were not "established" by a church or by a convention or association of churches. Moreover, the Bon Secours Plans do not qualify as "Church Plans" under section 3(33)(C)(i) because they are not maintained by any entity whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits

or welfare benefits, or both. This ends any argument that the Bon Secours Plans could be Church Plans under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i).

73.     To the extent that Bon Secours claims that the Bon Secours Plans qualifies as "Church Plans" under section 3(33)(C)(i) because they are "maintained" by an entity within Bon Secours, other than Bon Secours, whose principal purpose or function is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, the claim fails because the only entity with the power to "maintain" the Bon Secours Plans, which includes the power to continue and/or terminate the Plans, is Bon Secours. The claim also fails because if all that is required for a plan to qualify as a church plan is that it meet section C's requirement that it be maintained by a church-associated organization, there would be no purpose for section A, which defines a church plan as one established and maintained by a church. This ends any argument that the Bon Secours Plans could be Church Plans under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because they are maintained by an entity other than Bon Secours.

74.     However, even if the Bon Secours Plans had been "established" by a church and even if the principal purpose or function of Bon Secours was the administration or funding of the Bon Secours Plans (instead of running a hospital conglomerate), the Bon Secours Plans still would not qualify as Church Plans under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), because the principal purpose of the Plans is not to provide retirement or welfare benefits to *employees of a church or convention or association of churches*. For example, the approximately 22,000  participants in the Bon Secours Plans work for Bon Secours, a non-profit hospital conglomerate. Bon Secours is not a church or convention or association of churches and its employees are not employees of a church or convention or association of churches within the meaning of ERISA.

75.      Under ERISA § 3(33)(C)(ii), 29 U.S.C. § 1002(33)(C)(ii), however, an employee of a tax exempt organization that is controlled by or associated with a church or a convention or association of churches also may be considered an employee of a church. This part of the definition merely explains which employees a church plan may cover *once a valid church plan is established*. The Bon Secours Plan also fails this part of the definition, because Bon Secours is not controlled by or associated with a church or convention or association of churches within the meaning of ERISA.

76.      Bon Secours is not controlled by a church or convention or association of churches.

77.      Bon Secours is not owned or operated by a church and does not receive funding from a church.[2]

78.      In addition, Bon Secours is not "associated with" a church or convention or association of churches within the meaning of ERISA. Under ERISA § 3(33)(C)(iv), 29 U.S.C. § 1002(33)(C)(iv), an organization "is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches." Bon Secours does not share common religious bonds and convictions with a church or association of churches.

79.      For example, Bon Secours tells prospective employees that religious affiliation is not a factor in the recruiting and hiring of Bon Secours employees.  In choosing to recruit and hire from the population at large, Bon Secours must also be willing to accept generally applicable, neutral regulations, such as ERISA, which protect those employees' legitimate interests.

80.      The Bon Secours Plans further fail to satisfy the requirements of ERISA § 3(33)(C)(i) because this section requires the organization that maintains the plans to be "controlled by or associated

---

[2]      Notably, if Bon Secours were "controlled by" a church, then that church would be exposed to significant potential liability stemming from medical malpractice and other legal claims related to the provision of medical care by Bon Secours.

with" a church or convention or association of churches within the meaning of ERISA. 29 U.S.C. § 1002(33)(C)(i). Thus, even if (1) a church had "established" the Bon Secours Plans (which it did not), (2) the principal purpose or function of Bon Secours was the administration or funding of the Bon Secours Plans (instead of running a hospital conglomerate), and (3) Bon Secours's employees were employees of a church or convention or association of churches (which they are not), the Bon Secours Plans still would not qualify as Church Plans under ERISA § 3(33)(C)(i) because—for the reasons outlined above—Bon Secours is not *controlled by or associated with* a church or convention or association of churches within the meaning of ERISA. 29 U.S.C. § 1002(33)(C)(i).

81.     Finally, even if Bon Secours were "controlled by or associated with" a church, and thus its employees were deemed "employees" of a church under ERISA § 3(33)(C)(ii)(2), and even if the Bon Secours Plans were "maintained by" either a church or "pension board" satisfying the requirements of ERISA § 3(33)(C)(i), the Bon Secours Plans still would not be "Church Plans" because all "Church Plans" must be "established" by a church or by a convention or association of churches. 29 U.S.C. §§ 1002(33)(A), (C)(i). Although a church may be deemed an "employer" of the employees of an organization that it "controls" or with which it is "associated," *see* ERISA § 3(33)(C)(iii), 29 U.S.C. § 1002(33)(C)(iii), nothing in ERISA provides that the church may be deemed to have "established" a retirement plan that was in fact established by the "controlled" or "associated" organization. Accordingly, because no church established the Bon Secours Plans, the Plans cannot be "Church Plans" within the meaning of ERISA.

