# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# (BALTIMORE DIVISION)

| | | |
|---|---|---|
| ARLENE HODGES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 1:16-cv-1079 (RDB) |
| | ) | |
| v. | ) | |
| | ) | |
| BON SECOURS HEALTH | ) | |
| SYSTEM, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT AGREEMENT**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND .................................................................................................... 2

    A.    Procedural History & Settlement Negotiations ........................................ 2
    B.    Settlement Negotiations .......................................................................... 4
    C.    Terms of the Settlement Agreement ....................................................... 5
    D.    Reasons for the Settlement ...................................................................... 8

III. PROPOSED SCHEDULE .................................................................................... 8

IV. THE SETTLEMENT AGREEMENT MERITS PRELIMINARY APPROVAL ............. 9

    A.    The Proposed Settlement Is Fair ........................................................... 11
        1.    The Posture of the Case ................................................................. 11
        2.    The Extent of Discovery ................................................................ 12
        3.    The Circumstances Surrounding the Negotiations ..................... 13
        4.    The Experience of Interim Class Counsel .................................... 13
    B.    The Proposed Settlement Is Adequate ................................................. 14
        1.    Plaintiffs Face Risk of Not Prevailing on the Merits ................. 15
        2.    Plaintiffs Would Likely Encounter Multiple Defenses at Trial,
            Following Extended and Expensive Additional Litigation ......... 16
        3.    The Settlement Agreement Provides a Recovery and Protections
            Similar to what Plaintiffs Would Seek in Further Litigation ..... 17
        4.    The Degree of Opposition to the Settlement ............................... 20

V. CERTIFICATION OF THE CLASS IS APPROPRIATE ............................................ 20

    A.    The Proposed Class Satisfies the Requirements of Rule 23(a) ............ 21
    B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2) ......... 22
        1.    Individual Actions Would Create Inconsistent Adjudications or Be
            Dispositive of the Interests of Absent Members ......................... 22
        2.    Defendants Have Acted on Grounds Generally Applicable to the
            Class and Relief for the Class as a Whole Is Appropriate ......... 23
    C.    Rule 23(g) Is Satisfied ......................................................................... 24
    D.    The Proposed Notice Satisfies Rule 23 and Due Process Requirements ........ 25

VI. CONCLUSION .................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advocate Health Care Network v. Stapleton*,
  817 F.3d 517 (7th Cir. 2016), *cert. granted*, 137 S. Ct. 546 (U.S. Dec. 2, 2016) ....................4

*In re Am. Cap. S'holder Derivative Litig.*,
  2013 WL 3322294 ...........................................................................................................10, 11

*In re Am. Cap. S'holder Derivative Litig.*,
  Nos. 11–2424 PJM, 11-2428 .....................................................................................................10

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).....................................................................................................................20

*Banyai v. Mazur*,
  205 F.R.D. 160 (S.D.N.Y. 2002) ...............................................................................................21

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
  338 F.3d 755 (7th Cir. 2003) .....................................................................................................24

*Berry v. Schulman*,
  807 F.3d 600 (4th Cir. 2015) ..................................................................................................9, 11

*Boyd v. Coventry Health Care Inc.*,
  299 F.R.D. 451 (D. Md. 2014)............................................................................................ *passim*

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981).......................................................................................................................11

*Case v. Plantation Title Co.*,
  Nos. 9:12-CV-2518-DCN-BM, 9:12-CV-2804-DCN-BM, 2015 WL 1034461
  (D.S.C. Mar. 5, 2015) ...................................................................................................................9

*Decohen v. Abbasi, LLC*,
  299 F.R.D. 469 (D. Md. 2014)..............................................................................................15, 16

*Di Felice v. U.S. Airways*,
  235 F.R.D. 70 (E.D.Va. 2006) ...................................................................................................23

*Dignity Health v. Rollins*,
  830 F.3d 900 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 547 (U.S. Dec. 2, 2016)
  . ECF No. 78 ...............................................................................................................................4

*Domonoske v. Bank of America*, *N.A.*,
  790 F. Supp. 2d 466 (W.D.Va. 2011) ........................................................................................12

*Durm v. Am. Honda Fin. Corp.*,
    No. WDQ-13-223, 2015 WL 6756040 (D. Md. Nov. 4, 2015) ................................................9

*Edelen v. American Residential Servs., LLC*,
    No. DKC-11-2744, 2013 WL 3816986 (D. Md. July 22, 2013)..............................................13

*Flinn v. FMC Corp.*,
    528 F.2d 1169 (4th Cir. 1975) ................................................................................................11

*Gen. Tel. Co. v. Falcon*,
    457 U.S. 147 (1982)................................................................................................................22

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................................23, 24

*Hewlett v. Premier Salons Int'l, Inc.*,
    185 F.R.D. 211 (D. Md. 1997)................................................................................................22

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) .....................................................................................9, 11, 15

*In re Jiffy Lube Sec. Litig.*,
    No. Y-89-1939, 1990 WL 39127 (D. Md. Jan. 2, 1990) ......................................................14

*Lomascolo v. Parsons Brinkerhoff, Inc.*,
    No. 1:08CV1310, 2009 WL 3094955 (E.D. Va. Sept. 28, 2009) ...........................................9

*Lown v. Continental Casualty Co.*,
    238 F.3d 543 (4th Cir. 2001) ..................................................................................................16

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985)..........................................................................................................20, 24

*Medina v. Catholic Health Initiatives*,
    No. 13-cv-01249-REB-KLM (D. Colo. 2015).......................................................................16

*In re Mid–Atlantic Toyota Antitrust Litig.*,
    564 F.Supp. at 1383_–8 ..........................................................................................................11

*In re Mid-Atlantic Toyota Antitrust Litigation*,
    564 F. Supp. 1379 (D. Md. 1983) ...........................................................................10, 11, 14

*In re the Mills Corp. Sec. Litig.*,
    265 F.R.D. 246 (E.D. Va. 2009) ............................................................................................13

*Mitchell–Tracey v. United Gen. Title Ins. Co.*,
    237 F.R.D. 551 (D. Md. 2006)................................................................................................22

iii

*In re Montgomery Cnty. Real Estate Antitrust Litig.*,
  83 F.R.D. 305 (D. Md. 1979)................................................................14

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950)........................................................................25

*In re Mut. Funds Inv. Litig.*,
  MDL No. 1586, 2010 WL 2307568 (D. Md. May 19, 2010) .................................24

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998)................................................................9

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3rd Cir. 2009) ............................................................23

*St. Peter's Healthcare System v. Kaplan*,
  810 F.3d 175 (3d Cir. 2015), *cert. granted*, 137 S. Ct. 546 (U.S. Dec. 2, 2016)......................4

*Tatum v. R.J. Reynolds Tobacco Co.*,
  254 F.R.D. 59 (M.D.N.C. 2008) ...........................................................21

