**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(BALTIMORE DIVISION)**

| | | |
|---|---|---|
| ARLENE HODGES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil No. 1:16-cv-01079-RDB |
| v. | ) | |
| | ) | |
| BON SECOURS HEALTH SYSTEM, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT**
**OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL**
**OF SETTLEMENT AGREEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ....................................... 2

    A.  Procedural History .................................................................................. 2

    B.  Settlement Negotiations .......................................................................... 4

    C.  Settlement Terms .................................................................................... 6

        1.  Monetary Consideration ............................................................. 6

        2.  Non-Monetary Equitable Consideration .................................... 7

        3.  Class ........................................................................................... 7

        4.  Released Claims ......................................................................... 8

        5.  Notice ......................................................................................... 8

        6.  Attorneys' Fees ......................................................................... 8

    D.  Reasons for the Settlement ..................................................................... 9

    E.  Preliminary Approval ........................................................................... 10

    F.  Notice to the Class ................................................................................ 10

III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT ...... 11

    A.  The Settlement Meets the Judicial Standards for Final Approval ...................... 11

        1.  The Settlement Satisfies the *Jiffy Lube* Fairness Factors, Which Support Approval ................................................................. 13

        2.  The *Jiffy Lube* Adequacy Factors Likewise Are Satisfied Here. ........... 17

    B.  The Form and Methods of Notice Employed Satisfy Rule 23 and Due Process ...... 19

    C.  Certification of the Settlement Class Is Appropriate ......................... 21

        1.  The Requirements of Rule 23(a) Are Easily Satisfied ........................... 22

        2.  The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2) ......... 24

- i -

        3.      The Requirements of Rule 23(g) Are Met ............................................... 25

IV.     CONCLUSION ............................................................................................................. 26

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Banyai v. Mazur*,
  205 F.R.D. 160 (S.D.N.Y. 2002) .............................................................23

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
  338 F.3d 755 (7th Cir. 2003) .................................................................25

*Boyd v. Coventry Health Care Inc.*,
  299 F.R.D. 451 (D. Md. 2014)........................................................ *passim*

*DeWitt v. Darlington Cty., S.C.*,
  No. 11-00740, 2013 WL 6408371 (D.S.C. Dec. 6, 2013) ......................14

*DiFelice v. U.S. Airways*,
  235 F.R.D. 70 (E.D. Va. 2006) ..............................................................24

*Foe v. Cuomo*,
  700 F. Supp. 107 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989), *cert.
  denied*, 498 U.S. 972 (1990) .................................................................21

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................20, 25

*Griffith v. Providence Health & Servs.*,
  No. 14-1720, 2017 WL 1064392 (W.D. Wash. March 21, 2017). Thus this
  Action................................................................................................22

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) ........................................................ *passim*

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)..........................................................................21, 25

*Mitchell–Tracey v. United Gen. Title Ins. Co.*,
  237 F.R.D. 551 (D. Md. 2006)..............................................................23

*In re Mut. Funds Inv. Litig.*,
  MDL No. 1586, 2010 WL 2307568 (D. Md. May 19, 2010) .................25

*Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
  390 U.S. 414 (1968).............................................................................19

2280556.2

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3rd Cir. 2009) ......................................................................24

*Tatum v. R.J. Reynolds Tobacco Co.*,
  254 F.R.D. 59 (M.D.N.C. 2008) ...................................................................23

*Vancouver Women's Health Collective Soc. v. A.H. Robins Co.*,
  820 F.2d 1359 (4th Cir. 1987) .....................................................................20

*Wal–Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .....................................................................................22

*Whitaker v. Navy Fed. Credit Union*,
  No. 09-2288, 2010 WL 3928616 (D. Md. Oct. 4, 2010) ...............................12

STATUTES

ERISA ...................................................................................................... *passim*

OTHER AUTHORITIES

Fed. R. Civ. P. 23(b)(1)(A) & (B)............................................................ *passim*

iv

## I.       INTRODUCTION

Plaintiffs Arlene Hodges, Carolyn Miller, and Gary Brown, by and through their attorneys, respectfully move the Court for an Order: (1) granting final approval of the Class Action Settlement Agreement[1] ("Settlement" or "Settlement Agreement") described herein and preliminarily approved by the Court on July 10, 2017 (ECF No. 107); and (2) granting final certification of the Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1) and/or 23(b)(2).  Defendants do not oppose the relief sought herein.

This Settlement is an excellent result for the Class.  The Settlement provides significant monetary consideration to all Class members.  For the next seven years, Bon Secours Health System, Inc. ("BSHSI") will contribute $14 million annually, or $98 million total, to BSHSI's seven defined benefit plans operating as "Church Plans" (the "Plans").  The $98 million represents the total amount of underfunding of the Plans on an ERISA basis at the time negotiations commenced between the parties.  The contributions will be distributed in an amount proportional to the underfunding of each individual plan.  BSHSI will also pay $300,000 in total to a group of 530 individuals who terminated with more than three years but less than five years of vesting service under the Bon Secours Hampton Roads Plan.  The total monetary consideration provided to the Class therefore is $98.3 million.

In addition to the substantial monetary consideration, the Settlement also provides equitable consideration to the Class members that are still current participants in the Plans.  Through August 31, 2025, BSHSI will guarantee all accrued benefits of the Class members, meaning that BSHSI will ensure that there are sufficient assets in the Plans to pay accrued benefits through that date.  The Settlement also includes ERISA-like protections of the Class members' benefits, including an anti-cutback provision and disclosure requirements.  The anti-cutback provision prevents any plan amendment from eliminating benefits already earned by

---

[1] Capitalized terms not otherwise defined in this memorandum have the same meaning as ascribed to them in the Settlement Agreement, attached hereto as Exhibit 1 ("Ex.").

1

Class members, and the disclosure requirements allow participants to receive important notices and financial information concerning the Plan and their benefits. These provisions will remain in effect through August 31, 2025.

