# Exhibit 1

<u>Communication Protected by Fed. R. Evid. 408</u>

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
Settlement Agreement
May 31, 2017

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## (BALTIMORE DIVISION)

| | |
|---|---|
| ARLENE HODGES, et al., | )<br>) |
| Plaintiffs, | )<br>)  Civil Action No.: 1:16-cv-1079 (RDB)<br>) |
| v. | )<br>) |
| BON SECOURS HEALTH SYSTEM, INC., et al., | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

## CLASS ACTION SETTLEMENT AGREEMENT

This CLASS ACTION SETTLEMENT AGREEMENT ("Settlement Agreement") is entered into by and between Plaintiffs, as defined in § 1.12 below, on the one hand, and Defendants, as defined in § 1.6 below, on the other. Plaintiffs and Defendants are referred to collectively in this Settlement Agreement as the "Parties." Capitalized terms and phrases have the meanings provided in § 1 below or as specified elsewhere in this Settlement Agreement.

1. DEFINITIONS

1.1. "*BSHSI*" shall mean: Bon Secours Health System, Inc., a non-profit corporation, and its successors.

1.2. "*Church Plan*" shall mean: a plan which meets the definition of a "Church Plan" under ERISA § 3(33), 29 U.S.C. § 1002(33), and is thus exempt from the provisions of Title I and Title IV of ERISA.

1.3. "*Class Counsel*" shall mean: Cohen Milstein Sellers & Toll, PLLC and Keller Rohrback L.L.P.[1]

---

[1] Although Cohen Milstein was appointed sole Interim Class Counsel by the Court, Keller Rohrback negotiated this settlement with Cohen Milstein on behalf of the Class. However, only Cohen Milstein will represent the Class at the settlement approval hearings.

Communication Protected by Fed. R. Evid. 408

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
Settlement Agreement
May 31, 2017

1.4. *"Complaint"* shall mean: the Second Amended Consolidated Class Action Complaint filed in *Hodges* on January 13, 2017.

1.5. *"Consolidated Action"* shall mean: *Hodges, et al. v. Bon Secours Health System, Inc., et al.*, No. 1:16-cv-1079, an action pending in the United States District Court for the District of Maryland (*"Hodges"*).

1.6. *"Court"* shall mean: The United States District Court for the District of Maryland.

1.7. *"Defendants"* shall mean: Bon Secours Health System, Inc., Bon Secours, Inc., the Benefit Plan Administrative Committee, and all past and present members of the Benefit Plan Administrative Committee.

1.8. *"Effective Date of Settlement"* shall mean: the date on which all of the conditions to settlement set forth in § 2 of this Settlement Agreement have been fully satisfied or waived and the Settlement shall have become Final.

1.9. *"ERISA"* shall mean: the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.10. *"Final"* shall mean: with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari, or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand.

1.11. *"Incentive Awards"* shall mean: any monetary amounts awarded by the Court in recognition of the Named Plaintiffs' assistance in the prosecution of the Consolidated Action and payable pursuant to § 7.1.4 below.

1.12. *"Person"* shall mean: an individual, partnership, corporation, or any other form of organization.

1.13. *"Plaintiffs"* and *"Named Plaintiffs"* shall mean: Arlene Hodges, Carolyn Miller, and Gary Brown.

1.14. *"Plan"* or *"Plans"* shall mean: the defined benefit plans as listed in Schedule A that are sponsored by Bon Secours Health System, Inc.

1.15. *"Released Claims"* shall have the meaning provided in § 3.

2

**Communication Protected by Fed. R. Evid. 408**

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
**Settlement Agreement**
**May 31, 2017**

---

1.16. *"Releasees"* shall mean: each of the Defendants (together with all entities that are considered to be a single employer with any Defendant under Internal Revenue Code § 414), the Plans, any Person who serves or served as a trustee, investment manager, service provider, record-keeper, or named or functional fiduciary (including de facto fiduciaries) of any Plan, together with, for each of the foregoing, their counsel and any Person that controls, is controlled by, or is under common control with any of the foregoing, including, without limitation, every person who was a director, officer, governor, management committee member, in-house counsel, employee, or agent of Defendants, and any and all present or former representatives, insurers, reinsurers, consultants, attorneys, administrators, employee benefit plans, investment advisors, investment underwriters, and spouses.