**b.      Even *if* the Bon Secours Plans Could Otherwise Qualify as Church Plans under ERISA §§ 3(33)(A) or (C)(i), they are Excluded From Church Plan Status under ERISA § 3(33)(B)(ii)**

82.      Under ERISA § 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii), a plan is specifically excluded from Church Plan status if less than substantially all of the plan participants are members of the clergy or employed by an organization controlled by or associated with a church or convention or association of churches.  In this case, there are approximately 22,000 participants in the Bon Secours Plans, and very nearly all of them are non-clergy healthcare workers.

83.      If the approximately 22,000  participants in the Bon Secours Plans do not work for an organization that is controlled by or associated with a church or convention or association of churches, then even if the Bon Secours Plans could otherwise qualify as Church Plans under ERISA §§ 3(33)(A) or (C)(i), they still would be foreclosed from Church Plan status under section 3(33)(B)(ii), 29 U.S.C. § 1002(33)(B)(ii).

84.      As set forth above, Bon Secours is not controlled by a church or convention or association of churches, nor does it share common religious bonds and convictions with a church or convention or association of churches.

**c.      Even if the Bon Secours Plans Could Otherwise Qualify as Church Plans under ERISA, the Church Plan Exemption, as Claimed By Bon Secours, Violates the Establishment Clause of the First Amendment of the Constitution, and is Therefore Void and Ineffective**

85.      The Church Plan exemption is an accommodation for *churches* that establish and maintain pension plans, and it allows such plans to be exempt from ERISA.

86.      The Establishment Clause guards against the establishment of religion by the government. The government "establishes religion" when, among other activities, it privileges those with religious beliefs (e.g. exempts them from neutral regulations) at the expense of nonadherents and/or

while imposing legal and other burdens on nonmembers. Extension of the Church Plan exemption to

Bon Secours, a non-church entity, privileges Bon Secours for its claimed faith at the expense of its

employees, who are told that their faith is not relevant to their employment, yet who are then denied the

benefit of insured, funded pensions, as well as many other important ERISA protections. Similarly, Bon

Secours, a non-church entity, has a privileged economic advantage over its competitors in the

commercial arena it has chosen, based solely on Bon Secours's claimed religious beliefs. This too is

prohibited by the Establishment Clause. Simply put, when government provides a regulatory exemption

"exclusively to religious organizations that is not required by the Free Exercise Clause and that . . .

burdens nonbeneficiaries," it has endorsed religion in violation of the Establishment Clause. *See, e.g.*,

*Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 15, 18 n. 8 (1989) (plurality opinion).

87.     As set forth in more detail below in Count VIII, the extension of the Church Plan

accommodation to Bon Secours, which is not a church, violates the Establishment Clause because it is

not necessary to further the stated purposes of the exemption, harms Bon Secours workers, puts Bon

Secours competitors at an economic disadvantage, relieves Bon Secours of no genuine religious burden

created by ERISA, and creates more government entanglement with alleged religious beliefs than

compliance with ERISA creates. Accordingly, the Church Plan exemption, as claimed by Bon Secours,

is void and ineffective.

## VI.   CLASS ALLEGATIONS

88.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure on behalf of herself and the following class of persons similarly situated: All

participants or beneficiaries of the seven Bon Secours Pension Plans that purport to be church plans,

including the Memorial Regional Medical Center Pension Plan.

89.     Excluded from the Class are any high-level executives at Bon Secours or any employees who have responsibility or involvement in the administration of the Plans, or who are subsequently determined to be fiduciaries of the Bon Secours Plans, including the Individual Defendants.

**A.      Numerosity**

90.     The exact number of Class members is unknown to Plaintiff at this time, but may be readily determined from records maintained by Bon Secours. Bon Secours currently employs approximately 22,000 individuals. Upon information and belief, many, if not all, of those persons are likely members of the Class, and thus the Class is so numerous that joinder of all members is impracticable.

**B.      Commonality**

91.     The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including (1) whether the Plans are exempt from ERISA as Church Plans, and, if not, (2) whether the fiduciaries of the Plans have failed to administer and failed to enforce the funding obligations of the Plans in accordance with ERISA.