*Thorn v. Jefferson–Pilot Life Ins. Co.*,
  445 F.3d 311 (4th Cir. 2006) .............................................................21

*In re Titanium Dioxide Antitrust Litig.*,
  No. RDB-10-0318, 2013 WL 5182093 (D. Md. Sept. 12, 2013) ................10, 11, 15

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)................................................................13

*Whitaker v. Navy Fed. Credit Union*,
  No. RDB 09-CV-2288, 2010 WL 3928616 (D. Md. Oct. 4, 2010) ........................11

**STATUTES**

28 U.S.C. § 1715(d) ..............................................................................9

29 U.S.C. § 1002(33) .........................................................................1, 16

ERISA § 502(a)..............................................................................23, 24

Pension and Employee Benefit Law 78–83 (5th ed. 2010) .........................................19

Pension and Employee Benefit Law 187–88 (6th ed. 2015) .......................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 16...........................................................................2, 3, 12

57087188v3

Fed R. Civ. P. 23 ...............................................................1, 6, 9, 20, 21, 22, 23, 24, 25

Fed. R. Civ. P. 26 ...........................................................................................................3

Fed. R. Civ. P. 34 ...............................................................................................2, 3, 12

Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 13.44 (5th ed. 2014) ...................9

6 James Wm. Moore et al., *Moore's Federal Practice* (3d ed. 1999) ............................................9

*Manual for Complex Litigation* § 30.42 (1995).............................................................9

*Newberg on Class Actions* (5th ed. 2014)...............................................................9, 26

Plaintiffs Arlene Hodges, Carolyn Miller, and Gary Brown ("Named Plaintiffs"), by and through their attorneys, respectfully move the Court for an Order: (1) preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement")[1] described herein; (2) preliminarily certifying the proposed Settlement Class pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2); (3) approving the form and method of Class Notice; and (4) setting a date and time for a hearing (the "Fairness Hearing") for consideration of final approval of the Settlement, payment of attorneys' fees and expenses, and payment of Incentive Awards to Named Plaintiffs .[2]

## I. INTRODUCTION

This Settlement resolves the claims of all Plaintiffs in this case against all Defendants. The Second Consolidated Amended Class Action Complaint, ECF No. 77 ("Complaint"), alleges that Bon Secours Health System, Inc. ("BSHSI") denied protections under the Employee Retirement Income Security Act of 1974 ("ERISA") to the participants and beneficiaries of seven Bon Secours defined benefit plans ("Plans") claimed by BSHSI to qualify as ERISA-exempt "Church Plans."  *See* 29 U.S.C. § 1002(33).  The Settlement was reached after full briefing on appointment of Interim Lead Class counsel; the filing of two amended consolidated complaints as well as the addition of Plaintiff Brown, who did not vest in the Bon Secours Hampton Roads Plan due to a vesting schedule that was not ERISA-compliant; propounding early Rule 34 discovery

---

[1] A copy of the Settlement Agreement is attached as Exhibit 1 ("Ex. 1") to the Declaration of Michelle C. Yau ("Yau Decl.") filed herewith. Capitalized terms not otherwise defined in this memorandum shall have the same meaning ascribed to them in the Settlement Agreement.

[2] *See* Yau Decl. at Ex. 2 ([Proposed] Order Preliminarily Approving the Settlement, Certifying the Class, Approving Notice to the Class, and Scheduling Final Approval Hearing ("Preliminary Approval Order")); Ex.3 Draft Notice of Proposed Settlement of ERISA Class Action Litigation, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Expenses ("Draft Notice of Proposed Settlement"); and Ex. 4 [Proposed] Order and Final Judgment ("Final Approval Order").

requests seeking Plan documents; motion practice relating to setting a Rule 16 scheduling conference to move the case forward and gain production of Plan documents; Defendants' Motion to Dismiss the Complaint; and arm's-length negotiations with a mediator.  The Settlement is an excellent result for the proposed Settlement Class of participants in and beneficiaries of the Plans.[3] The Class Settlement Amount is $98.3 million, which includes a $98 million contribution to the Plans over seven years (benefitting Group A Class Members) and a direct cash payment of $300,000 in the aggregate to 530 former participants in the Bon Secours Hampton Roads Plan. These former participants left covered service under the Hampton Roads Plan after January 1, 2008 having completing at least three, but fewer than five years of vesting service with a positive account balance as of January 1, 2016 who, as a result, allegedly forfeited a benefit accrual under a cash balance or pension equity formula (Group B Class Members).  The total of $98 million in contribution to the Plans represents the total underfunding on an ERISA basis for the Plans at the time the settlement was reached.  In other words, $98 million in addition to the existing assets of the Plans would result in a 100% funding ratio under ERISA.   In addition to the cash payments, the Settlement provides for significant non-monetary protections with respect to the Plans, which will enhance the retirement security of the members of the Settlement Class—in essence mimicking some of ERISA's key provisions through mid-2025.

## II.  BACKGROUND

### A.    Procedural History & Settlement Negotiations

On April 11, 2016, Plaintiff Hodges filed a putative Class Action Complaint in this District against BSHSI—a large, non-profit healthcare provider—and various other defendants (collectively, the "Defendants") alleging violations of ERISA.  Plaintiff Hodges was represented

---

[3] "Plan" or "Plans" are defined in ¶ 1.14 of the Settlement Agreement.  *See also* Schedule A to the Settlement Agreement, listing the seven plans at issue.

by Cohen Milstein Sellers &Toll PLLC ("Cohen Milstein"), and Keller Rohrback L.L.P ("Keller

Rohrback").  One week later, a similar putative Class Action Complaint was also filed in this

District by Plaintiff Miller, who was represented by Kessler Topaz Metzler & Check, LLP and

Izard, Kindall & Raabe, LLP.  After motions were filed by both Plaintiffs, the Court consolidated

the actions and appointed Cohen Milstein sole Interim Lead Class Counsel and Plaintiffs Hodges

and Miller as Lead Plaintiffs.  The Court ordered Plaintiffs to file a Consolidated Amended Class

Action Complaint.

Before amending the Complaint, however, Plaintiffs sought through discovery Plan

documents for each of the seven BSHSI "Church Plans."  On August 8, 2016, Plaintiffs delivered

early Rule 34 requests for production of documents related to the Plans at issue.  However, under

Rule 26(d)(2)(B), this discovery was not deemed served until the Parties completed an initial Rule

26(f) conference. Fed. R. Civ. P. 26(d)(2)(B).  Accordingly, on August 31, 2016, Plaintiffs filed a

motion to set a Rule 16 scheduling conference. The Rule 16 scheduling conference would have

effectively commenced service of the discovery requests.  ECF No. 58. Defendants responded in

opposition on September 19, 2016, and Plaintiffs replied on September 20, 2016.  ECF Nos. 61,

62.  On September 21, 2016, the Court held a hearing on the motion.  The Court denied Plaintiffs'

motion, and ordered Plaintiffs to file a Consolidated Amended Class Action Complaint by

October 6, 2016. ECF No. 63.