The Settlement was reached through negotiations overseen by a respected third-party mediator and subsequent extensive negotiations between counsel for both parties. The parties have complied with the terms of the Order Preliminarily Approving Class Action Settlement Agreement ("Preliminary Approval Order"), ECF No. 107, including mailing notice of the Settlement to the Settlement Class[2] and mailing the Class Action Fairness Act ("CAFA") notices to the requisite officials.[3] 28 U.S.C. § 1715. As set forth within, this Settlement satisfies the requirements of Federal Rule of Civil Procedure 23 and the Fourth Circuit and is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request that this Court grant final approval of this Settlement.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Procedural History

Plaintiff Arlene Hodges initiated this action on April 11, 2016 by filing a putative class action complaint in this Court against Bon Secours Health System, Inc. ("BSHSI")—a large, non-profit healthcare provider—and various other defendants. ECF No. 1. The Complaint alleged that BSHSI improperly operated seven defined benefit plans (the "Plans") as exempt from ERISA under the "Church Plan" exemption. *See* ECF No. 1 ¶ 3; 29 U.S.C. § 1002(33). The Complaint stated that by improperly claiming this exemption, BSHSI denied participants in

---

[2] *See* UFF Affidavit ¶ 4–7 ("Aff.").

[3] Declaration of Sarah Adams ¶¶ 1–6 ("Adams Decl."). As put forth in the declaration, the CAFA Notice was mailed to the appropriate state officials by July 7, 2017; however, the CAFA Notice was inadvertently not sent to the Attorney General of the United States until September 22, 2017. A settlement cannot be finally approved by the Court under CAFA until ninety days after the appropriate state and federal officials have been served (i.e., December 21, 2017). 28 U.S.C. § 1715(d).

the Plans the protections of ERISA, which included minimum funding requirements, vesting schedules, notices, and disclosures.

A week after Plaintiff Hodges filed the Complaint, Plaintiff Carolyn Miller filed a similar complaint in this Court alleging that BSHSI was improperly operating seven of its defined benefit plans as "Church Plans."  *See Miller v. Bon Secours Health System, Inc.*, No. 1:16-cv-1150 (D. Md. filed April 18, 2016).  On May 18, 2016, Plaintiff Hodges filed a motion to consolidate both cases and appoint interim lead plaintiff and interim co-lead counsel.  ECF No. 19.  Plaintiff Miller filed a motion and response in the *Hodges* case, proposing that the cases be consolidated and that she be appointed interim lead plaintiff and her counsel be appointed interim lead counsel.  ECF Nos. 39, 40.  After further briefing, the Court consolidated the cases, appointed both Plaintiffs Hodges and Miller as lead plaintiffs, and appointed the law firm of Cohen Milstein Sellers & Toll as interim lead counsel.  ECF No. 57.  The Court ordered Plaintiffs to file a Consolidated Amended Complaint.  *Id.*

Plaintiffs Hodges and Miller filed their Consolidated Amended Class Action Complaint on October 6, 2016.  ECF Nos. 66, 69.  On December 5, 2016, Defendants filed a motion to dismiss the Complaint for lack of jurisdiction and failure to state a claim.  ECF Nos. 70, 71. Plaintiffs responded on January 13, 2017 by filing a Second Consolidated Amended Complaint that added Plaintiff Gary Brown, along with a motion stating that Defendants consented to the filing of the Second Consolidated Amended Complaint and that the parties jointly requested that the Court stay all proceedings in the case until a ruling on three consolidated Church Plan cases pending before the Supreme Court was issued.  ECF Nos. 77, 78. The Court granted that motion on January 17, 2017.  ECF No. 81.

3

The parties attended a formal mediation on April 11, 2017, with mediator Robert Meyer, Esq.  Declaration of Karen Handorf in Support of Final Approval ¶ 23 ("Handorf Decl.").  On April 12, 2017, the parties filed a Joint Notice of Settlement with the Court, stating that they had successfully mediated a resolution of the case and requesting a stay of the case pending the filing of Plaintiffs' motion for preliminary approval.  ECF No. 85.  The Court granted the joint request.  ECF No. 87.  Plaintiffs filed a motion for preliminary approval of the settlement on May 31, 2017.  ECF No. 90.  The Court granted the motion and preliminarily approved the settlement on July 10, 2017, after a hearing.  ECF No. 107.

As directed by the Preliminary Approval Order, the parties mailed the Class Notice on September 8, 2017 to 27,940 Class members.  UFF Aff. ¶ 6. The CAFA Notice was mailed to the appropriate state officials by July 7, 2017; however, the CAFA Notice was inadvertently not mailed to the U.S. Attorney General until September 22, 2017.  Adams Decl. ¶¶ 3–4.  Under CAFA, final approval of a proposed settlement may not be issued earlier than 90 days after the appropriate federal and state officials are served with notice.  28 U.S.C. § 1715(d).  Accordingly, the earliest date that the Court may issue an order granting final approval of this Settlement is December 21, 2017.

## B.     Settlement Negotiations

The parties first broached mediation after the Supreme Court granted certiorari in three consolidated Church Plan cases and after this case was stayed by the Court.  Handorf Decl. ¶¶ 22–23. The settlement negotiations were overseen by a third-party JAMS mediator, Robert Meyer, Esq.  *Id.* ¶ 23.  Mr. Meyer has substantial experience mediating cases concerning ERISA and retirement plan issues; in particular, he has mediated several of the "Church Plan" cases litigated by Class Counsel.  *Id.*

4

The parties met for an in-person mediation session in New York, New York on April 11, 2017.  Handorf Decl. ¶ 23.  Both sides provided Mr. Meyer with their mediation statements prior to the session.  *Id.*  The mediation statements discussed the March 27, 2017 Supreme Court oral argument in three consolidated Church Plan cases where the respective Courts of Appeals had held that a Church Plan must have been established by a church, and the effect of that argument on the parties' positions.  *Id.*; *see also Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2017) ("*Advocate*").  The parties also participated in a pre-mediation call with Mr. Meyer to discuss logistics of the session.  Handorf Decl. ¶ 23.

Before the mediation, Class Counsel investigated the facts, circumstances, and legal issues associated with the allegations and defenses in the action.  This investigation included, among other things: (1) inspecting, reviewing, and analyzing documents produced by or otherwise relating to the Defendants, the Plans, and the administration and funding of the Plans, including documents that Defendants produced for settlement purposes; (2) researching the applicable law with respect to the claims asserted in the case and possible defenses thereto; and (3) researching and analyzing governmental and other publicly-available sources concerning Defendants, the Plans, and the industry.  Handorf Decl. ¶ 24.