1.17. *"Settlement"* shall mean: the settlement to be consummated under this Settlement Agreement pursuant to the Final Approval Order.

1.18. *"Settlement Class"* shall mean: All vested or non-vested present and past participants of the Plans (or their beneficiaries) as of the Effective Date of Settlement.

1.19. *"Successor-In-Interest"* or *"Successor"* shall mean: a Person's estate, legal representatives, heirs, successors or assigns, and any other Person who can make a legal claim by or through such Person.

1.20. *"Term Sheet"* shall mean: the document entitled *"Bon Secours* Settlement Term Sheet" dated April 11, 2017.

2. CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE SETTLEMENT

2.1. *Effectiveness of This Settlement Agreement.* This Settlement Agreement shall not become binding unless and until each and every one of the following conditions in §§ 2.2 through 2.8 shall have been satisfied.

2.2. *Court Approval.* The Settlement contemplated under this Settlement Agreement shall have been approved by the Court, as provided for in this § 2.2. The Parties agree jointly to recommend to the Court that it approve the terms of this Settlement Agreement and the Settlement contemplated hereunder. The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement, including the following:

    2.2.1 *Motion for Preliminary Approval of Settlement and of Notices.* The Court shall have approved the preliminary motion to be filed by Plaintiffs on or before May 31, 2017 ("Preliminary Motion") by issuing an order in substantially the same form as attached hereto as

3

<u>Communication Protected by Fed. R. Evid. 408</u>

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
Settlement Agreement
May 31, 2017

Exhibit 1 (the "Preliminary Approval Order"), including the class notice approved by the Court (the "Class Notice"):

(a)  Preliminarily approving this Settlement Agreement;

(b)  Directing the time and manner of the Class Notice; and

(c)  Finding that: (i) the proposed form of Class Notice fairly and adequately: (A) describes the terms and effect of this Settlement Agreement and of the Settlement, (B) gives notice to the Settlement Class of the time and place of the hearing of the motion for final approval of this Settlement Agreement, and (C) describes how the recipients of the Class Notice may object to approval of this Settlement Agreement; and (ii) the proposed manner of communicating the Class Notice to the members of the Settlement Class is the best notice practicable under the circumstances.

2.2.2  *Class Certification.*

(a)  The Court shall have certified the Consolidated Action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), with Named Plaintiffs as the named Settlement Class representatives, Cohen Milstein Sellers & Toll, PLLC as Class Counsel, and with a "Settlement Class" as defined above.

(b)  The Parties agree to stipulate to certification of the Consolidated Action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), on the foregoing terms. If the Settlement does not become Final, then no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Consolidated Action will for all purposes revert to its status as of the day immediately prior to the date on which the Term Sheet was executed.

2.2.3  *Issuance of Class Notice.* On the date and in the manner set by the Court in its Preliminary Approval Order, BSHSI will cause notice of the Preliminary Approval Order to be delivered to the Settlement Class in the form and manner approved by the Court. The Parties shall confer in good faith with regard to the form of the Class Notice in an effort to utilize cost effective forms of notice. The Parties agree, and the Preliminary Approval Order attached hereto as Exhibit 1 shall provide, that the last known addresses for members of the Settlement Class in the possession of the Plans' current record-keeper will suffice for all purposes in connection with this Settlement, including, without limitation, the mailing of the Class Notice. BSHSI will pay the cost for the notice program as part of the settlement administration.

2.2.4  *Internet/Publication of Class Notice.* Class Counsel also shall have given notice by publication of the Settlement Agreement and Class Notice on its firm website.

<u>**Communication Protected by Fed. R. Evid. 408**</u>

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
**Settlement Agreement**
**May 31, 2017**

---

2.2.5 *The Fairness Hearing.*

(a) On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in the hearing (the "Fairness Hearing"), during or after which the Court will determine by order (the "Final Approval Order") whether: (i) this Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court; (ii) final judgment approving this Settlement Agreement should be entered ("Judgment"); (iii) the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23; (iv) the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class; (v) the requirements of the Class Action Fairness Act have been satisfied; (vi) to award Plaintiffs Incentive Awards and if so, the amount; and (vii) to award attorneys' fees and further expenses and, if so, the amounts.