92.     The issues regarding the relief are also common to the members of the Class as the relief will consist of (1) a declaration that the Plans are ERISA covered plans; (2) an order requiring that the Plans comply with the administration and enforce the funding obligations of the Plans in accordance with ERISA; and (3) an order requiring Bon Secours to pay civil penalties to the Class, in the same statutory daily amount for each member of the Class.

**C.      Typicality**

93.     Plaintiff's claims are typical of the claims of the other members of the Class because her claims arise from the same event, practice and/or course of conduct, namely Defendants' failure to

maintain the Plans in accordance with ERISA. Plaintiff's claims are also typical because all Class members are similarly affected by Defendants' wrongful conduct.

94.      Plaintiff's claims are also typical of the claims of the other members of the Class because, to the extent Plaintiff seeks equitable relief, it will affect all Class members equally. Specifically, the equitable relief sought consists primarily of (i) a declaration that the Bon Secours Plans are not Church Plans; and (ii) a declaration that the Bon Secours Plans are ERISA covered plans that must comply with the administration and funding requirements of ERISA. In addition, to the extent Plaintiff seeks monetary relief, it is for civil fines to the Class in the same statutory daily amount for each member of the Class.

95.      Bon Secours does not have any defenses unique to Plaintiff's claims that would make Plaintiff's claims atypical of the remainder of the Class.

**D.      Adequacy**

96.      Plaintiff will fairly and adequately represent and protect the interests of all members of the Class.

97.      Plaintiff does not have any interests antagonistic to or in conflict with the interests of the Class.

98.      Defendant Bon Secours and the Individual Defendants have no unique defenses against the Plaintiff that would interfere with Plaintiff's representation of the Class.

99.      Plaintiff has engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**E.      Rule 23(b)(1) Requirements**

100.      The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

101.      The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.      Rule 23(b)(2) Requirements**

102.      Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

**G.      Rule 23(b)(3) Requirements**

103.      If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include:  (1) whether the Plans are exempt from ERISA as Church Plans, and, if not, (2) whether the fiduciaries of the Plans have failed to administer and fund the Plans in accordance with ERISA, and (3) whether the Church Plan exemption, as claimed by Bon Secours, violates the Establishment Clause of the First Amendment. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A.    Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plans or affect each class member equally;

B.    Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C.    There is no other litigation begun by any other Class members concerning the issues raised in this litigation;

D.    This litigation is properly concentrated in this forum, which is where Defendant Bon Secours maintains its headquarters; and

E.    There are no difficulties managing this case as a class action.

## VII.   CAUSES OF ACTION

### COUNT I
**(Claim for Equitable Relief Pursuant to ERISA §§ 502(a)(2) and 502(a)(3) Against Defendants Bon Secours, Defendant Committee and John and Jane Does 1-20, the Committee Member Defendants)**

104.    Plaintiff repeats and re-alleges the allegations contained in all foregoing paragraphs herein.

105.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief ... to enforce any provisions of this title." Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory relief that the Bon Secours Plans are not Church Plans within the meaning of

ERISA § 3(33), 29 U.S.C. § 1002(33), and thus are subject to the provisions of Title I and Title IV of ERISA.

106.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to these provisions, Plaintiff seeks orders directing the Bon Secours Plans' sponsor and administrator to bring the Bon Secours Plan into compliance with ERISA.

107.    ERISA § 502(a)(2), 29 U.S.C. § 1132(2), authorizes a participant or beneficiary to bring a civil action for appropriate relief under 29 U.S.C. § 1109(a), against a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" and the fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." Because the operation of the Plans as non-ERISA plans was a breach of Defendants' fiduciary duties, the Defendants breached their fiduciary duties and Plaintiff also seeks plan-wide equitable and remedial relief under ERISA § 502(a)(2).

108.    As the Bon Secours Plans are not Church Plans within the meaning of ERISA § 3(33), 29 U.S.C. § 1002(33), and meet the definition of a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2), the Bon Secours Plans should be declared to be ERISA-covered pension plans, and the Bon Secours Plans' sponsor and administrator should be ordered to bring the Bon Secours Plans into compliance with ERISA, including by remedying the violations set forth below.