On October 6, 2016, Plaintiffs filed their Consolidated Amended Complaint.  ECF No. 66.

On December 5, 2016, Defendants filed a motion to dismiss for lack of subject matter jurisdiction

and failure to state a claim. ECF Nos. 70, 71. The motion focused on issues of (i) constitutional

standing to bring the claims; (ii) whether only a church can establish a Church Plan; (iii) whether

Plaintiffs had sufficiently alleged that the BSHSI Plans were not established by a church; (iv)

whether Plaintiffs had sufficiently alleged that the BSHSI Plans were not maintained  by a church

3

or by a "principal purpose" organization (as defined in ERISA) controlled by or associated with a church; and (v) whether Plaintiffs' Establishment Clause count was sufficiently pled.  *Id.*

On January 13, 2017, Plaintiffs filed a Second Consolidated Amended Class Action Complaint adding Plaintiff Brown and rendering Defendants' motion to dismiss moot.  ECF No. 77. The same day, Plaintiffs and Defendants filed a motion jointly requesting the case be stayed pending the Supreme Court's ruling on three "Church Plan" cases:  *Advocate Health Care Network v. Stapleton*, 817 F.3d 517 (7th Cir. 2016), *cert. granted*, 137 S. Ct. 546 (Mem) (U.S. Dec. 2, 2016) (No. 16-74); *St. Peter's Healthcare System v. Kaplan*, 810 F.3d 175 (3d Cir. 2015), *cert. granted*, 137 S. Ct. 546 (Mem) (U.S. Dec. 2, 2016) (No. 16-86); and *Dignity Health v. Rollins*, 830 F.3d 900 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 547 (Mem) (U.S. Dec. 2, 2016) (No. 16-258). ECF No. 78. The Court granted the Parties' motion on January 17, 2017, ordering the case stayed until the Supreme Court issued its opinion in these consolidated Church Plan cases and mooting Defendants' Motion to Dismiss.  ECF No. 81.

**B.**    **Settlement Negotiations**

While the case was stayed, the Parties prepared for mediation with a highly respected third-party mediator, Robert Meyer, Esq. of JAMS, Inc.  Mr. Meyer has substantial experience mediating cases involving ERISA and retirement plan issues, including cases involving the Church Plan exemption.  Yau Decl. ¶ 8.  The settlement negotiations included an in-person mediation session on April 11, 2017, at JAMS offices in New York, New York.  Yau Decl. ¶ 9. Both sides provided the mediator with their respective mediation statements and exchanged proposals and counter-proposals concerning potential settlement terms.

By the end of the all-day mediation, the Parties reached an agreement to settle the case and memorialized the key terms of the agreement in a "term sheet" dated April 11, 2017.  Yau Decl. ¶ 11.  The Parties notified the Court of the Settlement the next day.  Joint Notice of Settlement, ECF

No. 85.  The Court, by motion of the Parties, extended the present stay until May 15, 2017, when Plaintiffs would file their motion for preliminary approval of the Settlement.  ECF No. 87.  The Parties continued to negotiate key parts of the settlement agreement after the term sheet was signed, with both sets of counsel zealously advocating for their clients.  Yau Decl. ¶ 12.  The Parties subsequently moved for an extension to file for preliminary approval until May 31, 2017, which was granted by the Court.  ECF Nos. 88, 89.

The Settlement Agreement now before the Court is a detailed, comprehensive agreement based on the term sheet. Yau Decl. ¶ 12. It was executed on May 31, 2017.  *Id*.  The Settlement Agreement is the result of lengthy and contentious arm's-length negotiations between the Parties. *Id*. ¶ 13.  The negotiation process was thorough, adversarial, and professional.

**C.      Terms of the Settlement Agreement**

The following summarizes the principal terms of the Settlement.  *See* Yau Decl. ¶ 3, Ex. 1.

**1.      Monetary Consideration.**

The monetary consideration provided under this Settlement is substantial, totaling $98.3 million.  Of that amount, BSHSI will contribute $98 million to the Plans over seven years, payable in $14 million annual installments[4].  Settlement Agreement ¶ 7.1.1.  The $98 million contribution to the Plans represents the total amount of underfunding of the Plans on an ERISA basis at the time of settlement.  BSHSI will also pay $300,000 total to certain participants of the Bon Secours Hampton Roads Plan who had three or more years of service and, therefore, would have been vested if the Hampton Roads Plan were subject to ERISA but were not vested under the Hampton Roads Plan terms which required five years of service (Group B Class Members receive this "Vested Payment"). Settlement Agreement ¶ 7.1.2.

---

[4] BSHSI may pre-pay any amount of the $98 million and receive credit for the payment in the following years. Settlement Agreement ¶ 7.1.1.

2. **Non-Monetary Equitable Consideration**.

In addition to monetary consideration, under the terms of the Settlement BSHSI also guarantees that if the assets in the Plans' trusts are ever insufficient to pay accrued benefits, BSHSI must make sufficient contributions to the trust to ensure all accrued benefits are paid through August 31, 2025. [5] Settlement Agreement ¶ 8.2. The Settlement Agreement also provides that through August 31, 2025, any amendment or termination of the Plans cannot reduce participants' accrued benefits. Settlement Agreement ¶ 8.4. Likewise, through August 31, 2025, if the Plans are ever merged with or into another plan during that time, participants will be entitled to the same or greater benefits than they were before the merger.  Settlement Agreement ¶ 8.3.

3. **Other Equitable Consideration**. The Settlement also includes equitable provisions which mimic certain provisions of ERISA concerning plan administration, summary plan descriptions, notices (annual summaries, pension benefits statements, current benefit values), and the Plans' claim review procedure.  These provisions are in place through August 31, 2025. Settlement Agreement ¶¶ 8.6–8.8.

4. **Class.**  The Settlement contemplates that the Court will certify a non-opt-out class under Federal Rule of Civil Procedure 23(b)(1) and/or (b)(2). Settlement Agreement ¶ 2.2.2. The Settlement Class is defined as: All vested or non-vested present and past participants of the Plans (or their beneficiaries) as of the Effective Date of Settlement.

5. **Released Claims**. Section 3 of the Settlement Agreement defines Released Claims as claims brought by Plaintiffs, or claims that could have been asserted by Plaintiffs based upon the allegations in the instant Action. However, the Released Claims definition contains a significant carve-out, providing that, with respect to any Plan,  BSHSI will not be released from

---

[5] August 31, 2025 is the end of BSHSI's Fiscal Year 2025.

any ERISA claim should one of the following events occur: (i) the Internal Revenue Service rules that the Plan does not qualify as a Church Plan; (ii) BSHSI, as the Plan sponsor, elects for the Plan to be covered by ERISA; (iii) a court of law issues a definitive ruling that the Plan is not a Church Plan; (iv) the Roman Catholic Church disassociates itself from the Plan sponsor; or (v) an amendment to ERISA is enacted and becomes effective as a law of the United States eliminating the Church Plan exemption.  Settlement Agreement ¶ 3.1.4.   In the event that any of these five situations occur, Class members retain claims against the BSHSI Plans that may arise under ERISA.