The parties reached an agreement in principle on April 11, 2017 and executed a term sheet that day.  Handorf Decl. ¶ 25.  The parties filed a joint notice of settlement with the Court on April 12, 2017, informing that Court that they had reached an agreement in principle.  ECF No. 85.  On the parties' request, the Court stayed the case pending the filing of Plaintiffs' motion for preliminary approval of the settlement.  ECF No. 87.

After the parties executed the term sheet, they continued to heavily negotiate the remaining terms of the settlement.  Handorf Decl. ¶ 26.  The parties requested a two week

5

extension of time to file for preliminary approval of the settlement, based on outstanding issues that had not yet been agreed upon by the parties.  ECF No. 88.  The Settlement Agreement was executed on May 31, 2017, after an additional month and a half of negotiations.  *See* Ex. 1.  The Settlement is the result of lengthy and contentious arm's-length negotiations between the parties, and the process was thorough, adversarial, and professional.  Handorf Decl. ¶ 26.

**C.      Settlement Terms**

The primary terms of the Settlement Agreement are summarized in the following sections.

**1.      Monetary Consideration**

The monetary consideration provided under this Settlement is considerable—totaling $98.3 million to all Class members.  BSHSI, over the course of seven fiscal years, will contribute $98 million to the seven defined benefit plans listed in Schedule A of the Settlement Agreement. Ex. 1 § 7.1.1; Ex., Schedule A.  The total annual contribution will be $14 million.  Ex. 1 § 7.1.1. The payments will be made to each of the Plans in a manner proportional to the level of underfunding in each Plan, with the goal of providing greater contributions to more underfunded plans.  *Id.*  BSHSI may also pre-pay a portion of any annual contribution and receive credit for that pre-payment in subsequent years.  *Id.*

In addition to the payment to the Plans, BSHSI will also pay $300,000 in the aggregate to 530 individuals in the Class who left covered service under the Bon Secours Hampton Roads Plan after completing at least three, but less than five, years of vesting service but who are not fully vested under the plan's terms ("Group B").  Ex. 1 §  7.1.2.  These individuals are identified on Schedule B to the Settlement Agreement, which was filed under seal with this Court.  ECF No. 91.  Each Group B member will receive a proportional share of the $300,000 recovery based

6

on the value of his or her cash balance account as of January 1, 2016. Ex. 1 § 7.1.2.

### 2. Non-Monetary Equitable Consideration

Beyond the substantial monetary consideration that will be paid to Class members, the Settlement also provides for important non-monetary equitable consideration for current participants in the Plans.  First, BSHSI guarantees—through August 31, 2025—that the Plans will have sufficient funds to pay participants' accrued benefits as they come due.  Ex. 1 § 8.2. The Settlement also includes an anti-cutback provision: through August 31, 2025 no benefits accrued by participants will be reduced, even if any of the Plans are terminated or amended.  Ex. 1 § 8.4.  Additionally, through August 31, 2025, if any of the Plans are ever merged with or into another Plan, participants will be entitled to the same or greater benefits as they were entitled to before the merger.  Ex. 1 § 8.3.  Current participants of the Plans will also receive other protections comparable to key ERISA provisions; for example, through August 31, 2025, participants of the Plans will be entitled to annual summary plan descriptions with information regarding the Plans, summaries of any material modifications to the Plans, pension benefit statements, and claim procedures.  Ex. 1 §§ 8.6–8.8.  Participants of the Plans and their beneficiaries may also request annual reports with financial information regarding the Plan through August 25, 2025.  Ex. 1 § 8.7.2.  These equitable protections benefit current participants of the Plans by allowing them greater access to information about their retirement benefits and greater security for those retirement benefits.

### 3. Class

The Settlement contemplates that the Court will certify a non-opt-out class under either Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), or both.  Ex. 1 § 2.2.2.  The Class is defined as "[a]ll vested or non-vested present and past participants of the Plans (or their beneficiaries) as

7

of the Effective Date of Settlement." Ex. 1 § 1.18.

### 4. Released Claims

The Released Claims are defined in the Settlement Agreement as "[a]ny and all claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs arising out of the allegations of the Complaint by any member of the Settlement Class[.]" Ex. 1 § 3.1.  The Released Claims exclude any rights or duties arising out of the Settlement Agreement, individual claims for benefits that do not arise out of the allegations of the Complaint, and claims related to any other plan merged, adopted or consolidated into the Plans (unless it arises from the allegations in the complaint).  Ex. 1 §§ 3.1.1–3.1.3.

### 5. Notice

The Preliminary Approval Order, ECF No. 107, approved two forms of notice: (1) a mailed notice, sent to the last known address of members of the Settlement Class, including an additional cover letter for Group B members and terminated with more than three but less than five years of vesting service; and (2) internet publication of the Settlement Agreement and Class Notice on www.cohenmilstein.com/bon-secours-settlement.  Defendants paid the cost for notice, and the notice was disseminated on September 8, 2017.  Ex. 1 § 2.2.3; UFF Aff. ¶ 6.

### 6. Attorneys' Fees

Through a separate fee petition, Class Counsel seeks approval of attorneys' fees, expenses and class representative incentive awards for all three Named Plaintiffs (Arlene Hodges, Carolyn Miller, and Gary Brown), in an amount not to exceed $3.5 million.  The Class Notice detailed the amount of attorneys' fees requested and explained that the attorneys' fees were separately negotiated between the parties and constitute separate consideration from the $98 million contribution to the Plans and the $300,000 aggregate payment to former participants

of the Bon Secours Hampton Roads Plan with more than three years vesting service but less than five years.  In other words, the $3.5 million in attorneys' fees would not come out of the Class's recovery and would not reduce or affect the Class Settlement Amount.  Ex. 1 § 7.1.4.

**D.    Reasons for the Settlement**

When entering into settlement negotiations, Plaintiffs were cognizant of the risks associated with continuing to litigate this case, including the strengths and weaknesses of their claims.  This understanding is based on: (1) the motion practice by the parties in district court; (2) investigation and research; (3) the potential range of recovery; (4) the substantial complexity, expense, and duration of litigation necessary to prosecute this action through appeals, or trial, or post-trial motions, and the significant uncertainties in predicting the outcome of this complex litigation; (5) Defendants' determination to fight and contest every aspect of this case; and (6) the Supreme Court oral arguments in *Advocate*, which was argued just over two weeks before the parties met for mediation.  *See Advocate Health Care Network v. Stapleton*, 2017 WL 1135758 (U.S. Mar. 27, 2017) (Oral Argument).