(b) The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order at the Fairness Hearing and will not do anything inconsistent with obtaining such a Final Approval Order.

2.2.6 *Motion for Final Approval of Class Action Settlement.* On the date set by the Court in its Preliminary Approval Order, Plaintiffs shall have filed a motion (the "Final Approval Motion") for a Final Approval Order. The Final Approval Motion shall seek the Court's finding that the Final Approval Order is a final judgment disposing of all claims and all Parties.

2.3. *Finality of Final Approval Order.* The Final Approval Order shall have become Final, as defined in § 1.9 of this Settlement Agreement.

2.4. *Compliance with the Class Action Fairness Act.* The Court shall have determined that Defendants complied with the Class Action Fairness Act of 2005 ("CAFA") and its notice requirements by providing appropriate federal and state officials with information about the Settlement.

2.5. *Dismissal of Action.* The Consolidated Action shall have been dismissed with prejudice as against Defendants on the Effective Date of Settlement.

2.6. *Dismissal of United States of America.* The United States of America shall have been dismissed with prejudice as a party to the Consolidated Action by Plaintiffs, with the United States and Plaintiffs to each bear their own attorney's fees and costs, except only as provided by this Agreement.

5

<u>Communication Protected by Fed. R. Evid. 408</u>

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
**Settlement Agreement**
**May 31, 2017**

2.7. *No Termination.* The Settlement shall not have terminated pursuant to § 9 below.

2.8. *Establishment of Effective Date of Settlement.* If Plaintiffs and Defendants disagree as to whether each and every condition set forth in § 2 has been satisfied, they shall promptly confer in good faith and, if unable to resolve their differences within five (5) business days thereafter, shall present their disputes for determination to Robert M. Meyer, the Parties' mediator, who shall make a final determination regarding the Effective Date of the Settlement and whether all the conditions set forth in § 2 have been satisfied. No portion of the Class Settlement Amount or the Vesting Payment shall be disbursed in the event of such a dispute, pending the mediator's ruling. Disbursement shall thereafter be made pursuant to the Court's order.

3. RELEASES AND COVENANT NOT TO SUE

3.1. *Released Claims.* Any and all claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses, and costs arising out of the allegations of the Complaint by any member of the Settlement Class, except that Released Claims are not intended to include the release of any of the following:

    3.1.1 Any rights or duties arising out of the Settlement Agreement, including the express warranties and covenants in the Settlement Agreement;

    3.1.2 Individual claims for benefits pursuant to the Plans' documents that do not arise out of the allegations of the Complaint;

    3.1.3 Unless such claim arises out of or is related to the subject matter of the Complaint, claims related to any other plan that is merged, adopted or consolidated into the Plans after the execution date of the Term Sheet, if such claim pertains to the time before such merger, adoption or consolidation.

    3.1.4 With respect to any Plan, any claim arising under ERISA with respect to any event occurring after the Internal Revenue Service issues a written ruling that the Plan does not qualify as a Church Plan; the Plan sponsor elects for the Plan to be covered by ERISA; a court of law issues a definitive ruling that the Plan is not a Church Plan; the Roman Catholic Church disassociates itself from the Plan sponsor; or an amendment to ERISA is enacted and becomes effective as a law of the United States eliminating the Church Plan exemption.

3.2. *Release by Named Plaintiffs and Settlement Class.* Subject to § 9 below, upon the Effective Date of Settlement, Named Plaintiffs on behalf of themselves and on behalf of the Settlement Class absolutely and unconditionally release and forever discharge the Releasees from any and all Released Claims that Plaintiffs or the Settlement Class have. The Settlement Class covenants and agrees: (i) not to file against any of the Releasees any claim based on,

6

<u>Communication Protected by Fed. R. Evid. 408</u>

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
Settlement Agreement
May 31, 2017

---

related to, or arising from any Released Claim; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claim against any Releasee.