**COUNT II**
**(Claim for Violation of Reporting and Disclosure Provisions Against Defendant Committee and John and Jane Does 1-20, the Committee Member Defendants)**

109.     Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

1.     **Summary Plan Descriptions**

110.     At no time has the Committee or its members provided Plaintiff or any member of the Class with a Summary Plan Description with respect to the Bon Secours Plans that meets the requirements of ERISA § 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

111.     Because the Committee has been the Plan Administrator of the Plans at all relevant times, it violated ERISA § 104, 29 U.S.C. § 1024, by failing to provide Plaintiff and members of the Class with adequate Summary Plan Descriptions.

2.     **Annual Reports**

112.     At no time has an annual report with respect to the Bon Secours Plan been filed with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, nor has it filed a Form 5500 and associated schedules and attachments, which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

113.     Because the Committee has been the Plan Administrator of the Bon Secours Plans at all relevant times, the Committee Defendants have violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Bon Secours Plans with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments, which the Secretary has approved as an alternate method of compliance with ERISA § 103, 29 U.S.C. § 1023.

3.      **Summary Annual Reports**

114.    At no time has the Committee or its members furnished Plaintiff or any member of the Class with a Summary Annual Report with respect to the Bon Secours Plans in compliance with ERISA § 104(b)(3) and regulations promulgated thereunder. 29 U.S.C. § 1024(b)(3).

115.    Because the Committee has been the Plan Administrator of the Bon Secours Plans at all relevant times, the Committee Defendants have violated ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3), by failing to furnish Plaintiff or any member of the Class with a Summary Annual Report with respect to the Bon Secours Plans in compliance with ERISA § 104(b)(3) and the regulations promulgated thereunder. 29 U.S.C. § 1024(b)(3).

4.      **Notification of Failure to Meet Minimum Funding**

116.    At no time has the Committee or its members furnished Plaintiff or any member of the Class with a Notice with respect to the Bon Secours Plan pursuant to ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that Bon Secours had failed to make payments required to comply with ERISA § 302, 29 U.S.C. § 1082, with respect to the Bon Secours Plans.

117.    Defendant Bon Secours has been the employer that established and/or maintained the Bon Secours Plans.

118.    Defendant Bon Secours is not funding the Bon Secours Plans in accordance with ERISA § 302, 29 U.S.C. § 1082.

119.    As the employer maintaining the Bon Secours Plans, Defendant Bon Secours has violated ERISA § 302, 29 U.S.C. § 1082, by failing to fund the Bon Secours Plans. Because the Committee has been the Plan Administrator of the Bon Secours Plans at all relevant times, it has violated ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiff and each

class member up to $110 per day (as permitted by 29 C.F.R. § 2575.502(c)(3)) for each day that

Defendant has failed to provide Plaintiff and each Class member with the notice required by ERISA §

101(d)(1), 29 U.S.C. § 1021(d)(1).

     5.    **Funding Notices**

     120.    At no time has the Committee or its members furnished Plaintiff or any member of the

Class with a Funding Notice with respect to the Bon Secours Plans pursuant to ERISA § 101(f), 29

U.S.C. § 1021(f).

     121.    Because the Committee has been the Plan Administrator of the Bon Secours Plans at all

relevant times, it has violated ERISA § 101(f) by failing to provide each participant and beneficiary of

the Bon Secours Plans with the Funding Notice required by ERISA § 101(f), and as such may be

required by the Court to pay Plaintiff and each Class member up to $110 per day (as permitted by

ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), amended by 29 C.F.R. § 2575.502c-1) for each day that

Defendant has failed to provide Plaintiff and each Class member with the notice required by ERISA

§ 101(f).  29 U.S.C. § 1021(f).

### COUNT III
### (Claim for Failure to Provide Minimum Funding Against Defendant Bon Secours)

     122.    Plaintiff incorporates and re-alleges by reference to the foregoing paragraphs as if fully

set forth herein.

     123.    ERISA § 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined

benefit plans that require employers to make minimum contributions to their plans so that each plan will

have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits

out of its general assets.

124.    Bon Secours was responsible for making the contributions that should have been made pursuant to ERISA § 302, 29 U.S.C. § 1082, at a level commensurate with that which would be required under ERISA.

125.    Since at least 2011, Bon Secours has failed to make contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082.

126.    By failing to make the required contributions to the Bon Secours Plans, either in whole or in partial satisfaction of the minimum funding requirements established by ERISA § 302, Defendant Bon Secours has violated ERISA § 302. 29 U.S.C. § 1082.