  **6.** <u>**Notice**</u>.   The draft [Proposed] Preliminary Approval Order, attached as Exhibit 2 to the Yau Declaration, provides for the following notices: (a) a mailed notice, to be mailed to the last known address of members of the Settlement Class; (b) for members of Group B, an enclosure accompanying the notice stating that the recipient is a member of Group B; and (c) internet publication of the Settlement Agreement and Class Notice at www.cohenmilstein.com/bon-secours-settlement.  Defendants will pay the cost for notice.  *See* Yau Decl. at Ex. 2 (Preliminary Approval Order), Ex. 3 (Draft Class Notice); *see also* Settlement Agreement ¶ 7.2.

  **7.** <u>**Attorneys' Fees**</u>.   By separate application to be filed prior to the Fairness Hearing, Class Counsel will seek an award of attorneys' fees, expenses and Incentive Awards for Named Plaintiffs, in a total amount not to exceed $3.5 million. The Settlement Class shall be notified of these details in the Class Notice.   The attorneys' fees, expenses and Incentive Awards for Named Plaintiffs, if awarded, are in addition to the monetary recovery for the Class under the Settlement terms (*i.e.*, the maximum $3.5 million payment  will not reduce the $98 million contributions to the Plans and the $300,000 in payments to the Class members in Group B). Settlement Agreement ¶¶ 7.1.4–7.1.5.

D.      **Reasons for the Settlement**

Plaintiffs have entered into the Settlement with an understanding of the strengths and weaknesses of their claims. This understanding is based on: (1) the motion practice undertaken by the Parties; (2) investigation and research;  (3) the Plan documents produced pursuant to the mediation process; (4) the likelihood that Plaintiffs would prevail at trial; (5) the range of possible recovery; (6) the substantial complexity, expense, and duration of litigation necessary to prosecute this action through trial, post-trial motions, and likely appeal, and the significant uncertainties in predicting the outcome of this complex litigation, which involves issues currently before the United States Supreme Court; and (7) Defendants' determination to fight and contest every aspect of this case. Having undertaken this analysis, Interim Class Counsel and Plaintiffs have concluded that the Settlement is fair, reasonable, and adequate, and should be presented to the Court for approval.

### III.  PROPOSED SCHEDULE

The Parties have agreed to the following set of deadlines, the specific dates of which will be determined after the Court enters the Preliminary Approval Order and sets a Fairness Hearing date:

| Event | Time for Compliance |
|---|---|
| Deadline for CAFA Notice | 10 days after entry of the Preliminary Approval Order |
| Deadline for mailing of Class Notice and posting Class Notice to settlement website | 60 days after entry of the Preliminary Approval Order |
| Deadline for filing Plaintiffs' motions for final approval, attorneys' fees and expenses, and Incentive Awards to Plaintiffs | 45 days prior to the proposed Fairness Hearing |
| Deadline for the Settlement Class to comment upon or object to the proposed Settlement | 28 days prior to the proposed Fairness Hearing |

| Deadline for filing Plaintiffs' reply in support of motions for final approval, attorneys' fees and expenses, and Incentive Awards to Plaintiffs, and for the Parties to respond to any comments or objections | 7 days prior to the proposed Fairness Hearing |
|---|---|
| Proposed Fairness Hearing | No sooner than 120 days after entry of the Preliminary Approval Order[6] |

## IV.  THE SETTLEMENT AGREEMENT MERITS PRELIMINARY APPROVAL

Judicial policy strongly favors compromise resolution of class action litigation prior to trial. *Case v. Plantation Title Co.*, Nos. 9:12-CV-2518-DCN-BM, 9:12-CV-2804-DCN-BM, 2015 WL 1034461, at *6 (D.S.C. Mar. 5, 2015) (citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)); *see also Durm v. Am. Honda Fin. Corp.*, No. WDQ-13-223, 2015 WL 6756040, at *4 (D. Md. Nov. 4, 2015) ("There is a 'strong presumption in favor of finding a settlement fair.'" (citing *Lomascolo v. Parsons Brinkerhoff, Inc.*, No. 1:08CV1310 (AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009)).[7]

Pursuant to Fed. R. Civ. P. 23(e), the court must review the proposed settlement of a class action to determine whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)); *In re Titanium Dioxide Antitrust Litig.*, No. RDB-10-0318, 2013 WL 5182093, at *3 (D. Md. Sept. 12, 2013) (same). "Review of a proposed class

---

[6] Pursuant to the U.S. Class Action Fairness Act of 2005, at 28 U.S.C. § 1715(d), the date of the Fairness Hearing must be at least 90 days after notices are served on the appropriate state and federal officials.

[7] 6 James Wm. Moore et al., *Moore's Federal Practice* (3d ed. 1999); *Manual for Complex Litigation* (THIRD) § 30.42 (1995); Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 13.44 (5th ed. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.") and *Newberg on Class Actions* § 13:45 ("[A] court will presume that a proposed class action settlement is fair when certain factors are present, particularly evidence that the settlement is the product of arms-length negotiation, untainted by collusion.").

action settlement generally involves two hearings." *In re Am. Cap. S'holder Derivative Litig.*, Nos. 11–2424 PJM, 11-2428 PJM/AW, 11-2459 PJM, 11-2459 RWT, 2013 WL 3322294, at *2 (D. Md. June 28, 2013) (quoting *Manual for Complex Litigation* (Fourth) § 21.632 (2004) (footnote omitted)). The first hearing is a "preliminary fairness" hearing, where the court makes "a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms" and "direct[s] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*; *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 5182093, at *3.   The second is the "fairness" hearing, where the court assesses whether the proposed settlement is "fair, reasonable, and adequate" for all class members.  *In re Am. Cap. S'holder Derivative Litig.*, 2013 WL 3322294, at *2 (quoting *Manual for Complex Litigation* (Fourth) § 21.634); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 5182093, at *3.

This case is now before the Court only on preliminary approval of the proposed settlement.  While the "essential inquiry" for both hearings is the same—whether the proposed settlement is fair, adequate, and reasonable—the purpose of the preliminary hearing is for the Court to determine whether there is "probable cause" to submit the proposed settlement to the class members and hold a "full-scale hearing on its fairness."  *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 5182093, at *3 (quoting *In re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. 1379 (D. Md. 1983)); *see also In re Am. Capital S'holder Derivative Litig.*, 2013 WL 3322294 at *3 (stating that the goal at the preliminary fairness hearing is to determine whether the proposed settlement is "sufficiently within the range of reasonableness so that notice . . . should be given.").  At this stage, the Court does not decide contested issues in the case as it would at trial— the role at preliminary approval is more "delicate," and requires a "balancing of likelihoods rather than an actual determination of the facts and law in passing upon whether the proposed settlement

is fair, reasonable and adequate." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172 n.4 (4th Cir. 1975); *see also Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (to evaluate the fairness of a proposed settlement the court need not "decide the merits of the case or resolve unsettled legal questions").