*Advocate* involved three consolidated Church Plan cases where the United States Courts of Appeals for the Third, Seventh and Ninth Circuits determined that to qualify as a "Church Plan" under the ERISA church plan exemption, a retirement plan needed to be established by a church.  *Advocate* reversed those holdings, finding that a retirement plan may still be able to otherwise satisfy the exemption if it is established by an entity other than a church.  *Advocate*, 137 S. Ct. at 1663.   The instant "Church Plan" case is unique in that settlement negotiations took place shortly after the oral argument in *Advocate*, when the landscape of these cases was particularly uncertain, but before the Supreme Court issued the final decision.  Both sides were aware of the risks of either outcome and approached the negotiations in that context.

9

In view of all of these factors, Class Counsel has concluded that the Settlement is fair, reasonable, and adequate, and that it should be approved.  Moreover, as of October 12, 2017, Class Counsel has not received any objections to the proposed Settlement.

## E.    Preliminary Approval

Class Counsel filed an unopposed motion for preliminary approval on May 31, 2017. ECF No. 90.  The Court scheduled a hearing for July 10, 2017, and preliminarily approved the Settlement that same day.  ECF No. 107.  In the Preliminary Approval Order, the Court found that the proposed Class met all the requirements of Rules 23(a) and (b), and preliminary certified the Class defined above pursuant to Rules 23(b)(1) and (b)(2) and 23(e).  *Id.* at 3–4.  The Court also preliminarily appointed Arlene Hodges, Carolyn Miller, and Gary Brown (Named Plaintiffs) as Class Representatives for the Settlement Class, and Cohen Milstein Sellers & Toll as Class Counsel.  *Id.* ¶ 2.

## F.    Notice to the Class

In the Preliminary Approval Order, the Court approved the form of the proposed Notice and set deadlines for mailing the Class Notice and publishing the Notice online on the website designated to this settlement.  ECF No. 107 ¶ 5.  In accordance with the Court's Order, Defendants issued the Court-approved Notice on September 8, 2017.  The UFF Affidavit demonstrates compliance with the Court's Order for Class Notice.  The Affidavit attests to the mailing of 27,940 individual Notices to the Settlement Class (27,410 to Group A and 530 to Group B), wherein October 31, 2017 was established as the deadline for objecting to the proposed Settlement and Plaintiffs' motion for attorneys' fees and other relief.  UFF Aff. ¶ 6.

Before September 11, 2017, as required by the Preliminary Approval Order, Class Counsel posted the Complaint, Settlement Agreement, Class Notice, Preliminary Approval Motion, and the Preliminary Approval Order on the Class Settlement website,

www.cohenmilstein.com/bon-secours-settlement.  Handorf Decl. ¶ 33. Class Counsel also

provided a toll-free number for Class members to call with questions about the Settlement.  ECF

No. 90-4.  As of October 12, 2017, the settlement website has 236 recorded visitor sessions and

Class Counsel has responded to 112 email and phone inquiries.

### III.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.    The Settlement Meets the Judicial Standards for Final Approval

This Circuit strongly encourages resolution of class actions through settlement.  *See*

*United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999) (there is a "general principle

that settlements are encouraged"); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989)

(stating that there is an "unassailable premise that settlements are to be encouraged"); *see also*

*South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary

resolution of litigation through settlement is strongly favored by the courts.") (citations omitted).

Settlements in class actions where the issues are "notoriously difficult and unpredictable" are

favored because "disputes are resolved" and "the resources of litigants and courts are saved[.]"

*Zimmerman v. Bell*, 800 F.2d 386, 392 (4th Cir. 1986) (internal quotations and citations omitted)

(explaining why settlement was favored in a shareholder derivative class action); *Stone*, 749 F.

Supp. at 1423 (settlement of the "complex disputes often involved in class actions minimizes the

litigation expenses of both parties and also reduces the strains such litigation imposes upon

already scarce judicial resources.") (internal citations omitted).  Otherwise the inherent costs,

delays, and risks of continued litigation might overwhelm any potential benefit the class could

hope to obtain.  *See* Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 13.44 (5th ed.

2014).   Moreover, class certification in a class action settlement protects defendants from the

possibility of inconsistent adjudications and benefits them by providing finality.  *Gunnells v.*

*Healthplan Servs., Inc.*, 348 F.3d 417, 427 (4th Cir. 2003).  Accordingly, "'[t]he law strongly

favors settlement of litigation, and there is a compelling public interest and policy in upholding

11

and enforcing settlement agreements voluntarily entered into.'" *In re A.H. Robins Co., Inc.*, No. 98-1825, 1999 WL 55394, at *1 (4th Cir.Feb. 8, 1999) (unpublished) (quoting *Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988)).

When reviewing a class action settlement, the district court does not "reach any dispositive conclusions on […] unsettled legal issues" or "turn the settlement hearing into a trial or a rehearsal of the trial." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172–73 (4th Cir. 1975) (citation and quotation omitted). Rather, the trial court should develop a record that enables it to reach an "informed, just and reasoned decision." *Id.* at 1173. Under the Federal Rules of Civil Procedure, for the district court to approve a class action settlement, the proposed settlement must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991) ("*Jiffy Lube*"); *Decohen v. Abbasi, LLC,* 299 F.R.D. 469, 478 (D. Md. 2014).

Courts in the Fourth Circuit engage in a bifurcated analysis to determine whether a proposed settlement is fair, reasonable and adequate. *Jiffy Lube,* 927 F.2d at 158-59. This includes separate analysis of the fairness and the adequacy of the settlement. The fairness analysis concerns the settlement process. *Whitaker v. Navy Fed. Credit Union,* No. RDB 09-2288, 2010 WL 3928616, at *2 (D. Md. Oct. 4, 2010) (Bennett, J.). The adequacy evaluation addresses the substance of the settlement. *Id.*

For the fairness evaluation, a settlement is fair if it "was reached as a result of good faith bargaining at arm's length, without collusion." *Whitaker*, 2010 WL 3928616, at *2 (quoting *Jiffy Lube,* 972 F.2d at 159). The four fairness factors, as laid out in *Jiffy Lube,* are:

> (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [ERISA] class action litigation.