3.3. *Defendants' Releases of Named Plaintiffs, the Settlement Class, and Class Counsel.* Subject to § 9 below, upon the Effective Date of Settlement, Defendants absolutely and unconditionally release and forever discharge the Named Plaintiffs, the Settlement Class and Class Counsel from any and all claims relating to the institution or prosecution of the Action.

4. COVENANTS

Named Plaintiffs, on their own behalf and on behalf of the members of the Settlement Class, and Defendants, hereby covenant as follows:

4.1. *Non-Disparagement.* The Parties, their counsel, and their agents shall refrain from making derogatory or disparaging comments as to the Settlement Agreement, Plaintiffs, Plaintiffs' Counsel, any Releasee, Defendants, the Plans, and/or Defendants' Counsel.

4.2. *Press.* Plaintiffs shall not cause, discuss, cooperate, or otherwise aid in the preparation of any press release or statement to the press concerning the Defendants, the subject matter of the Action, or the terms of this Settlement Agreement unless such press release or statement to the press is approved by the Defendants in advance.

4.3. *Plan Status.* Nothing herein shall be construed as an agreement that the Plans are not properly treated as Church Plans or that the Plans are subject to ERISA. Similarly, nothing herein shall be construed as an agreement that the Plans are properly treated as Church Plans or that the Plans are not subject to ERISA.

5. REPRESENTATIONS AND WARRANTIES

5.1. *Parties' Representations and Warranties.*

5.1.1 The Parties to this agreement warrant that they have made a good faith effort to ensure that the facts and information exchanged during the course of settlement discussions are substantially accurate. Each party understands that such information is being relied upon by the other parties to the agreement and agrees that the substantial accuracy of such information exchanged during the settlement discussions shall constitute a condition precedent to the parties' obligations hereunder.

5.1.2 Named Plaintiffs represent and warrant, on behalf of themselves and the Settlement Class, that they shall have no surviving claim or cause of action against any of the Releasees for the Released Claims against them.

7

<u>Communication Protected by Fed. R. Evid. 408</u>

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
**Settlement Agreement**
**May 31, 2017**

5.1.3  The Parties, and each of them, represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel; except as set forth in § 5.1.1, in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations of their own independently-selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and each Party assumes the risk of and unconditionally waives any and all claims or defenses arising out of any alleged mistake as to facts or law.

5.1.4  The Parties, and each of them, represent and warrant that they have carefully read the contents of this Settlement Agreement; they have made such investigation of the facts and law pertaining to this Settlement Agreement and all of the matters pertaining thereto as they deem necessary; and this Settlement Agreement is executed freely by each Person executing it on behalf of each of the Parties.

5.2.  *Signatories' Representations and Warranties.* Each individual executing this Settlement Agreement on behalf of any other Person hereby personally represents and warrants to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal that such individual represents or purports to represent.

6.  NO ADMISSION OF LIABILITY

The Parties understand and agree that this Settlement Agreement embodies a compromise and settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any admission or finding that ERISA governs the Plans and/or of any wrongdoing by any of the Releasees. This Settlement Agreement and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal, equitable, or factual. Moreover, the Releasees specifically deny any such liability or wrongdoing alleged in the Complaint.

7.  SETTLEMENT PAYMENTS

7.1.  *The Class Settlement Amount.*

7.1.1  For seven (7) Fiscal Years, BSHSI will make annual cash contributions to the Plans set forth in Schedule A in the combined amount of $14 million per year (the "Annual Payment"), totaling ninety-eight million dollars ($98,000,000) in contributions. BSHSI may make the Annual Payment in a lump sum at any point during the Fiscal Year or may split the Annual Payment into a number of payments throughout the year, at its discretion. For Fiscal Year 2017 and any subsequent Fiscal Year, any amount paid in excess of the Annual Payment, including any contributions already made in Fiscal Year 2017, may be used to reduce subsequent

8

<u>Communication Protected by Fed. R. Evid. 408</u>

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
**Settlement Agreement**
**May 31, 2017**

contributions at the discretion of BSHSI. Each of the contributions shall be distributed among the Plans in a manner that is proportionate to the relative unfunded liability of each of the Plans, as determined by the Plans' actuary, at the time each contribution is made. This cash contribution and each of the payments comprising it will be inclusive of, and not in addition to, any contributions that may be required under the Plans' funding policy. In the event BSHSI terminates a Plan before the cash contributions required by this section are completed, any cash contribution shall be allocated among the remaining Plans proportionate to the relative unfunded liability of each of the Plans at the time each contribution is made. In the event all Plans are terminated, the cash contributions required by this section shall cease so long as termination does not result in a reduction of the benefit any participant or beneficiary has accrued under the terms of the relevant Plan at the time of termination.