**COUNT IV**
**(Claim for Failure to Establish the Plan Pursuant to a Written Instrument Meeting the Requirements of ERISA § 402 Against Defendant Bon Secours)**

127.    Plaintiff incorporates and re-alleges by reference to the foregoing paragraphs as if fully set forth herein.

128.    ERISA § 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will provide, among other things, "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method constituent with the objectives of the plan and the requirements of [Title I of ERISA]."

129.    Although the benefits provided by the Bon Secours Plans were described to the employees and retirees of Bon Secours (and/or its affiliates and subsidiaries) in various written communications, the Bon Secours Plans have never been established pursuant to a written instrument meeting the requirements of ERISA § 402, 29 U.S.C. § 1102.

130.    Defendant Bon Secours violated section 402 by failing to promulgate written instruments in compliance with ERISA § 402 to govern the Bon Secours Plans' operations and administration. 29 U.S.C. § 1102.

## COUNT V
### (Claim for Clarification of Future Benefits Under ERISA §§ 502(a)(1)(B) and 502(a)(3) Against Defendant Bon Secours)

131.    Plaintiff incorporates and re-alleges by reference to the foregoing paragraphs as if fully set forth herein.

132.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B), provides, in part, that a participant or beneficiary may bring a civil action to "clarify his rights to future benefits under the terms of the plan."

133.    Pursuant to ERISA §§ 502(a)(1)(B), (3), 29 U.S.C. §§ 1132(a)(1)(B), (3), once the Plan is made compliant with ERISA, Plaintiff seeks to clarify her rights under the terms of the Plan and to require Defendant Bon Secours to provide Plaintiff and the Class ERISA-compliant benefit statements.

## COUNT VI
### (Claim for Civil Money Penalty Pursuant to ERISA § 502(a)(1)(A) Against Defendant Bon Secours, Defendant Committee, and John and Jane Does 1-20, the Committee Member Defendants)

134.    Plaintiff incorporates and re-alleges by reference to the foregoing paragraphs as if fully set forth herein.

135.    ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that a participant may bring a civil action for the relief provided in ERISA § 502(c), 29 U.S.C. § 1132(c).

136.    ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3, provides that an employer maintaining a plan who fails to meet the notice requirement of ERISA § 101(d), 29 U.S.C. § 1021(d), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

137.   ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3,

provides that an administrator of a defined benefit pension plan who fails to meet the notice requirement

of ERISA § 101(f), 29 U.S.C. § 1021(f), with respect to any participant and beneficiary may be liable

for up to $110 per day from the date of such failure.

138.   ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as provided in 29 C.F.R. § 2575.502c-3,

provides that an administrator of a defined benefit pension plan who fails to provide a Pension Benefit

Statement at least once every three years to a participant with a nonforfeitable accrued benefit who is

employed by the employer maintaining the plan at the time the statement is to be furnished as required

by ERISA § 105(a), 29 U.S.C. § 1025(a), may be liable for up to $110 per day from the date of such

failure.

139.   As Defendant Bon Secours, as the employer, has failed to give the notices required by

ERISA § 101(d), 29 U.S.C. § 1021(d), as set forth in Count II Subpart 4, Defendant Bon Secours is

liable to Plaintiff and each member of the Class in an amount up to $110 per day from the date of such

failures until such time that notices are given and the statement is provided, as the Court, in its

discretion, may order.

140.   As the Committee, as Plan Administrator of the Plan, has failed to give the notices

required by ERISA § 101(f), 29 U.S.C. § 1021 (f), and the Pension Benefit Statement required by

ERISA § 105(a), 29 U.S.C. § 1025(a), as set forth in Count II Subparts 5 through 6, the Committee and

the Committee Member Defendants are liable to the Plaintiff and each member of the Class in an

amount up to $110 per day from the date of such failures until such time that notices are given and the

statement is provided, as the Court, in its discretion, may order.

**COUNT VII**
**(Claim for Breach of Fiduciary Duty Against All Defendants)**

141.    Plaintiff incorporates and re-alleges by reference to the foregoing paragraphs as if fully set forth herein.

142.    Plaintiff brings this Count VII for breach of fiduciary duty pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).

1.    **Breach of the Duty of Prudence and Loyalty**

143.    This sub-Count alleges fiduciary breach against all Defendants.

144.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)    for the exclusive purpose of:

(i)    providing benefits to participants and beneficiaries; and

(ii)    defraying reasonable expenses of administering the plan;

(b)    with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . [and]

(c)    in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title I of ERISA] and title IV.