At the preliminary fairness hearing, the Court considers both (1) the "fairness" of the settlement and (2) the "adequacy" of the settlement. *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 5182093, at *3 (quoting *In re Mid-Atlantic Antitrust Litig.*, 564 F. Supp. at 1379); *see also In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991). The fairness prong relates to the procedural aspects of the settlement, while the adequacy evaluation focuses on the substance of the settlement. *See In re Am. Cap. S'holder Derivative Litig.*, 2013 WL 3322294 at *3; *Whitaker v. Navy Fed. Credit Union*, No. RDB 09-CV-2288, 2010 WL 3928616, at *2 (D. Md. Oct. 4, 2010); *In re Mid–Atlantic Toyota Antitrust Litig.*, 564 F.Supp. at 1383–84.

## A.      The Proposed Settlement Is Fair

The fairness analysis is performed primarily to ensure that a "settlement [is] reached as a result of good-faith bargaining at arm's length, without collusion." *Berry v. Schulman*, 807 F.3d at 614 (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159). In making this determination, a court should consider "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of . . . class action litigation." *Id.* These factors all support approval of the Settlement here.

### 1.      The Posture of the Case

Settlement negotiations began after the case was stayed pending the Supreme Court's decision in the three consolidated Church Plan cases. ECF Nos. 78 (Joint Motion to Stay) and 81 (Order Granting Motion). Before the case was stayed, Plaintiffs had filed a Second

Consolidated Amended Class Action Complaint in response to Defendants' motion to dismiss, which rendered the pending motion moot.  ECF No. 77.

### 2.       The Extent of Discovery

Prior to filing their claims, Interim Class Counsel conducted an extensive investigation into the facts of the case, consisting of review and analysis of publicly-available financial statements, information given to Plan participants, and interviews of several participants in the Plans. Yau Decl. ¶ 14.  This investigation, combined with detailed legal research, culminated in the filing of Plaintiffs' first Complaint, which was over fifty pages long.  ECF No. 1. Interim Class Counsel also conducted additional research prior to mediation, as Defendants provided confidential information pertaining to the Plans that totaled over 720 pages, all of which Interim Class Counsel reviewed.  Yau Decl. ¶ 15.  The Parties benefited from the exchange of documents prior to mediation and preparation of mediation statements, as it helped to crystallize the strengths and weaknesses of their respective positions.

Interim Class Counsel also briefed competing motions for appointment of Interim Lead Class Counsel; delivered early Rule 34 requests for production of documents related to the Plans at issue; filed a motion to set a Rule 16 scheduling conference to expedite production of such documents; argued the Rule 16 motion; and amended the Complaint twice. Yau Decl. ¶ 16. The absence of formal discovery does not undermine the integrity of the Settlement given the extensive investigation and hard-fought litigation that has taken place thus far.  Accordingly, by the time settlement negotiations commenced, the Parties were sufficiently apprised of the merits of the claims and defenses in the case.  *See Domonoske v. Bank of America*, *N.A.*, 790 F. Supp. 2d 466, 473 (W.D.Va. 2011) (noting that although discovery was not extensive at the time of settlement, the facts were straightforward and the discovery conducted was adequate to

"develop the record and apprise the parties of the merits."); *Edelen v. American Residential Servs., LLC*, No. DKC-11-2744, 2013 WL 3816986, at *8 (D. Md. July 22, 2013) (finding that the class action settlement was fair, although the scope of discovery was limited and no dispositive motions were filed, because the Parties had sufficient information about their claims and defenses when they approached settlement).

### 3.      The Circumstances Surrounding the Negotiations

The purpose of this factor is to examine the "negotiating process by which the settlement was reached" to ensure that "the compromise [is] the result of arm's length negotiations . . . necessary to effective representation of the class's interests." *In re the Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

The settlement negotiations took place about two weeks after oral argument was held in the Supreme Court on the issue of whether a Church Plan must be established by a church.  As noted above, the Parties reached the Settlement Agreement following an all-day, in-person mediation at JAMS in New York, followed by almost two months of extensive follow-up negotiations overseen by experienced mediator, Robert A. Meyer, Esq. Yau Decl. ¶¶ 8–12.   Mr. Meyer has mediated several other Church Plan cases.  Prior to the in-person mediation session, the Parties submitted confidential statements to the mediator. *Id*. ¶ 10.  The negotiations were conducted at arm's length and without collusion. *Id*. ¶ 13.  The strengths and weaknesses of the case were sufficiently well-developed by the Parties prior to mediation; thus, this factor also weighs in favor of approval of the settlement.

### 4.      The Experience of Interim Class Counsel

Interim Class Counsel has extensive experience in handling ERISA class action cases and Church Plan cases in particular.  Yau Decl. ¶ 17.   Interim Class Counsel, along with Keller

13

Rohrback, has served as co-counsel in all three of the appellate court cases now pending before the Supreme Court.  Yau Decl. ¶ 20.   Interim Class Counsel and Keller Rohrback have continued to represent those Plaintiffs before the Supreme Court.  *Id.*  Furthermore, Interim Class Counsel and Keller Rohrback serve, or have served, as co-counsel in roughly twenty cases pending across the country involving claims by other hospital systems that their plans qualify as Church Plans. Yau Decl. ¶ 17.  Interim Class Counsel's experience litigating and settling cases with similar issues weighs in favor of approval of this settlement.  *See In re Jiffy Lube Sec. Litig.*, No. Y-89-1939, 1990 WL 39127, at *7 (D. Md. Jan. 2, 1990) (finding co-lead counsel were "eminently well-qualified and experienced" in the area of law at issue, resulting in the informed and realistic assessment of the benefits of settlement in lieu of full litigation).

Furthermore, Interim Class Counsel has been able to develop the issues in this case to an appropriate point for settlement. They have conducted an extensive investigation; engaged in motion practice; and participated in arm's-length settlement negotiations concerning the issues in this litigation. Yau Decl. ¶ 21.  Interim Class Counsel possess a comprehensive understanding of both the strengths and the weaknesses of Plaintiffs' claims, and believe that the Settlement is fair, reasonable and is in the best interests of the Plans and the Settlement Class. *Id.*  This factor weighs heavily in favor of both preliminary and final approval of the Settlement.