*Jiffy Lube,* 927 F.2d at 159.

Next, the adequacy determination is evaluated based on the following five *Jiffy Lube*

12

factors:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*Id.*

This settlement is fair and adequate under the criteria set forth in *Jiffy Lube,* especially given the significant monetary and equitable relief provided in the Settlement Agreement.  After *Advocate*, the Settlement ensures monetary and equitable protections that could now be more difficult to obtain through continued litigation.

### 1.   The Settlement Satisfies the *Jiffy Lube* Fairness Factors, Which Support Approval.

#### a.   The Posture of the Case at the Time Settlement was Proposed and the Extent of Discovery Support Approval

The posture of this case and the extent of discovery completed at the time of negotiations support the approval of the Settlement. As set forth above, the parties began to discuss mediation and the prospect of settlement shortly after the Supreme Court accepted certiorari in three consolidated Church Plan cases and the instant case was stayed.  ECF Nos. 78, 81; Handorf Decl. ¶ 17. At that stage of the litigation, Defendants had filed a motion to dismiss Plaintiffs' Consolidated Amended Complaint.  ECF No. 70.  Plaintiffs responded by filing a Second Consolidated Amended Complaint, rendering the motion to dismiss moot.  ECF No. 77.  The claims and defenses of the parties were thoroughly laid out in the pleadings before the parties commenced negotiations.

The mediation between the parties was held on April 11, 2017, approximately two weeks after oral argument was held in the Supreme Court in the consolidated Church Plan cases, which counsel for both parties attended.  Handorf Decl. ¶ 23.  The parties executed a term sheet detailing an agreement in principle that same day.  *Id.* ¶ 25.   At the time the Settlement Term

13

Sheet was executed, there was significant uncertainty for all parties because it was unknown whether *Advocate* would result in a decision supporting Plaintiffs' theory that only churches could establish a Church Plan, or whether the Supreme Court would interpret the ERISA Church Plan exemption as Defendants do.  *Id.*  ¶ 26.

Given this history, the uncertain status of the law played a significant role in encouraging a settlement.  Under such circumstances, courts readily find settlements to be fair and adequate. *See, e.g.*, *McDaniels v. Westlake Servs., LLC*, No. ELH-11-1837, 2014 WL 556288, at *9  (D. Md. Feb. 7, 2014) (addressing the *Jiffy Lube* adequacy factors and noting the uncertain state of Fourth Circuit law surrounding the CLEC safe harbor provision in the Fourth Circuit during negotiations, including an intervening decision after the Settlement Agreement was executed, and approving the settlement agreement as fair and adequate); *DeWitt v. Darlington Cty., S.C.*, No. 11-00740-RBH, 2013 WL 6408371, at *5 (D.S.C. Dec. 6, 2013) (settlement approved given uncertainty in "current Fourth Circuit precedent" on central issue in case); *Conway v. Takoma Park Volunteer Fire Dep't, Inc.*, Nos. Civ. A. DKC 86-1611, Civ. A. DKC 88-65, 2001 WL 194081 at *1 (D. Md. Feb. 26, 2001) (denying a motion to vacate a settlement agreement for "mistake of law" and noting that the parties agreed to the settlement in part because of the uncertain state of the law and the court approved the settlement as fair and adequate).

The second *Jiffy Lube* fairness factor—considering the extent of discovery prior to settlement—is also satisfied.  This factor allows the Court to "ensure that the case is well-enough developed for Class Counsel and Lead Plaintiffs alike to appreciate the full landscape of their case when agreeing to enter into [the Settlement]."  *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009).  Prior to mediation, Plaintiffs: (1) reviewed publicly available financial statements; (2) analyzed documents and information given to Plan participants; (3) interviewed several Plan participants; and (4) reviewed confidential information pertaining to the Plans provided by Defendants in preparation for mediation. Handorf Decl. ¶ 24. Class Counsel and counsel for Defendants are intensely familiar with the legal landscape of Church Plan

14

litigation and determined that this investigation was sufficient for the parties to assess the merits of the claims and defenses in this case. *See Edelen v. American Residential Servs., LLC*, No. DKC-11-2744, 2013 WL 3816986, at *8 (D. Md. July 22, 2013) (the scope of discovery was limited, but the class action settlement was fair because the parties had enough information about the merits of the claims and defenses when approaching settlement negotiations); *Domonoske v. Bank of America, N.A.*, 790 F. Supp. 2d 466, 473 (W.D.Va. 2011) (stating that although discovery was not extensive, the facts were straightforward and enough discovery was conducted to "develop the record and apprise the parties of the merits."). Settlement of this case avoids further time-consuming litigation and allows the Class to receive substantial equitable and monetary consideration without undue difficulty or delay. Accordingly, the first two *Jiffy Lube* fairness factors favor approval of the Settlement.

> **b.     The Circumstances Surrounding Settlement Negotiations Weigh in Favor of Settlement Approval.**

The third *Jiffy Lube* fairness factor, the circumstances surrounding the negotiations, also weighs in favor of approval of this Settlement. This factor is meant to ensure that "counsel entered into settlement negotiations on behalf of their clients after becoming fully informed of all pertinent factual and legal issues in the case." *Stone*, 649 F. Supp. at 1424.

The parties' negotiations were facilitated through a mediator, Mr. Meyer, who has substantial experience mediating ERISA class actions and Church Plan cases in particular. Handorf Decl. ¶ 23. The negotiations at the mediation session were adversarial, professional and lengthy. *Id.* ¶ 26. Significantly, the parties held the mediation while a key question of Church Plan exemption statutory construction was pending before the Supreme Court in *Advocate*. *Id.* After executing the Term Sheet on April 11, 2017, the parties engaged in over six weeks of additional negotiations before finally executing the Settlement Agreement on May 31, 2017. *Id.*

15

The Settlement Agreement is a detailed and comprehensive agreement based on the Term Sheet.

In light of the pending Supreme Court decision, the involvement of an experienced mediator, the weeks of negotiations, and the substantial monetary and equitable relief provided for the benefit of the Plans and the Class, the Court can be confident that the Settlement Agreement is not a result of collusion, but rather is the result of careful mediation and arms-length negotiations.  Accordingly, the third *Jiffy Lube* factor supports approval of this Settlement.