    7.1.2 *Vesting Payment.* In addition to the payment described in Section 7.1.1, BSHSI will pay three hundred thousand dollars ($300,000.00) in the aggregate to the former participants in the Bon Secours Hampton Roads Plan who left covered service under that Plan after January 1, 2008, having completing at least three (3) but less than five (5) years of vesting service and who had a positive cash balance account as of January 1, 2016. These former participants are identified on Schedule B of this Settlement Agreement, and payment will be sent to those individuals' last known addresses. The payment will be made within thirty days of the Effective Date of the Settlement. Each individual identified on Schedule B will receive a proportional share of the $300,000 recovery for this group based on the value of his or her cash balance account as of January 1, 2016. Payments returned as undeliverable will be paid back to the Bon Secours Hampton Roads Plan.

    7.1.3 The ninety-eight million dollar ($98,000,000) contribution pursuant to § 7.1.1 and the three hundred thousand dollars ($300,000.00) Vesting Payment pursuant to § 7.1.2 above together shall constitute the "Class Settlement Amount."

    7.1.4 *Payment to Plaintiffs' Counsel.* Defendants will not oppose Plaintiffs' application to the Court for an award of reasonable attorney fees, out of pocket expenses, and Incentive Awards for Plaintiffs (together, the "Fee Award"). The Fee Award shall not exceed three and one half million dollars ($3,500,000) (the "Maximum Total Fee"). Defendants will cause the Fee Award to be paid in addition to the payments described in §§ 7.1.1 and 7.1.2 of this Settlement Agreement. The Fee Award will be subject to the discretion and approval of the Court, which may award an amount less than three and one half million dollars ($3,500,000). Defendants will pay Plaintiffs' Counsel the Maximum Total Fee or any lesser amount as ordered by the Court in its discretion one week after the Court's entry of the Order and Final Judgment, notwithstanding the existence of any timely-filed objections thereto, potential for appeal therefrom, or any collateral attack on the Settlement or any part thereof, subject to the obligation of Plaintiffs' Counsel to make appropriate refunds or repayments to BSHSI plus accrued interest (based on the one year Treasury constant maturity rate) within ten calendar days, if and when, as

<u>Communication Protected by Fed. R. Evid. 408</u>

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
Settlement Agreement
May 31, 2017

---

a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or expense award is reduced or reversed.

7.1.5 *Application for Fees, Expenses, and Incentive Awards for Plaintiffs.* Class Counsel shall petition the Court for the Fee Award on the date set by the Court in its Preliminary Approval Order. Defendants and the Releasees expressly agree not to contest or take any position with respect to any application for the Fee Award that does not exceed the Maximum Total Fee, and acknowledge that these matters are left to the sound discretion of the Court. The procedure for and the allowance or disallowance of any application for the Fee Award that does not exceed the Maximum Total Fee are matters separate and apart from the Settlement and shall be requested to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating solely to a Fee Award that does not exceed the Maximum Total Fee, or any appeal from any order relating thereto, or any reversal or modification thereof, shall have no effect on the Settlement and shall not operate to, or be grounds to, terminate or cancel the Settlement Agreement or to affect or delay the finality of the Final Approval Order or Judgment.

7.2. *Cost of Notice.* BSHSI shall pay the cost for Class Notice in addition to the amounts specified above.

8. AGREED UPON PLAN PROVISIONS.

8.1. *Scope.* The provisions of the Settlement Agreement shall apply to all Plans. Each of the Plans as defined in § 1.13 is referred to singularly as a Plan.