145.    As fiduciaries with respect to the Bon Secours Plans, Defendants had the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  Having the authority to enforce the provisions of ERISA at

those respective times, ERISA §§ 404(a)(1)(A)-(D), 29 U.S.C. §§ 1104(a)(1)(A)-(D), imposed on Defendants the respective duty to enforce those provisions in the interest of the participants and beneficiaries of the Bon Secours Plans during the times that each was a fiduciary of the Bon Secours Plans.

146.    Defendants have never enforced any of the provisions of ERISA set forth in Counts I-IV with respect to the Bon Secours Plans.

147.    By failing to enforce the provisions of ERISA set forth in Counts I-IV, Defendants breached the fiduciary duties that they owed to Plaintiff and the Class.

148.    The failure of Defendants to enforce the funding obligations owed to the Plans has resulted in a loss to the Bon Secours Plans equal to the foregone funding and earnings thereon, and profited Defendant Bon Secours by providing it the use of the money owed to the Bon Secours Plans for its general business purposes.

2.    **Prohibited Transactions**

149.    This sub-Count alleges violations on behalf of all Defendants.

150.    ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to extend credit to a party in interest, as defined in ERISA § 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such transaction constitutes an extension of credit to a party in interest.

151.    ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest if he or she knows or should know that such transaction constitutes a use of plan assets for the benefit of a party in interest.

152.     ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to a plan for his or her own interest or for his or her own account.

153.     As fiduciaries with respect to the Plan and, with respect to Bon Secours, as an employer of employees covered by the Plan, the Defendants at all relevant times were parties in interest with respect to the Bon Secours Plans pursuant to ERISA §§ 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A) and (C).

154.     By failing to enforce the funding obligations created by ERISA and owed to the Plans, Defendants extended credit from the Bon Secours Plans to Bon Secours in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

155.     By failing to enforce the funding obligations created by ERISA and owed to the Bon Secours Plans, Defendants used Bon Secours Plan assets for Bon Secours's own benefit, when Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of Bon Secours Plan assets, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

156.     By failing to enforce the funding obligations created by ERISA and owed to the Bon Secours Plans, Defendants used Bon Secours Plan assets in Bon Secours's interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

157.     The failure of Defendants to enforce the funding obligations owed to the Bon Secours Plans has resulted in a loss to the Bon Secours Plans equal to the foregone funding and earnings thereon.

158.     The failure of Defendants to enforce the funding obligations owed to the Bon Secours Plans has profited Defendant Bon Secours by providing it the use of money owed to the Bon Secours Plans for its general business purposes.

3.      **Failure to Monitor Fiduciaries**

159.    This sub-Count alleges fiduciary breach against Defendant Bon Secours.

160.    As alleged above, during the Class Period, Defendant Bon Secours was a fiduciary pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), or both. Thus, it was bound by the duties of loyalty, exclusive purpose, and prudence.

161.    The scope of the fiduciary responsibilities of Bon Secours included the responsibility to appoint, and remove, and thus, monitor the performance of other fiduciaries.

162.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries perform their fiduciary obligations, including those with respect to the investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

163.    The monitoring duty further requires that appointing fiduciaries have procedures in place so that they may review and evaluate, on an ongoing basis, whether the "hands-on" fiduciaries are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance, and by ensuring that they have a prudent process for obtaining the information and resources they need). In the absence of a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to plan participants or for deciding whether to retain or remove them.

164.    Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with the complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets, or that may have an extreme impact on the plan and the fiduciaries' investment decisions regarding the plan.

165.    Defendant Bon Secours breached its fiduciary monitoring duties by, among other things: (a) failing to appoint persons who would run the Plans as ERISA plans; (b) failing to ensure that the monitored fiduciaries appreciated the true extent of not running the Plans as ERISA Plans; (c) to the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Plans; and (d) failing to remove appointees whose performance was inadequate in that they continued to run the Plans as non-ERISA Plans, and who breached their fiduciary duties under ERISA.

166.    The failure of Defendants to enforce the funding obligations owed to the Plans has resulted in a loss to the Bon Secours Plans equal to the foregone funding and earnings thereon, and profited Defendant Bon Secours by providing it the use of money owed to the Bon Secours Plans for its general business purposes.

### COUNT VIII
### (Claim for Declaratory Relief That the Church Plan Exemption Violates the Establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective)

167.    Plaintiff incorporates and re-alleges by reference to the foregoing paragraphs as if fully set forth herein.

168.    The ERISA Church Plan exemption is an accommodation that exempts churches and associations of churches, under certain circumstances, from compliance with ERISA.