**B.      The Proposed Settlement Is Adequate**

To evaluate the adequacy of a proposed settlement, the court "weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement." *In re Mid–Atlantic Toyota Antitrust Litig.*, 564 F.Supp. at 1384 (quoting *In re Montgomery Cnty. Real Estate Antitrust Litig.*, 83 F.R.D. 305, 315–16 (D. Md. 1979)). In doing so, a court should consider: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the

14

anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159; *In re Titanium Dioxide Antitrust Litig.*, No. RDB-10-0318, 2013 WL 5182093, at *3-4 (D. Md. Sept. 12, 2013); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014).

### 1.   Plaintiffs Face Risk of Not Prevailing on the Merits

In Plaintiffs' view, pursuant to ERISA, only a church can establish a Church Plan; the Plans here are not ERISA-exempt Church Plans because they were established by BSHSI, a health care corporation, not a church.  However, as noted above, the favorable decisions from the Third, Seventh and Ninth Circuits holding that a Church Plan must be established by a church are all presently under review by the Supreme Court.  The Parties expect a decision before the end of June 2017.  Therefore, the interpretation of the ERISA provision at issue—and whether a Church Plan claiming an exemption to ERISA must be established by a church—was uncertain when the Parties negotiated the Settlement.  This uncertainty remains.  Even as Plaintiffs believe their statutory interpretation is correct, it is undeniably possible that the Supreme Court may view the Church Plan exemption as Defendants do.

Furthermore, continuing to litigate the merits of this case is a significant undertaking, which would require both sides taking on risk, expenses, and additional delay.  Defendants have forcefully defended their position throughout this litigation, and they would likely continue to do so through trial and on appeal if necessary.  The Settlement Agreement provides the Class with both significant monetary and equitable consideration for their claims, commensurate with the remedies Plaintiffs would seek if this case proceeded to trial.  Moreover, this consideration is more beneficial for participants now, as it is certain and immediate, whereas a more significant recovery after trial is only a mere possibility and would require an expensive and protracted trial

and appeal.  *See Decohen*, 299 F.R.D. at 480 (finding the settlement adequate because if it were

not approved, "the road to recovery . . . likely would be protracted and costly . . . .").

> 2.    **Plaintiffs Would Likely Encounter Multiple Defenses at Trial, Following Extended and Expensive Additional Litigation**

If this Settlement is not approved, a significant amount of litigation would lie ahead, regardless

of the Supreme Court's decision.  If the Supreme Court affirms the appellate courts' interpretation of

the Church Plan exemption, the Parties would likely enter discovery on whether BSHSI is a church.[8]

This would require substantial time and resources, as both Interim Class Counsel and Defendants'

counsel are aware, having undertaken such discovery on this issue in a separate Church Plan case.  *See*

*Medina v. Catholic Health Initiatives*, No. 13-cv-01249-REB-KLM (D. Colo. 2015).  Conversely, if

the Supreme Court reverses the appellate court decisions, Plaintiffs' secondary theory of liability

would have to be addressed—(1) that the Benefits Plan Administrative Committee does not constitute

a "principal purpose" organization, the primary purpose of which is the administration or funding of

the BSHSI Plans, and (2) that the Benefits Plan Administrative Committee is not controlled by or

associated with a church as required by 29 U.S.C. § 1002(33)(C)(i).  ECF No. 77 at ¶ 6. While the

Fourth Circuit has interpreted the phrase "controlled by or associated with a church," it has not

considered whether a committee satisfies the "principle purpose" requirement.  *See Lown v.*

*Continental Casualty Co.*, 238 F.3d 543 (4th Cir. 2001) (determining that an organization is controlled

by a church when a religious institution appoints a majority of the organization's officers or directors,

and an organization is associated with a church when the corporation shares common bonds and

convictions with the church). This issue has also not been addressed in any of the appellate decisions

---

[8] In Defendants' Motion to Dismiss, they challenged Plaintiffs' assertions in the Complaint that BSHSI was not a church.  ECF No. 71 at 29.  This indicates that in the event the Supreme Court holds that a Church Plan must be established by a church, Defendants may argue that BSHSI is a church.

currently under review by the Supreme Court.  Accordingly, whether a committee can be a principal purpose organization would be an issue of first impression in this Court.  In addition, the Complaint includes an alternative claim that in the event that the Court determined that the Plans fall within the scope of the Church Plan exemption, ERISA would still apply because application of the exemption to the Plans would be an unconstitutional accommodation under the Establishment Clause of the First Amendment.  ECF No. 77 at ¶ 10.

Proceeding forward on these issues would include a substantial amount of work.  Further litigation would likely entail briefing on a second motion to dismiss, completion of fact and expert discovery, class certification, designation of witnesses and exhibits, preparation of pre-trial memoranda and proposed findings of fact and conclusions of law, presentation of witnesses and evidence at trial, and, depending on the trial court's ruling on the merits, briefing of the losing party's almost-certain appeal. Defendants are represented by highly experienced counsel, and they have forcefully defended their actions with respect to their Plans.  The likely extent and expense of further litigation favors resolving Plaintiffs' claims now.

As evidenced by the vigor with which they have prosecuted the action and the substantial amount of time and money they have expended to that end, Plaintiffs and Interim Class Counsel firmly believe in Plaintiffs' claims and the legal basis for them.  But risk is inherent in any litigation, especially here, where the Supreme Court is presently reviewing three appellate decisions affirming Plaintiffs' interpretation of ERISA's Church Plan exemption.  Set against this legal landscape, there is more than sufficient uncertainty to warrant settlement.

### 3.  The Settlement Agreement Provides a Recovery and Protections Similar to what Plaintiffs Would Seek in Further Litigation

In view of the potential obstacles to recovery outlined above, the Settlement payment of $98.3 million to the Plans and certain members of the Settlement Class who were participants in

17

or beneficiaries under the Plans is a highly favorable recovery.  First, the $98 million contribution

to the seven Plans over the course of seven years represents a contribution of the full amount of

underfunding of the Plans on an ERISA basis at the time of settlement, which was a significant

part of the recovery sought by Plaintiffs upon the filing of the initial Complaint.  Moreover, the

$300,000 payment to the Bon Secours Hampton Roads Plan participants who left covered service

after working more than three but fewer than five years is a significant benefit to these Class

members, as they otherwise would have no pension benefit under the Hampton Roads Plan.  The

$300,000 payment, allocated on a proportional basis in accordance with the accrued benefit of

each individual's account, provides relief for the alleged improper vesting schedule of the Plan.

In addition, Defendants have articulated a statute of limitations defense, reliant on Virginia's five

year statute of limitation for breach of contract, which had the potential to adversely impact the

availability and amount of any monetary recovery to many of these Plan participants.  In reaching

the $300,000 payment, the parties took this risk into account.