### c.    The Experience of Counsel Supports Settlement Approval.

The fourth *Jiffy Lube* fairness factor, the experience of counsel, merits final approval. Class Counsel is recognized nationally as leading and skillful practitioners in class action ERISA cases, including ERISA Church Plan litigation.  Handorf Decl. ¶ 37–38.  Class Counsel represents participants and beneficiaries in numerous pension plans like the Plans here, involving non-profit hospitals' claims of Church Plan exemption from ERISA's protections.  *Id*.  Class Counsel, along with the law firm of Keller Rohrback, served as co-counsel in all three consolidated Church Plan cases in the appellate courts and also represented those plaintiffs before the Supreme Court.  *Id*.

In this case, like others, Class Counsel conducted extensive investigation; engaged in motion practice; and participated in lengthy negotiations concerning the issues in this litigation. *Id.* ¶ 19–22, 26.  Accordingly, Class Counsel possesses a comprehensive understanding of both the strengths and weaknesses of the claims, and believe that the Settlement is fair, reasonable and is in the best interests of the Plans and the Settlement Class.  This factor weighs heavily in favor of the Settlement's final approval.

Because the four *Jiffy Lube* fairness factors are met for this Settlement, the Court should

16

find that this Settlement is fair as required by Fed. R. Civ. P. 23(e).

### 2.   The *Jiffy Lube* Adequacy Factors Likewise Are Satisfied Here.

#### a.   The Relative Strength of Plaintiffs' Case and the Difficulties Associated With Potential Trials Weigh in Favor of Approval.

The first and second *Jiffy Lube* adequacy factors, the strength of the case on the merits, and any difficulties likely to be encountered at trial, favor final approval.  Plaintiffs' case is strong and they have pursued it vigorously, but the litigation is not without risk or uncertainty. Moreover, after the parties executed the Settlement Agreement, the Supreme Court held in *Advocate* that Plans like the ones at issue here may meet the definition of a "Church Plan" even if such plans are not established by a church.  *Advocate*, 137 S. Ct. at 1663. Although the *Advocate* decision does not resolve all of the issues in the litigation, and although Plaintiffs have other strong arguments as to why BSHSI and the Plans do not qualify for the Church Plan exemption, *Advocate* concededly has weakened Plaintiffs' case by eliminating one of their arguments.

Though Class Counsel remains confident in the merits of Plaintiffs' claims, there is risk in any litigation, and especially here, where the area of the law is one of the most nuanced, unpredictable, and rapidly developing in ERISA jurisprudence. This is evidenced by the rapid progression of the threshold statutory construction issue to the Supreme Court and the relatively untested nature of Plaintiffs' remaining arguments.  Moreover, presenting an ERISA case of this type on the merits is a massive undertaking, with substantial risks, expense, and delay. Defendants have forcefully defended their actions with respect to the Plans to date, and there is no reason to believe they would not continue to do so through trial and on appeal if necessary. The Settlement provides significant monetary and equitable consideration to the Plans and their participants, and material monetary recovery to Group B. This certain, immediate relief is far better for the Class than the possibility of a more significant recovery, if any, after an expensive

17

and protracted trial and appeal.

Class Counsel believes that the Settlement will provide the Class with many of the protections they would have received if the cases had been litigated to a conclusion and Plaintiffs had prevailed, and provides protection in the event legal developments favor Plaintiffs' claims by allowing them to pursue full, prospective ERISA compliance.  *See* Ex. 1 §§ 3.1.4, 8.2–8.8. Given the potential risks and delays, a Class Settlement of $98.3 million, along with significant other administrative and equitable protections, should likewise be regarded by the Court as a highly favorable recovery that warrants final approval. *See* Ex. 1 §§ 7.1.1, 7.1.2, 8.2–8.8.

### b.   The Anticipated Duration and Expense of Additional Litigation Supports Settlement Approval.

The third *Jiffy Lube* adequacy factor, the anticipated duration and expense of additional litigation, weighs in favor of the proposed Settlement.  The purpose of this factor is to conserve the resources of the Court by weighing the settlement in consideration of the substantial time and expense that further litigation would entail.  *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. at 256. Although trial of these cases certainly would be manageable and would be superior to other means of adjudicating the controversy, the expected complexity of the remaining issues and costs of proceeding to trial favor settling this case now.

As outlined above, this case presents complex issues relating to (i) potential determination of whether Defendants and their benefit committee are controlled by or associated with the Roman Catholic Church; (ii) statutory compliance with other provisions of ERISA; and (iii) whether the present application of the Church Plan exemption would violate the Constitution. The expense of taking this case through trial would be considerable and would require, among other things, a substantial amount of formal discovery (including many important depositions), expert discovery, and extensive motions practice.  Trial preparation would require

18

great effort, both by the parties and the Court (particularly here, as these would be bench trials).

Avoiding the delay and risk of protracted litigation is a primary reason for counsel to recommend and courts to approve a settlement.  *McDaniels*, 2014 WL 556288, at *8 (citing *Protective Committee for Indep. Stockholders of TMT Trailer Ferry v. Anderson,* 390 U.S. 414, 424 (1968) (stating that a judge must consider "the complexity, expense, and likely duration" of the litigation)).  Here, that delay and risk would be substantial.  Comparing the anticipated complexity, costs, and time necessary to take these cases to trial against the substantial savings of cost and time by entering this Settlement favors approval of the Settlement under this adequacy factor.

### c.     The Lack of Opposition to the Settlement Supports Settlement Approval.

Plaintiffs fully support the proposed Settlement, but full consideration of the fifth[4] *Jiffy Lube* adequacy factor, the "degree of opposition to the settlement," cannot occur until after the deadline to file objections, which is October 31, 2017.  ECF No. 107.  Class Counsel will address objections, if any, in their Reply in Support of Final Approval (the "Reply"), due on November 21, 2017.  The Settlement Class appears to agree that the Settlement is fair, reasonable and adequate. Class Counsel has already responded to over one hundred inquiries regarding the Settlement, and as of October 12, 2017 have received no substantive objections. Handorf Decl. ¶ 34.  If objections are later received, Class Counsel will address them in the Reply.