8.2. *Benefits Commitment.* Through Fiscal Year 2025, if BSHSI still sponsors the Plans, BSHSI will guarantee that the Plans have sufficient funds to pay the accrued benefits payable to Participants under the terms of the Plans. BSHSI may, however, terminate and/or annuitize some or all benefits provided by any of the Plans as long as there are sufficient assets to meet the accrued benefits (as defined by the relevant Plan), earned by participants at the time of Plan termination or benefit annuitization.

8.3. *Plan Mergers.* Through Fiscal Year 2025, if any Plan is merged with or into another Plan, participants in all merged Plans will be entitled to the same (or greater) benefits post-merger as they enjoyed before the merger.

8.4. *Plan Amendment and Termination.* Notwithstanding any other provision of this Agreement, including the cash contribution requirements of section 7.1, BSHSI retains the right to amend or terminate any of the Plans at any time. If BSHSI amends or terminates a Plan through Fiscal Year 2025, such amendment or termination shall not result in a reduction of the benefit any participant or beneficiary has accrued under the terms of the relevant Plan at the time of the amendment or termination. In the event BSHSI terminates a Plan before the cash

10

<u>Communication Protected by Fed. R. Evid. 408</u>

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
**Settlement Agreement**
**May 31, 2017**

---

contributions in section 7.1 are completed, the cash contribution shall be allocated among the remaining Plans in the manner described in section 7.1. In the event all Plans are terminated, the cash contributions required by section 7.1 shall cease.

8.5. *Plan Administration.* Commencing sixty days after the Effective Date, the Plan Administrator will establish procedures concerning Plan administration and notices, as set forth in sections below.

8.6. *Summary Plan Descriptions (SPDs) & Summary of Material Modifications (SMMs).* At a time during the Plan year to be determined by BSHSI, the Plan will issue a summary plan description ("SPD"). The SPD will include the following information: (a) The name and type of administration of the Plan; (b) the name and address of the person designated as agent for the service of legal process (if not the administrator); (c) the name and address of the administrator; the names, titles, and addresses of any trustee or trustees(if they are persons different from the administrator); (d) a description of the relevant provisions of any applicable collective bargaining agreement; (e) the plan's requirements respecting eligibility for participation and benefits; (f) a description of the provisions providing for nonforfeitable pension benefits; (g) circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; (h) the source of financing of the plan and the identity of any organization through which benefits are provided; (i) the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; (j) the procedures to be followed in presenting claims for benefits under the plan, including procedures for providing adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, as well as procedures to afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim; and (k) the remedies available under the Plan for the redress of claims which are denied in whole or in part. The SPDs shall be distributed only to current participants via email or using BSHSI's existing intranet systems. The Plan Administrator's designee shall also prepare documents that are similar in content to the information listed in 29 CFR § 2520.104b-3. Any such documents shall be furnished to current participants via email or the use BSHSI's existing intranet systems. Current participants and beneficiaries may send a written request for a written SPD or documents prepared after a material modification, and BSHSI shall provide a hard copy of such SPD or document prepared after a material modification to the participant within thirty days of receiving the participant or beneficiary's request. The requirements of this section shall remain in effect through Fiscal Year 2025.

8.7. *Other Plan Information.* Through Fiscal Year 2025, the Plans will make available electronically pension benefit statements and/or current benefit values and/or financial statements (the content of said communications to be determined solely by BSHSI), or on request and at the expense of the participant, paper copies of such documents summarizing the following information:

11

**Communication Protected by Fed. R. Evid. 408**

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
**Settlement Agreement**
**May 31, 2017**

---

8.7.1 *Pension Benefit Statements.* The Plans shall provide electronic pension benefit statements containing the information described in ERISA § 105 for defined benefit plans. The pension benefit statements shall be distributed to participants and beneficiaries, as such distribution is described in ERISA § 105.

8.7.2 *Annual Report.* The Plan Administrator shall prepare annual reports that substantially comply with the requirements of subsections 103(b) and (c) of ERISA, and an actuarial statement containing the information described in Section 103(d), excluding information relating to minimum funding and contributions under ERISA, information required by the Pension Benefit Guaranty Corporation, and other information that may be required by the Secretary of Labor for ERISA governed plans. The annual reports shall be available to participants or beneficiaries on request.