169.    The ERISA Church Plan exemption, as claimed by Bon Secours, is an attempt to extend the accommodation beyond churches and associations of churches, to Bon Secours—a non-profit hospital conglomerate that has chosen to compete with commercial businesses, including other non-profits as well as for-profits, by entering the economic arena and trafficking in the marketplace. Extension of the Church Plan exemption to Bon Secours violates the Establishment Clause because it

(A) is not necessary to further the stated purposes of the exemption, (B) harms Bon Secours workers, (C) puts Bon Secours competitors at an economic disadvantage, (D) relieves Bon Secours of no genuine religious burden created by ERISA, and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

## A.      Not Necessary to Further Stated Purpose

Congress enacted the Church Plan exemption to avoid "examination of books and records . . . an unjustified invasion of the confidential relationship with regard to churches and their religious activities."[3] This purpose has no application to Bon Secours, which is neither run by nor intimately connected to any church financially. And, unlike a church, Bon Secours has no confidential books and records to shield from government scrutiny. Bon Secours already purports to disclose all material financial records and relationships when it seeks Medicare and Medicaid reimbursements and issues tax exempt bonds.

## B.      Harms Workers

Employers, including Bon Secours, are not legally required to provide pensions; instead, they choose to provide pensions in order to reap tax rewards and attract and retain employees in a competitive labor market. Bon Secours tells prospective employees that any choice of faith, or lack thereof, is not a factor in the recruiting and hiring of Bon Secours employees.  Thus, as a practical matter, and by Bon Secours's own design, its pension plan participants include people of a vast number of divergent faiths, as well as those who belong to no faith. In choosing to recruit and hire from the public at large, Bon Secours must be willing to accept neutral regulations, such as ERISA, imposed to

---

[3]      S. Rep. No. 93-383 (1972), *reprinted in* 1974 U.S.C.C.A.N. 4889, 4965.

protect those employees' legitimate interests. To be constitutional, an accommodation such as the

Church Plan exemption must not impose burdens on non-adherents without due consideration of their

interests. The Church Plan exemption, as claimed by Bon Secours, places its tens of thousands of

longtime employees' justified reliance on their pension benefits at great risk, including because the

Plans are uninsured and underfunded by $390 million. In addition, Bon Secours fails to provide the

multitude of other ERISA protections designed to safeguard its employees' pensions. The Church Plan

exemption, as claimed by Bon Secours, provides no consideration of the harm that it causes to Bon

Secours's employees.

**C.**     **Puts Bon Secours's Competitors at an Economic Disadvantage**

Bon Secours's commercial rivals face material disadvantages in their competition with Bon

Secours because the rivals must use their current assets to fully fund, insure (through premiums to the

PBGC), and administer their pension plans, as well as providing other ERISA protections.  In claiming

that the Bon Secours Plans are exempt Church Plans, Bon Secours enjoys a material competitive

advantage because it is able to divert significant cash, which otherwise would be required to fund, insure

(through premiums to the PBGC), and administer the Bon Secours Plans, to its competitive growth

strategy. To be constitutional, an accommodation such as the Church Plan exemption must take adequate

account of harm to nonbeneficiaries. The Church Plan exemption, as applied by Bon Secours, provides

no consideration of the disadvantage it creates for Bon Secours's competitors.

**D.**     **Relieves No Genuine Religious Burden Imposed by ERISA**

An exemption exclusively for religion must alleviate a significant, *state-imposed* interference

with religious exercise. The Church Plan exemption, as claimed by Bon Secours, responds to no genuine

burden created by ERISA on any of Bon Secours's religious practices. ERISA is materially

indistinguishable from the array of neutral Congressional enactments that do not significantly burden religious exercise when applied to commercial activities. Moreover, Bon Secours maintains multiple separate ERISA-governed plans, which further evidences that ERISA creates no undue burden on any genuine religious practice of Bon Secours.

**E.      Creates Government Entanglement with Alleged Religious Beliefs**

An Bon Secours exemption requires courts and agencies to examine unilateral religious "convictions" of a non-church entity and determine if they are "shared" with a church, in the absence of any actual church responsible for the pensions. This *creates* entanglement between government and putative religious beliefs. ERISA compliance, on the other hand, requires *zero* entanglement with religion for Bon Secours because ERISA is a neutral statute that regulates pension protections and Bon Secours has no relevant confidential books, records or relationships. Thus, an extension of the Church Plan exemption to Bon Secours produces state entanglement with alleged religious beliefs while compliance with ERISA creates no meaningful state entanglement with alleged religious beliefs.