Furthermore, the non-monetary consideration provided by the Settlement Agreement

provides substantial benefits to the Plans' participants and beneficiaries. So long as BSHSI (or an

entity controlled by BSHSI) continues to sponsor the Plans, BSHSI will guarantee that the Plans

have sufficient funds to pay the accrued benefits payable to participants under the terms of the

Plans for more than eight years through BSHSI Fiscal Year 2025 (August 31, 2025). Settlement

Agreement ¶ 8.2. BSHSI has made similar financial commitments for participants should there be

a plan termination or merger through Fiscal Year 2025 and, during this period, BSHSI will not

amend any of the seven Plans to decrease the accrued benefit of any participant in that Plan.

Specifically, BSHSI has guaranteed through August 31, 2025 that: (1) none of the Plans may be

terminated unless there are sufficient assets to meet the accrued benefits (as defined by the

relevant Plan) earned by participants at the time of Plan termination or benefit annuitization; (2) if any Plan is amended, the amendment will not decrease any participant's accrued benefit under the Plan; and (3) if any Plan is merged into another Plan, participants will be entitled to the same (or greater) benefits post-merger as they enjoyed before the merger. *Id.* ¶¶ 8.3–8.4.

These commitments are significant, as currently the liabilities of the Plans are "fund-specific." Prior to the enactment of ERISA, the sponsor of a defined benefit plan could limit its responsibility for benefit levels to whatever assets were contained in the trust fund, i.e., a "fund-specific plan." John Langbein *et al.*, Pension and Employee Benefit Law 187–88 (6th ed. 2015). As explained in the Complaint, among the factors that led to the enactment of ERISA were the widely publicized failures of certain defined benefit pension plans, especially the fund-specific plan for employees of Studebaker Corporation, an automobile manufacturing company which defaulted on its pension obligations in 1965. Compl. ¶ 20, ECF No. 1 (citing John Langbein *et al.*, Pension and Employee Benefit Law 78–83, (5th ed. 2010)). ERISA was enacted, in part, to prohibit the fund-specific defined benefit promise which failed the Studebaker employees. *Id.* Plaintiffs allege that in claiming the Church Plan exemption, the Plan is, in essence, a Studebaker-esque pre-ERISA plan. Accordingly, the Settlement's significant non-monetary, equitable consideration provides the Plans' participants and beneficiaries with several important ERISA-like protections through August, 2025 that they otherwise would lack.

Additionally, the Settlement provides that in the event that: (i) the Internal Revenue Service issues a written ruling that a Plan does not qualify as a Church Plan; (ii) BSHSI, as the Plans' sponsor, elects for a Plan to be covered by ERISA; (iii) a court of law issues a definitive ruling that a Plan is not a Church Plan; (iv) the Roman Catholic Church disassociates itself from the Plan's sponsor; or (v) an amendment to ERISA is enacted and becomes effective as a law of

19

the United States eliminating the Church Plan exemption,  the Plaintiffs and the Settlement Class

will not have released ERISA claims occurring after those events.  Settlement Agreement ¶ 3.1.4.

The Settlement also includes other equitable provisions which mimic the provisions of ERISA,

concerning plan administration, summary plan descriptions, notices (annual summaries, pension

benefits statements, current benefit values), and the Plans' claim review procedure.  *Id.* ¶¶ 8.6–8.8.

> ### 4.     The Degree of Opposition to the Settlement

Interim Class Counsel is not aware at this time of any objections to the proposed

Settlement, and will address any objections at the final approval hearing.

## V.  CERTIFICATION OF THE CLASS IS APPROPRIATE

Class certification is governed by Federal Rule of Civil Procedure 23, both pursuant to a

contested motion and pursuant to a settlement, as it is sought in this case.  *See Amchem Prods., Inc.*

*v. Windsor,* 521 U.S. 591, 619–20 (1997).  The Court may certify the proposed class in this case

upon finding that the action satisfies the four prerequisites of Rule 23(a) and one or more of the

three subdivisions of Rule 23(b).  *Id.*

Courts in this jurisdiction frequently grant class certification in ERISA cases. *See Boyd v.*

*Coventry Health Care Inc.*, 299 F.R.D. 451, 459 (D. Md. 2014) (listing ERISA class certification

decisions); *see also* Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment)

(certification under Fed. R. Civ. P. 23(b)(1) is appropriate in cases charging breach of trust by a

fiduciary to a large class of beneficiaries). Congress has similarly embraced the use of

representative actions to enforce ERISA. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9

(1985) (noting Congress' clearly expressed intent that ERISA "actions for breach of fiduciary duty

be brought in a representative capacity on behalf of the plan as a whole"). Thus this Action, which

seeks relief on behalf of the Plans, is precisely the type of case that warrants certification under

Federal Rule of Civil Procedure 23.

**A.      The Proposed Class Satisfies the Requirements of Rule 23(a)**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the number of participants in the Plans is more than 20,000. The Settlement Class is thus too large for joinder to be practicable. *See, e.g.*, *Boyd*, 299 F.R.D. at 458 (certifying an ERISA class of more than 20,000 individuals and noting that the class was substantially larger than other classes that have been certified in the Fourth Circuit (citing cases)).

Rule 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." Common questions are those that "can be resolved for each class member in a single hearing," and do not "turn[ ] on a consideration of the individual circumstances of each class member." *Boyd*, 299 F.R.D. at 457–58 (citing *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006)). Plaintiffs have identified a series of common questions of law and fact, including: (1) whether the Plans are exempt from ERISA as Church Plans, and, if not, (2) whether the fiduciaries of the Plans have failed to administer and fund the Plans in accordance with ERISA. All of these questions and issues are common to the Settlement Class. *See, e.g., Boyd*, 299 F.R.D. at 458 (identifying similar common issues in an ERISA breach of fiduciary duty case) (citing *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (same); *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) (same)).

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the Class. To show typicality, the plaintiff "must be part of the class and possess the same interest and suffer the same injury as the class members." *Boyd*, 299 F.R.D. at 458 (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982)). The typicality requirement focuses on "whether a sufficient relationship exists between the injury to the named plaintiff and

the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Id.* (citing *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 217 (D. Md. 1997)).  Plaintiffs' claims arise from the same course of events as the claims of the Class— Defendants' alleged failure to maintain the Plans in accordance with ERISA. Moreover, with each member of the Settlement Class asserting the same claims arising from the same conduct by Defendants and seeking the same relief on behalf of the Plans, it follows that Plaintiffs' claims are typical for purposes of Rule 23(a)(3).

Finally, Rule 23(a)(4) requires "representative parties [who] will fairly and adequately protect the interests of the class." Representation is adequate where "(1) the named plaintiff's interests are not opposed to those of other class members, and (2) the plaintiff's attorneys are qualified, experienced, and capable." *Boyd*, 299 F.R.D. at 459 (citing *Mitchell–Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D. Md. 2006)).

These requirements are readily satisfied here. Plaintiffs' interests are the same as those of the absentee members of the Class: all participants seek to increase the retirement security of the Plans, through monetary and non-monetary relief. The Named Plaintiffs' interests are directly aligned with those of the Class.  Moreover, Plaintiffs have retained qualified counsel with extensive experience in representing plaintiffs in class litigation, specializing in ERISA cases. Yau Decl. at ¶¶ 17, 22.