### B.     The Form and Methods of Notice Employed Satisfy Rule 23 and Due Process

Plaintiffs have complied with the Notice Program approved by this Court in the

---

[4] The fourth *Jiffy Lube* "adequacy" factor, the "solvency of the defendants and the likelihood of recovery on a litigated judgment" is not relevant here. BSHSI did not raise any issues regarding its solvency or ability to withstand a judgment; thus this factor is neutral.

19

Preliminary Approval Order, which provides the Class with sufficient notice of the Settlement and an opportunity to voice objections and be heard.  ECF No. 107.  The Class Notice informed the Settlement Class members of the terms of the Settlement and the issues litigated, and enabled Class members to make informed decisions about their rights.  Handorf Decl. ¶ 32.

Due process requires that "the proposed form of notification be reasonably certain to inform those affected."  *Vancouver Women's Health Collective Soc. v. A.H. Robins Co.*, 820 F.2d 1359, 1364 (4th Cir. 1987).  For the due process standard to be met, where, as here, all class members are known in advance, the "best practicable notice" is the method approved by the Court in its Preliminary Approval Order, direct mail notice to each class member's last known address.  *See Decohen*, 299 F.R.D. at 479; *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004) (to satisfy Rule 23, "[f]or non-opt-out cases, such as the ERISA Actions, [all that is required is] such unspecified 'appropriate notice' as 'the court may direct[.]'" (quoting Fed. R. Civ. P. 23(c)(2)(A)).  Here, the form and methods of disseminating the Class Notice of the proposed Settlement provided pursuant to the Preliminary Approval Order satisfy all due process considerations and Rules 23(c)(2) and (e)(1).

The mailed Class Notice provided detailed information about the Settlement to approximately 27,940 individual members of the Settlement, including: (1) a comprehensive summary of the Settlement's terms; (2) notice of Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and class representative incentive awards for the services performed by Named Plaintiffs; (3) detailed information about the Released Claims; and (4) separate letters to Group B Class Members including a detailed explanation of the Settlement terms that affect them.  UFF Aff. Ex. 1;  Handorf Decl. ¶ 32. In addition, the Class Notice gave the Class members a schedule including the date and location of the Fairness Hearing, and the procedure and deadline for filing objections to the Settlement.  The Class Notice also provided members of the Settlement Class with contact information for Class Counsel, including a toll-free phone number for inquiries and a dedicated website address for further information.   UFF

20

Aff. Ex. 1; Handorf Decl. ¶ 32.

The notice form and methods employed here are substantially similar to those successfully used in many other ERISA class settlements and "fairly, accurately, and neutrally describe the claims and parties in the litigation[,] . . . the terms of the proposed settlement and the identity of persons entitled to participate in it." *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989), *cert. denied*, 498 U.S. 972 (1990) (citation omitted); *see also Whitaker*, 2010 WL 3928616, at \*4 (finding that the mailed class notice, which advised settlement class members of the specific relief and how to object, satisfied due process).  In addition, the Court approved of the language in the Class Notice and letter to Group B Class members, demonstrating that the Notice contained clear and transparent communications to the Class about the Settlement's terms. Accordingly, the notice provided to the Settlement Class satisfies the requirements of due process and Rule 23.

## C.   Certification of the Settlement Class Is Appropriate

Finally, before approving the Settlement it is necessary that the Court certify a class. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618–21 (1997) (discussing Fed. R. Civ. P. 23 and holding that the prerequisites of 23(a) and (b) must be satisfied prior to approval of a settlement that determines the rights of class members).  Federal Rule of Civil Procedure 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met *and* the action also satisfies one of the subdivisions of Rule 23(b).  Courts in this jurisdiction have consistently found that class certification is appropriate in ERISA cases. *See Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 459 (D. Md. 2014); *see also* Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment) (certification under Fed. R. Civ. P. 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries). Congress has similarly embraced the use of representative actions to enforce ERISA. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985) (noting Congress'

21

clearly expressed intent that ERISA "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole"). Moreover, in similar Church Plan cases, the district courts certified settlement classes. *Lann v. Trinity*, No. 8:14-cv-2337, ECF No. 111 (D. Md. May 31, 2017); *Griffith v. Providence Health & Servs.,* No. C14-1720-JCC, 2017 WL 1064392 (W.D. Wash. March 21, 2017). Thus this Settlement, which obtains relief on behalf of the Plans, is suitable for class certification prior to final approval. As set forth below, the Class easily satisfies the requirements of Rule 23(a), (b)(1) and (b)(2) and thus certification of the Settlement Class is appropriate.

### 1. The Requirements of Rule 23(a) Are Easily Satisfied

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants have identified, and the Class Notice has been sent to, approximately 27,940 members of the Settlement Class. *See* UFF Aff. ¶ 6. This number of Class members satisfies the numerosity requirement. *See, e.g., Boyd*, 299 F.R.D. at 458 (certifying an ERISA class of more than 20,000 individuals and noting that the class was substantially larger than other classes that have been certified in the Fourth Circuit (citing cases)); *Whitaker*, 2010 WL 3928616, at *3-4 (certifying a settlement class of over 6,000 individuals).

Rule 23(a)(2) requires that a class action raise "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, the plaintiffs must demonstrate that "the class members have suffered the same injury." *Fangman v. Genuine Title, LLC*, 2016 WL 6600509, at *9 (D. Md. Nov. 8, 2016) (Bennett, J.) (quoting *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011)). The members of the Settlement Class here share multiple issues of law and fact, such as whether the Plans are exempt from ERISA as Church Plans, and, if not, whether the fiduciaries of the Plans have failed to administer and fund the Plans in accordance with ERISA. These questions and issues are all common to the Settlement Class. *See, e.g., Boyd*, 299

22

F.R.D. at 458 (identifying similar common issues in an ERISA breach of fiduciary duty case) (citing *Tatum v. R.J. Reynolds Tobacco Co*., 254 F.R.D. 59, 64 (M.D.N.C. 2008) (same); *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) (same)). Thus, commonality is satisfied.