8.8. *Plans' Claim Review Procedure.* The Plans' claim review procedures, which shall be included as part of summary plan descriptions through Fiscal Year 2025, shall state: (a) the identity of the person or entity to whom a claim should be addressed; (b) the time period for filing a claim; (c) the information that must be provided in support of the claim; (d) if a claim is denied, in whole or in part, the person to whom an appeal should be sent; (e) the time period for filing a claim appeal; and (f) the information the claimant must provide in support of an appeal.

8.9. *Continuing Obligations.* In the event that any Plan becomes subject to ERISA, all continuing obligations of the Defendants under this Settlement Agreement or the Term Sheet shall cease with respect to that Plan. In such an event, then the proportional contribution for such ERISA-covered Plan that would have otherwise been due under 7.1.1 shall be subtracted from the total Annual Payment for all the Plans in that year and the remaining contribution due under 7.1.1 shall be distributed among the remaining Plans, which are not subject to ERISA, in the manner provided by Section 7.1.1. All continuing obligations of the Defendants under this Settlement Agreement or the Term Sheet shall cease if, prior to the expiration of the period of time such obligations are in effect, all of the Plans become subject to ERISA.

9. TERMINATION OF THE SETTLEMENT AGREEMENT

9.1. *Automatic Termination.* This Settlement Agreement shall automatically terminate, and thereupon become null and void, in the following circumstances:

9.1.1 If the Court declines to approve the Settlement, and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final, provided, however, that if the Court declines to approve the Settlement for any reason, the Parties shall negotiate in good faith to cure any deficiency identified by the Court, and further provided that, if necessary to cure any such deficiency, Class Counsel shall re-submit within a reasonable time

12

<u>Communication Protected by Fed. R. Evid. 408</u>

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
**Settlement Agreement**
**May 31, 2017**

the Preliminary or Final Approval Motion with an additional or substitute member of the Settlement Class as a named Class Representative.

9.1.2   If the Court issues an order in the Consolidated Action modifying the Settlement Agreement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Court or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the order referenced in this § 9.1.2.

9.1.3   If the Fourth Circuit reverses the District Court's order approving the Settlement, and if within ninety-one (91) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Fourth Circuit or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the ninety-first day after issuance of the Fourth Circuit order referenced in this § 9.1.3.

9.1.4   If the Supreme Court of the United States reverses or remands a Fourth Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Supreme Court or by the Parties, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the Supreme Court order referenced in this § 9.1.4.

9.1.5   If a Review Proceeding is pending of an order declining to approve the Settlement Agreement or modifying this Settlement Agreement, this Settlement Agreement shall not be terminated until Final resolution or dismissal of any such Review Proceeding, except by written agreement of the Parties.

9.2.   *Consequences of Termination of the Settlement Agreement.* If the Settlement Agreement is terminated and rendered null and void for any reason, the following shall occur:

9.2.1   The Consolidated Action shall for all purposes with respect to the Parties revert to its status as of the day immediately prior to the execution of the Term Sheet.

9.2.2   All Releases given or executed pursuant to the Settlement Agreement shall be null and void; none of the terms of the Settlement Agreement shall be effective or enforceable; neither the fact nor the terms of the Settlement Agreement shall be offered or received in evidence in the Actions or in any other action or proceeding for any purpose, except in an action or proceeding arising under this Settlement Agreement.

10.   MISCELLANEOUS PROVISIONS

13

Communication Protected by Fed. R. Evid. 408

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
**Settlement Agreement**
**May 31, 2017**

10.1. *Jurisdiction.* The Court shall retain jurisdiction over all Parties, the Settlement Class, the Action, and this Settlement Agreement to resolve any dispute that may arise regarding this Settlement Agreement or the orders and notice referenced in § 2 above, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement, and no Party shall oppose the reopening and reinstatement of the Consolidated Action on the Court's active docket for the purposes of effecting this § 10.1.