170.    Plaintiff seeks a declaration by the Court that the Church Plan exemption, as claimed by Bon Secours, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

**VIII.   PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants on all claims and requests that the Court award the following relief:

A.      Declaring that the Bon Secours Plans are employee pension benefit plans within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), are defined benefit pension plans within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), and are not Church Plans within the definition of ERISA § 3(33),

29 U.S.C. § 1002(33). Ordering Bon Secours to reform the Bon Secours Plans to bring them into compliance with ERISA and to have the Bon Secours Plans comply with ERISA, including as follows:

1.      Revising the Plan documents to reflect that the Plans are defined benefit plans regulated by ERISA.

2.      Requiring Bon Secours to fund the Bon Secours Plans in accordance with ERISA's funding requirements, disclose required information to the Bon Secours Plans, participants, and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Parts 1, 2 and 3 of Title I of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85.

3.      Reforming the Bon Secours Plans to comply with ERISA's vesting and accrual requirements and providing benefits in the form of a qualified joint and survivor annuity.

4.      Requiring the adoption of instruments governing the Bon Secours Plans that complies with ERISA § 402, 29 U.S.C. § 1102.

5.      Requiring Bon Secours to comply with ERISA reporting and disclosure requirements, including by filing Form 5500 reports, distributing ERISA-compliant Summary Plan Descriptions, Summary Annual Reports, and ERISA-compliant Participant Benefit Statements, and providing Notice of the Bon Secours Plans' funding status and deficiencies.

6.      Requiring clarification of rights to future benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1102(a)(1)(B).

7.      Requiring the establishment of a Trust in compliance with ERISA § 403, 29 U.S.C. § 1103.

B.      Requiring Bon Secours, as a fiduciary of the Plans, to make the Bon Secours Plans whole for any losses and disgorge any Bon Secours profits accumulated as a result of its fiduciary breaches.

C.      Appointing an Independent Fiduciary to hold the Bon Secours Plans' assets in trust, to manage and administer the Bon Secours Plans and their assets, and to enforce the terms of ERISA.

D.      Requiring Bon Secours to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to inform Plaintiff and each Class member of its failure to properly fund the Plans.

E.      Requiring Bon Secours to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to provide Plaintiff and each Class member with a Funding Notice.

F.      Requiring Bon Secours to pay a civil money penalty of up to $110 per day to Plaintiff and each Class member for each day it failed to provide a benefit statement under ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B).

G.      Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Bon Secours Plans.

H.      Declaring, with respect to Count VIII, that the Church Plan exemption, as claimed by Bon Secours, is an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

I.      Awarding to Plaintiff attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

J.        Awarding to Plaintiff taxable costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), 28

U.S.C. § 1920, and other applicable law.

K.        Awarding to Plaintiff pre-judgment interest on any amounts awarded pursuant to law.

L.        Awarding, declaring or otherwise providing Plaintiff and the Class all relief under ERISA

§ 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper.

DATED: April 11, 2016.                    /s/   R. Joseph Barton

                                COHEN MILSTEIN SELLERS & TOLL, PLLC
                                R. Joseph Barton, 15665
                                Karen L. Handorf (*pro hac vice* to be filed)
                                Michelle Yau (*pro hac vice* to be filed)
                                Kira Hettinger (admission application forthcoming)
                                1100 New York Avenue, N.W.
                                Suite 500, West Tower
                                Washington, D.C.  20005
                                Tel: (202) 408-4600
                                Fax: (202) 408-4699
                                Email: jbarton@cohenmilstein.com
                                        khandorf@cohenmilstein.com
                                        myau@cohenmilstein.com
                                        khettinger@cohenmilstein.com

                                KELLER ROHRBACK L.L.P.
                                Lynn Lincoln Sarko
                                1201 Third Avenue, Suite 3200
                                Seattle, WA 98101
                                Tel: (206) 623-1900 / Fax: (206) 623-3384
                                Email: lsarko@kellerrohrback.com

                                KELLER ROHRBACK P.L.C.
                                Ron Kilgard
                                3101 North Central Avenue, Suite 1400
                                Phoenix, AZ 85012
                                Tel: (602) 248-0088 / Fax: (602) 248- 2822
                                Email:  rkilgard@kellerrohrback.com

                                ***Attorneys for Plaintiff***