**B.     The Proposed Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2)**

**1.     Individual Actions Would Create Inconsistent Adjudications or Be Dispositive of the Interests of Absent Members**

A class may be certified under Federal Rule of Civil Procedure 23(b)(1) if, in addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), the prosecution of separate actions by individual class  members would create the risk of inconsistent adjudications, which

22

would create incompatible standards of conduct for the defendant, or would as a practical matter be dispositive of the interests of absent members. Fed R. Civ. P. 23(b)(1)(A) and (B). Courts have certified classes under Federal Rule of Civil Procedure 23(b)(1) in ERISA cases for those very reasons. *See Boyd*, 299 F.R.D. at 459 (citing *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3rd Cir. 2009) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class"); *Di Felice v. U.S. Airways*, 235 F.R.D. 70, 80 (E.D.Va. 2006) ("Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1).... [G]iven the derivative nature of suits brought pursuant to § 502(a)(2) on behalf of the Plan, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class."); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) (granting class certification under Rule 23(b)(1)(B) in a suit alleging breach of ERISA fiduciary duties).

Moreover, the Advisory Committee on Rule 23 specifically noted that actions that "charge[] a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of . . . beneficiaries"—i.e., an action like the present action—"should ordinarily be conducted as class actions" under Rule 23(b)(1)(B). *See* Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment). As a result, certification of the proposed class under Rule 23(b)(1) is appropriate in this ERISA Action.

### 2.     Defendants Have Acted on Grounds Generally Applicable to the Class and Relief for the Class as a Whole Is Appropriate

A class may be certified under Federal Rule of Civil Procedure 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a

whole." Fed. R. Civ. P. 23(b)(2). Here, Plaintiffs allege that Defendants failed to comply with ERISA on a Plan-wide basis. The available remedies include monetary relief and remedial equitable relief to the Plans as a whole. ERISA §§ 502(a)(2) & (3).

Remedies under ERISA § 502(a)(2) are by definition plan-wide, a classic example of equitable relief. *See Mass. Mut. Life Ins. Co.*, 473 U.S. at 140–41. While the Settlement includes monetary consideration to the Plans, that consideration is incidental to, and flows directly from, Plaintiffs' prayer for injunctive and declaratory relief. *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763–64 (7th Cir. 2003) (certifying Fed. R. Civ. P. 23(b)(2) class where ERISA plaintiffs sought declaratory relief); *see also In re Mut. Funds Inv. Litig.*, MDL No. 1586, 2010 WL 2307568, at *4 (D. Md. May 19, 2010) (same); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 453 (same). Accordingly, Plaintiffs' claims are also properly certified under Rule 23(b)(2).

## C.    Rule 23(g) Is Satisfied

Federal Rule of Civil Procedure 23(g) requires the Court to examine the capabilities and resources of class counsel. Interim Class Counsel was appointed Interim Lead Class Counsel pursuant to a motion brought under Fed. R. Civ. P. 23(g).  ECF No. 57.  In the motion, Interim Class Counsel detailed the extent of their work to identify the claims in the action, the level of experience Interim Class Counsel had in handling class actions and other complex litigation, their experience both developing and litigating the Church Plan cases, which included litigating the first three appellate decisions on the Church Plan exemption that produced favorable rulings for Church Plan participants, and the resources that Interim Class Counsel was willing and able to devote to the Class.  Yau Decl. ¶ 22, ECF No. 20.  The Court appointed Cohen Milstein as Interim Lead Class Counsel in a thoroughly reasoned order, determining that they best satisfied the factors of Fed. R. Civ. P. 23(g).  Memorandum Order, ECF No. 57.

24

Since appointment as sole Interim Lead Class Counsel, Interim Class Counsel has handled all proceedings in this case, including filing two Consolidated Amended Complaints, seeking informal discovery of Plan documents, and mediating the case with Defendants' counsel. Accordingly, Interim Class Counsel satisfy the requirements of Rule 23(g) and should be named Class Counsel for the Settlement Class.

**D.      The Proposed Notice Satisfies Rule 23 and Due Process Requirements**

In order to satisfy due process considerations, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950). The proposed Class Notice attached to this motion describes clearly and in plain English the terms of the proposed Settlement; the considerations that caused Plaintiffs and Interim Class Counsel to conclude that the Settlement is fair and adequate; the maximum attorneys' fees, expenses, and Incentive Awards that may be sought; the procedure for objecting to the Settlement; and the date and place of the Fairness Hearing.  In addition, for Group B Class members (who are all entitled to the Vesting Payment), an enclosure will accompany the Notice stating that the individual will receive this payment and provide such individuals with information about their individual monetary recovery under the Settlement.

With the Court's approval, the Class Notice will be mailed to each member of the Settlement Class no later than 60 days after entry of the Preliminary Approval Order (or 60 days before the proposed Fairness Hearing).  The last known addresses of members of the Class will be available from the Plans' record-keepers. In addition, the Settlement Agreement and Class Notice will be published online at www.cohenmilstein.com/bon-secours-settlement.  These proposed forms of notice will fairly apprise members of the Class of the Settlement Agreement and their

25

options with respect thereto, and therefore fully satisfy due process requirements. *See Newberg on Class Actions*, §§ 8.12, 8:15, 8:17, 8:28, 8:33 (5th ed. 2014).  Similar Notice Plans in ERISA settlements have been approved. *Boyd*, 299 F.R.D. at 457.

## VI.  CONCLUSION

Interim Class Counsel respectfully request that the Court grant Plaintiffs' motion and (i) enter the proposed Preliminary Approval Order, which provides for notice to the Class as described herein, and (ii) set a Final Fairness Hearing, along with deadlines for Plaintiffs to (a) file and serve the motion for award of attorneys' fees and expenses and for Incentive Awards for Plaintiffs; and (b) file their motion for final approval of the proposed Settlement.

Dated:  May 31, 2017                    Respectfully submitted,

                                        COHEN MILSTEIN SELLERS & TOLL PLLC

                                        /s/ Julia Horwitz
                                        Julia Horwitz, MD Bar No. 19841
                                        Michelle C. Yau (admitted *pro hac vice*)
                                        Karen L. Handorf (admitted *pro hac vice*)
                                        Scott Lempert (admitted *pro hac vice*)
                                        Jamie Bowers (admitted *pro hac vice*)
                                        1100 New York Avenue, N.W.
                                        Suite 500, East Tower
                                        Washington, D.C. 20005
                                        Tel: (202) 408-4600
                                        Fax: (202) 408-4699
                                        Email: jhorwitz@cohenmilstein.com
                                        myau@cohenmilstein.com
                                        khandorf@cohenmilstein.com
                                        slempert@cohenmilstein.com
                                        jbowers@cohenmilstein.com

                                        *Interim Class Counsel*

57087188v3