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. When evaluating typicality, a court must analyze whether the plaintiff is "part of the class and possess[es] the same interest and suffer[s] the same injury as the class members." *Fangman,* 2016 WL 6600509, at *10 (citing *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998)). The typicality requirement focuses on "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Fangman,* 2016 WL 6600509, at *10 (citing *Bullock v. Bd. of Educ. Of Montgomery County*, 210 F.R.D. 556, 560 (D. Md. 2002)). Here, Plaintiffs' claims arise from the same course of events as the claims of the Settlement Class as a whole—Defendants' alleged failure to maintain the Plans in accordance with ERISA. Moreover, Plaintiffs assert the same claims arising from the same conduct by Defendants and seek the same relief on behalf of the Plan—compliance with ERISA. Accordingly, typicality is met.

Rule 23(a)(4) requires "representative parties [who] will fairly and adequately protect the interests of the class." Representation is adequate where "(1) the named plaintiff's interests are not opposed to those of other class members, and (2) the plaintiff's attorneys are qualified, experienced, and capable." *Boyd*, 299 F.R.D. at 459 (citing *Mitchell–Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 558 (D. Md. 2006)). The "adequacy" test is easily met in this case, particularly in the context of the Settlement Class. The claims and interests of the Named Plaintiffs were congruent with those of the other members of the Settlement Class: all seek to enhance their retirement security under this Plan, whether through monetary or non-monetary relief. There can be no question that the Named Plaintiffs' interests are aligned with those of the Settlement Class and that they have retained qualified counsel with extensive experience

23

representing plaintiffs in class litigation, including ERISA cases and Church Plan cases specifically.  Accordingly, this class action satisfies all the requirements of Rule 23(a).

2. **The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2)**

a. **Individual Actions Would Create Inconsistent Adjudications or be Dispositive of the Interests of Absent Members**

A class may be certified under Federal Rule of Civil Procedure 23(b)(1) if, in addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), the prosecution of separate actions by individual class members would create the risk of inconsistent adjudications, which would create incompatible standards of conduct for the defendant, or would as a practical matter be dispositive of the interests of absent members.  Fed. R. Civ. P. 23(b)(1)(A) & (B).  Here, the risk of inconsistent adjudications and incompatible standards is obvious: in the absence of certification, two participants could bring identical actions and achieve different results, with one court holding that the Plans are ERISA-regulated and the other holding that they are not.  Courts have certified classes under Rule 23(b)(1) in ERISA cases for those very reasons.  *See Trinity*, No. 8:14-cv-2337, ECF No. 111 (certifying a class for settlement under Fed. R. Civ. P. 23(b)(1) and (2) in a Church Plan case); *Boyd*, 299 F.R.D. at 459 (citing *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3rd Cir. 2009)) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class"); *DiFelice v. U.S. Airways*, 235 F.R.D. 70, 80 (E.D. Va. 2006) ("Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1) . . . . [G]iven the derivative nature of suits brought pursuant to § 502(a)(2) on behalf of the Plan, 'ERISA litigation of this nature presents a paradigmatic example of a(b)(1) class'")(quoting *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004)) . As a result, certification of the proposed class under Rule 23(b)(1) is appropriate in this ERISA Action.

24

### b. Defendants Have Acted on Grounds Generally Applicable to the Class and Relief for the Class as a Whole is Appropriate

A class may be certified under Federal Rule of Civil Procedure 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, Plaintiffs allege that Defendants failed to comply with ERISA on a Plan-wide basis and seek declaratory relief that the Plan is not a Church Plan as well as injunctive relief requiring that the Plan comply with ERISA. The available remedies include monetary relief and remedial equitable relief to the Plan as a whole. ERISA §§ 502(a)(2) & (3), 29 U.S.C. §§ 1132(a)(2) & (3).

Remedies under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), are by definition plan-wide, a classic example of equitable relief. *See Mass. Mut. Life Ins. Co.*, 473 U.S. 134, at 140–41 (1985). While the Settlement includes monetary consideration to the Plans, that consideration is incidental to and flows directly from Plaintiffs' prayer for injunctive and declaratory relief. *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763–64 (7th Cir. 2003) (certifying Fed. R. Civ. P. 23(b)(2) class where ERISA plaintiffs sought declaratory relief); *In re Mut. Funds Inv. Litig.*, MDL No. 1586, 2010 WL 2307568, at *4 (D. Md. May 19, 2010) (same); *In re Glob. Crossing*, 225 F.R.D. at 453 (same); *see also Trinity*, No. 8:14-cv-2337, ECF No. 111 (certifying settlement class under Fed. R. Civ. P. 23(b)(1) and (2) in a Church Plan case); Accordingly, Plaintiffs' claims are also properly certified under Rule 23(b)(2).

### 3. The Requirements of Rule 23(g) Are Met

Federal Rule of Civil Procedure 23(g) requires the Court to examine the capabilities and resources of Class Counsel. Class Counsel has detailed above the time and effort expended in connection with this litigation. *See* Section II, *supra*; *see also* Handorf Decl. ¶¶ 13–17, 19–22, 37–42. As also set forth above, Class Counsel is among the leading ERISA plaintiffs' firms and possess unparalleled expertise in the specific types of ERISA claims brought in this lawsuit. *Id.*

25

¶¶ 13–17, 37–42.  For all of those reasons, Class Counsel satisfies the requirements of Rule

23(g).

## IV.   CONCLUSION

Named Plaintiffs respectfully submit that the Settlement should be fully and finally

approved because it is a fair and reasonable result.  Moreover, the Settlement Class meets all the

requirements of Rule 23 and should be finally certified.


Dated: October 13, 2017                    Respectfully submitted,

                                           COHEN MILSTEIN SELLERS & TOLL PLLC


                                           /s/ Julia Horwitz_____
                                           Julia Horwitz (MD Bar # 19841)
                                           Karen L. Handorf (admitted *pro hac vice*)
                                           Mary J. Bortscheller (admitted *pro hac vice*)
                                           Jamie Bowers (admitted *pro hac vice*)
                                           1100 New York Avenue, N.W.
                                           Suite 500
                                           Washington, D.C. 20005
                                           Tel: (202) 408-4600
                                           Fax: (202) 408-4699
                                           Email: jhorwitz@cohenmilstein.com
                                           myau@cohenmilstein.com
                                           khandorf@cohenmilstein.com
                                           mbortscheller@cohenmilstein.com
                                           jbowers@cohenmilstein.com

                                           ***Counsel for Plaintiffs***

26

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 13, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ Julia Horwitz         <br>Julia Horwitz

27

2280556.2