10.2. *No Limitation of Remedies.* In the event that the Defendants breach this Settlement Agreement, Plaintiffs will continue to have any and all remedies for such breach. In the event that Plaintiffs or the Settlement Class breaches this Settlement Agreement, Defendants will continue to have any and all remedies for such breach.

10.3. *Governing Law.* This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Maryland law will apply without regard to conflict of law principles.

10.4. *Severability.* The provisions of this Settlement Agreement are not severable.

10.5. *Amendment.* Before entry of a Final Approval Order, any common law to the contrary notwithstanding, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of a Final Approval Order, any common law to the contrary notwithstanding, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties, and approved by the Court.

10.6. *Waiver.* The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach of this Settlement Agreement, whether prior, subsequent, or contemporaneous with this Settlement Agreement.

10.7. *Construction.* None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against a drafter.

10.8. *Principles of Interpretation.* The following principles of interpretation apply to this Settlement Agreement:

    10.8.1 *Headings.* The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

14

<u>Communication Protected by Fed. R. Evid. 408</u>

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
**Settlement Agreement**
**May 31, 2017**

      10.8.2 *Singular and Plural.* Definitions apply to the singular and plural forms of each term defined.

      10.8.3 *Gender.* Definitions apply to the masculine, feminine, and neuter genders of each term defined.

      10.8.4 *References to a Person.* References to a Person are also to the Person's permitted successors and assigns.

      10.8.5 *Terms of Inclusion.* Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

10.9. *Further Assurances.* Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

10.10. *Survival.* All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

10.11. *Notices.* Any notice, demand, or other communication under this Settlement Agreement (other than notices to members of the Settlement Class) shall be in writing and shall be deemed duly given if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

A.    IF TO NAMED PLAINTIFF:

    Karen L. Handorf
    Michelle C. Yau
    Scott Lempert
    Jamie Bowers
    COHEN MILSTEIN SELLERS & TOLL, PLLC
    1100 New York Ave., NW, Suite 500 West
    Washington, DC 20005
    Fax: (202) 408-4699

    Lynn Lincoln Sarko
    Ron Kilgard
    KELLER ROHRBACK L.L.P.
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
    Fax: (206) 623-3384

Communication Protected by Fed. R. Evid. 408

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
Settlement Agreement
May 31, 2017

B. IF TO DEFENDANTS:

Lars Golumbic
Sarah Adams
Sean Abouchedid
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue NW
Washington, DC 20006
Fax: (202) 659-4503

Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described above.

10.12. *Entire Agreement.* This Settlement Agreement contains the entire agreement among the Parties relating to the settlement of the Actions. It specifically supersedes any settlement terms or settlement agreements relating to Defendants that were previously agreed upon orally or in writing by any of the Parties, including the terms of the Term Sheet and any and all discussions, representations, warranties, or the like prior to the Effective Date of Settlement.

10.13. *Counterparts.* This Settlement Agreement may be executed by exchange of faxed or emailed executed signature pages, and any signature transmitted by facsimile for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

*FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS*

Dated this 31st day of May, 2017.

By: _____
Karen L. Handorf
Michelle C. Yau
Scott Lempert
Jamie Bowers
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005

Communication Protected by Fed. R. Evid. 408

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*
**Settlement Agreement**
**May 31, 2017**

Lynn L. Sarko
Ron Kilgard
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

*Class Counsel*

**FOR ALL DEFENDANTS**

Dated this 31st day of May, 2017.

By: _____
Lars Golumbic
Sarah Adams
Sean Abouchedid
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue NW
Washington, DC 20006
Fax: (202) 639-4503

*Attorneys for Defendants*

17

**SCHEDULE A TO THE SETTLEMENT AGREEMENT**

*Hodges, et al. v. Bon Secours Health System, Inc., et al.*

Bon Secours Health System, Inc. Frozen Pension Plan

Bon Secours Kentucky Health System, Inc. Pension Plan

Bon Secours New York Health System Pension Plan

Employees' Retirement Plan of Bon Secours Baltimore Health Corporation

Employees' Retirement Plan of Bon Secours-St. Mary's Hospital

Memorial Regional Medical Center Pension Plan

Retirement Plan of Bon Secours-Hampton Roads