# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (BALTIMORE DIVISION)

| | |
|---|---|
| ARLENE HODGES, et al.,           ) | |
|            ) | |
|       Plaintiffs,        ) | |
|            ) | |
|       v.            ) | Civil No. 1:16-cv-01079-RDB |
|            ) | |
| BON SECOURS HEALTH SYSTEM, INC., et al., ) | |
|            ) | |
|       Defendants.       ) | |
|            ) | |
|            ) | |

**DECLARATION OF KAREN L. HANDORF IN SUPPORT OF (1) PLAINTIFFS'
UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT
AGREEMENT; AND (2) PETITION OF CLASS COUNSEL FOR
APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT
OF EXPENSES AND FOR INCENTIVE AWARDS
<u>TO NAMED PLAINTIFFS</u>**

Karen L. Handorf respectfully submits this Declaration in Support of (1) Plaintiffs' Unopposed Motion for Final Approval of Settlement Agreement; and (2) Petition of Class Counsel for Approval of Attorneys' Fees and Reimbursement of Expenses and for Incentive Awards to Named Plaintiffs. This Settlement,[1] if approved by the Court, will resolve in its entirety this Class Action, *Hodges v. Bon Secours Health System, Inc.*, No. 1:16-cv-1079-RDB (D. Md.)

**Pursuant to 28 U.S.C. § 1746, I, Karen L. Handorf, declare as follows:**

1.      I am a Partner at Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein" or "Class Counsel"), the firm preliminarily approved as Class Counsel for Arlene Hodges, Carolyn Miller, and Gary Brown ("Named Plaintiffs"), by the Court, ECF No. 107.  I am also one of the attorneys personally involved in the litigation of this case and responsible for its prosecution.  I have personal knowledge of the facts set forth below and, if called as a witness, could and would testify competently thereto.

2.      Since 2013, Cohen Milstein Sellers and Keller Rohrback L.L.P. ("Keller Rohrback")  have been co-counsel in several cases involving the Church Plan exemption to the Employee Retirement Income Security Act, 29 U.S.C. § 1002(33)(C)(i), including this action.

3.      The Court preliminarily approved the Settlement Agreement on July 10, 2017 ("Preliminary Approval Order"), ECF No. 107. The Settlement Agreement affects the Settlement Class, which consists of all past and present participants and beneficiaries of the defined benefit

---

[1] Capitalized terms not otherwise defined in this Declaration shall have the same meaning ascribed to them in the Class Action Settlement Agreement, attached as Exhibit 1 ("Ex. 1") to Plaintiffs' Unopposed Motion for Final Approval of Settlement Agreement and Certification of Settlement Class ("Final Approval Motion"), filed contemporaneously herewith.

pension plans sponsored by Bon Secours Health System, Inc. ("BSHSI") listed on Schedule A to the Settlement Agreement (collectively the "Plans").[2]

4.     The Settlement was reached only after vigorous arm's-length negotiations by experienced counsel with the assistance of a third-party mediator who has significant experience mediating ERISA and Church Plan cases. It achieves substantial monetary and equitable consideration for the Settlement Class.

5.     Cohen Milstein, with co-counsel Keller Rohrback, negotiated the Settlement between April and May of 2017.  Settlement negotiations involved one all-day, in-person mediation session with the parties and the mediator Robert Meyer, Esquire, of JAMS, as well as weeks of ongoing negotiation by telephone and in writing.

6.     The parties executed the Settlement Agreement on May 31, 2017, approximately two months after the Supreme Court heard argument in *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2017).  At issue before the Supreme Court was the statutory construction of the Church Plan exemption and whether it mandated that a Church Plan be established by a church.

7.     In light of the risks associated with an adverse decision by the Supreme Court, Class Counsel negotiated a settlement that they thought would best serve the interests of Class members while taking into account the possibility of an adverse decision.

8.     The Settlement provides substantial monetary and equitable consideration for the Class.  The $98 million contribution to the Plans represents the collective underfunding of the Plans on an ERISA basis at the time of negotiations.  This contribution directly benefits all current participants in the Plans, "Group A" in the Settlement, because it enhances the fund from

---

[2] *See* Schedule A to the Settlement Agreement, Ex. 1 to the Final Approval Motion.

3

which their benefits will be paid.  Class Counsel also negotiated for a $300,000 total payment to certain former participants, "Group B," who did not vest in the Bon Secours Hampton Roads Plan due to a vesting schedule that was not compliant with ERISA.  Outside of monetary consideration, the participants in the Plans will receive certain ERISA-like protections through August 31, 2025, including the guarantee that should the Plans not have sufficient funds to pay participants' accrued benefits during that time period, BSHSI will supplement the assets of the trust fund, assuring all accrued benefits are paid.  Lastly, the Settlement also protects the Plans' participants by providing ERISA-like provisions regarding plan administration and the Plans' claim review procedure, in addition to requiring BSHSI to provide summary plan descriptions and annual summaries, pension benefits statements, and current benefit value statements to participants.   In short, the Settlement offers protections similar to what the Class would have received following a favorable judgment.

9.      Defendants have agreed not oppose a request of $3,500,000 for attorneys' fees and expenses, as well as potential class representative incentive awards to the Named Plaintiffs subject to Court approval.  These amounts are separate from the $98,300,000 Class Settlement Amount and will not reduce that recovery or otherwise abridge non-monetary relief. After resolving the key Settlement provisions that provide relief to the Settlement Class, the neutral third-party mediator made a proposal concerning Defendants' payment of attorneys' fees, expenses and Plaintiffs' incentive awards, to which the parties ultimately agreed.

10.      Cohen Milstein and Keller Rohrback reached this Settlement after conducting extensive legal and factual research to develop the legal theories and factual bases for Complaint, drafting and filing two Consolidated Amended Complaints, reviewing documents produced prior to discovery, and conducting legal research in response to Defendants' arguments

4

in the motion to dismiss. The parties engaged in arm's-length negotiations with third-party JAMS mediator, Robert Meyer, Esq., and through this mediation arrived at this Settlement. Named Plaintiffs and Cohen Milstein are pleased to present this Settlement to the Court for its consideration and believe strongly that it should be approved.

## I.      PROCEDURAL & FACTUAL BACKGROUND

11.      Cohen Milstein, with co-counsel Keller Rohrback, committed considerable time and resources to develop and prosecute this matter without any guarantee of payment.  As detailed below, this case was hard fought and involved extensive investigation, review of documents, and legal and factual research, all of which were necessary to achieve a positive result for the Class.

### A.      **Initial Investigation into the ERISA Church Plan Exemption.**

12.      This case is one of a number of cases pending around the country that challenge whether hospital systems like BSHSI are entitled to claim that their pension plans are exempt from ERISA as "Church Plans," defined in 29 U.S.C. § 1002(33).

13.      Cohen Milstein and Keller Rohrback discovered and developed this area of the law with the assistance of the main public interest organization concerned with pension rights, the Pension Rights Center ("PRC"). Through the PRC, Cohen Milstein and Keller Rohrback learned that thousands of hospital employees were being denied the rights and protections of ERISA, including funding, vesting, and disclosure rules, because hospitals claimed their pension plans were exempt Church Plans.

14.      Cohen Milstein and Keller Rohrback devoted many hours to researching the definition of a "Church Plan" found in both ERISA and the Internal Revenue Code, 29 U.S.C. § 1002(33) and 26 U.S.C. § 414(e), including analyzing the statutory text, its interaction with other provisions in the U.S. Code, the legislative history of the statute, and agency and court

5

interpretations of the statute.  Cohen Milstein and Keller Rohrback concluded, based upon their investigation, that there were three independent and alternative statutory prerequisites for a plan to be a Church Plan—that it be "established" by a church; that it be "maintained" by either a church or a so-called "principal-purpose organization", and that the participants be employed by either a church or an entity "controlled by or associated with" a church, as those terms were defined under ERISA.  The firms concluded that with respect to a typical hospital pension plan, none of these requirements were met.

15.    Cohen Milstein and Keller Rohrback also understood, based upon their research, that filing Church Plan cases like this one would challenge private letter rulings from the IRS and informal Advisory Opinions of the U.S. Department of Labor.  They also knew that the defense would maintain that the small amount of Church Plan case law then in existence would favor a defense reading of the Church Plan exemption.  And they knew that once even a few of the cases were filed, the major hospitals claiming religious ties, which employ hundreds of thousands of people, would be arrayed against them.

16.    Nevertheless, Cohen Milstein and Keller Rohrback decided to take on this high-stakes, high-risk litigation.  They were the only lawyers to do so at that time.  They filed the first cases in March of 2013.  The early results in the district courts were mixed,[3] but when the first three cases reached the appellate courts, Cohen Milstein and Keller Rohrback achieved

---

[3] *Compare, e.g.*, *Kaplan v. Saint Peter's Healthcare Sys.*, No. 13-2941, 2014 WL 1284854 (D.N.J. Mar. 31, 2014); *Rollins v. Dignity Health*, 19 F. Supp. 3d  909 (N.D. Cal. 2013); *and Stapleton v. Advocate Health Care Network*, 76 F. Supp. 3d 796 (N.D. Ill. 2014), *with Overall v. Ascension Health*, 23 F. Supp. 3d 816 (E.D. Mich. 2014); *Medina v. Catholic Health Initiatives*, No. 13-1249, 2014 WL 4244012 (D. Colo. Aug. 26, 2014).

2282428.1

unanimous rulings in favor of the plaintiffs in the Third, Seventh, and Ninth Circuit.[4]  Those courts held that the hospital plans there at issue were not Church Plans because they were not established by a church; none of the courts of appeal reached the plaintiffs' alternative statutory arguments.

17.     The defendants then sought review in the Supreme Court. The Supreme Court granted certiorari and consolidated the three cases in December 2016.[5]  Cohen Milstein and Keller Rohrback represented the plaintiffs in the Supreme Court; oral argument was heard March 27, 2017.  The Supreme Court issued its decision on June 5, 2017, reversing the holdings of the appellate courts.  *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652 (2017) ("*Advocate*").  After *Advocate*, Cohen Milstein and Keller Rohrback continue to pursue, on behalf of the plaintiffs, several other arguments in the district courts where these cases were originally filed.  They have continued to amend complaints in other Church Plan cases to reflect the *Advocate* decision and to pursue plaintiffs' arguments that the pension plans of these hospital systems are not Church Plans.

18.     The Settlement achieved here could not have been achieved but for Cohen Milstein and Keller Rohrback's total immersion in the issue.

B.     **Cohen Milstein and Keller Rohrback's Prosecution of This Case.**

1.     **The Complaint, Consolidation of a Related Case, Motion to Dismiss, and Stay of Proceeding.**

---

[4] *Rollins v. Dignity Health*, 830 F.3d 900, 905 (9th Cir. 2016); *Stapleton v. Advocate Health Care Network*, 817 F.3d 517 (7th Cir. 2016); *Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015).

[5] *See Dignity Health v. Rollins*, 137 S. Ct. 547 (Dec. 2, 2016); *Saint Peter's Healthcare Sys. v. Kaplan*, 137 S. Ct. 546 (Dec. 2, 2016); *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 546 (Dec. 2, 2016).

19.     Before filing the Complaint, Cohen Milstein and Keller Rohrback developed the legal theories outlined above, consulted with constitutional experts and analyzed the facts relating to BSHSI and the Plans.  They examined certain documents related to the Plans, public disclosures by BSHSI, financial statements, and information supplied by the Plaintiffs themselves. Ultimately, this research resulted in a detailed, 45-page Complaint filed in the District of Maryland in 2016 against BSHSI asserting eight counts against two Defendants (not including John Doe defendants).

20.     One week after Cohen Milstein and Keller Rohrback filed this Complaint, a similar class action complaint was filed in the same district against the same Defendants.  *See Miller v. Bon Secours Health System, Inc.*, No. 1:16-cv-1151-RDB, ECF No. 1 (D. Md.).  That complaint alleged nearly identical claims to the Complaint in this case—namely, that BSHSI was improperly operating seven of its defined benefit plans as Church Plans.  Cohen Milstein and Keller Rohrback moved, on behalf of Plaintiff Hodges, to consolidate the two ERISA actions and appoint Plaintiff Hodges as Interim Lead Plaintiff and Cohen Milstein and Keller Rohrback as Interim Co-Lead Counsel.  After briefing in both this case and the *Miller* case, the Court ultimately consolidated the two cases into the instant action, appointed Plaintiffs Hodges and Miller as Interim Lead Plaintiffs, and appointed Cohen Milstein as Interim Lead Class Counsel, directing Plaintiffs to file a Consolidated Amended Complaint.

21.     After the Court appointed Cohen Milstein[6] as sole Class Counsel, Keller Rohrback consulted on this case when necessary, given the firms' co-counsel relationship in multiple other Church Plan cases.

---

[6] In the firms' briefing on lead counsel, the firms designated Cohen Milstein as the firm that would take the lead role in management of this case.  The Court credited Defendants' objection that only one of the firms should serve as lead counsel.

22.     Plaintiffs filed a Consolidated Amended Complaint on October 6, 2016.  On December 5, 2016, Defendants moved to dismiss the Consolidated Amended Complaint for lack of jurisdiction and failure to state a claim.  Plaintiffs filed a Second Consolidated Amended Complaint with the consent of Defendants on January 13, 2017.  The new Complaint rendered Defendants' motion to dismiss moot by the Court's Order.  In the same Order, the Court also granted Plaintiffs' and Defendants' joint motion for this case to be stayed pending the Supreme Court's decision in *Advocate*.

2.     <b><u>Settlement Negotiations.</u></b>

23.     The parties prepared for and participated in a formal mediation on April 11, 2017, overseen by a third-party JAMS mediator, Robert Meyer, Esq., who has substantial experience mediating cases concerning ERISA and retirement plan issues, including cases involving the Church Plan exemption that Class Counsel litigated.  The mediation date was just two weeks after the March 27, 2017 *Advocate* oral argument in front of the Supreme Court.  Counsel for both parties attended the argument.  Prior to the formal mediation, both sides provided the mediator with their respective mediation statements, including the effect of the oral argument on the parties' respective positions.   The parties also participated in a pre-mediation call with Mr. Meyer to prepare for the session.

24.     Before the mediation, Class Counsel investigated the facts, circumstances, and legal issues associated with the allegations and defenses in the action.  This investigation included, among other things: (1) inspecting, reviewing, and analyzing documents produced by or otherwise relating to the Defendants, the Plans, and the administration and funding of the Plans, including documents that Defendants produced through informal discovery for settlement purposes; (2) researching the applicable law with respect to the claims asserted in the case and

9

possible defenses thereto; and (3) researching and analyzing governmental and other publicly-available sources concerning Defendants, the Plans, and the industry.

25.     The parties met for an in-person mediation session in New York, New York on April 11, 2017.   The parties reached an agreement in principle on April 11, 2017 and executed a term sheet that day.  The parties filed a joint notice of settlement with the Court on April 12, 2017, informing that Court that they had reached an agreement in principle.  On the Parties' request, the Court stayed the case pending the filing of Plaintiffs' motion for preliminary approval of the settlement.

26.     At the time the Settlement Term Sheet was executed, there was significant uncertainty for all parties because it was unknown whether *Advocate* would rule in favor of Plaintiffs' theory or Defendants' position.  After the parties executed the term sheet, they continued to heavily negotiate the remaining terms of the settlement.  The parties requested a two week extension of time to file for preliminary approval of the settlement, based on outstanding issues that had not yet been agreed upon by the parties.  The Settlement Agreement was executed on May 31, 2017, after an additional month and a half of negotiations.  The Settlement is the result of lengthy and contentious arm's-length negotiations between the parties, and the process was thorough, adversarial, and professional.

27.     Only *after* the parties reached agreement on the key terms for the Settlement Class did they turn to negotiations concerning attorneys' fees.  Those negotiations were overseen by the mediator, who devised a mediator's proposal on attorneys' fees, which was ultimately accepted by the parties subject to the Court's approval.

28.     Class Counsel drafted and filed Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement Agreement ("Preliminary Approval Motion") on May 31, 2017.  As part

of this process, Class Counsel developed the Class Notice materials to be sent to current and former Plan participants.

29.     The Court held a Preliminary Settlement Approval Hearing on July 10, 2017 and preliminarily approved the Settlement and Notice Procedures on that date.

30.     Pursuant to the Preliminary Approval Order, Class Notice was mailed on September 8, 2017 to 27,940 current and former Plan participants.  *See* Affidavit of United Forms Finishing Corporation ¶ 5 ("UFF Aff.").  Defendants paid the costs associated with the Notice.

### 3.     **Preliminary Approval.**

31.     The Court preliminarily approved the Settlement on July 10, 2017.

32.     In accordance with the Preliminary Approval Order, the Settlement Class has been provided with ample and sufficient notice of this Settlement, including an appropriate opportunity to voice objections.  The Class Notice detailed information about the Settlement, including: (1) a comprehensive summary of the Settlement's terms; (2) notice of counsel's intent to request attorneys' fees, reimbursement of expenses, and class representative incentive awards for the services performed by Named Plaintiffs; and (3) information about the Released Claims. In addition, the Class Notice provided information about the Fairness Hearing date, rights of members of the Settlement Class to object (and deadlines and procedures for objecting), and the procedure to receive additional information.  The mailed Class Notice provided members of the Settlement Class with contact information for Class Counsel, information on the toll-free phone number for inquiries, and a website for further information: www.cohenmilstein.com/bon-secours-settlement).  Thus, the Class Notice fully informed Settlement Class members of the lawsuit and proposed Settlement, and enabled them to make an informed decision about their rights.

11

33.     By the deadline set forth in the Preliminary Approval Order, or September 11, 2017, Class Counsel also posted the Settlement Agreement, the Class Notice, the preliminary approval motion and order, and other case documents on a website identified in the Class Notice: www.cohenmilstein.com/bon-secours-settlement.

34.     As of October 12, 2017, Class Counsel had received and responded to 112 e-mail and phone inquiries from members of the Settlement Class.  Furthermore, the website identified in the Class Notice has recorded 236 visitor sessions on October 12, 2017.

35.     To date, Cohen Milstein has not received any objections to the proposed Settlement.  If there are any objections, Cohen Milstein will address them in their reply in support of Final Approval.

36.     Cohen Milstein has already dedicated significant time to this litigation.  They have: (1) learned of the widespread use of the Church Plan exemption by major hospital chains to avoid compliance with ERISA; (2) researched the law bearing on the Church Plan exemption and concluded large hospital systems were not entitled to the exemption; (3) investigated the non-profit hospital business as it bore on liability and defenses; (4) investigated the facts of this case, and drafted and filed the Complaint; (5) reviewed hundreds of pages of documents, including publicly available information about the plans and confidential production from Defendants; (6) conducted factual and legal research; (7) engaged in motion practice to consolidate the *Hodges* action with the *Miller* action, appoint interim lead counsel, and appoint interim lead plaintiffs; (8) amended the Complaint twice, first to provide a consolidated amended complaint and second to respond to a motion to dismiss;  (9) propounded a request for production; (10) monitored developments in all the Church Plan cases in order to determine the impact on this case; (11) negotiated and crafted a comprehensive Settlement Agreement after

12

arm's-length negotiations overseen by a third-party mediator; (12) successfully moved for preliminary approval of the Settlement; (13) drafted the Class Notice materials and posted them on a dedicated settlement website; and (14) responded to class member inquiries concerning the Class Notices, the Settlement, and this litigation.   As this case moves ahead through final approval proceedings, Cohen Milstein expects that they will continue to devote at least another one hundred hours to this matter.  Indeed, Cohen Milstein still needs to: (1) prepare for and attend the final approval hearing; (2) research, draft, and prepare any additional submissions requested by the Court; (3) assist Settlement Class members with their inquiries; (4) respond to objections, if any; and (5) handle any resulting appeal.

## II.       COHEN MILSTEIN'S EXPERIENCE

37.     Cohen Milstein is well-versed in class action litigation and is among the leading litigators of ERISA actions on behalf of plaintiffs. Cohen Milstein, with co-counsel Keller Rohrback, is one of the two law firms in the country that—for over six years—have been involved in Church Plan litigation.  As a result of our experience litigating Church Plan cases, Cohen Milstein has a deep knowledge of the applicable law.  Further, Cohen Milstein—with Keller Rohrback—represented the plaintiffs in the consolidated Church Plan cases before the Supreme Court (including arguing before the Court March 27, 2017).  This Court appointed Cohen Milstein as lead counsel over competing counsel in this case, citing Cohen Milstein and Keller Rohrback's superior experience in this area.

38.     Cohen Milstein currently acts, or has acted, as co-counsel with Keller Rohrback in roughly 20 cases pending across the country involving claims by hospital systems that their plans qualify as "Church Plans."  These cases are:

- *Overall v. Ascension Health*, No. 13-11396 (E.D. Mich.);

2282428.1

- *Rollins v. Dignity Health*, No. 13-1450 (N.D. Cal.);

- *Kaplan v. Saint Peter's Healthcare Sys.,* No. 13-2941 (D.N.J.);

- *Medina v. Catholic Health Initiatives*, No. 13-1249 (D. Colo.);

- *Stapleton v. Advocate Health Care Network & Subsidiaries*, No. 14-1873 (N.D. Ill.);

- *Owens v. St. Anthony Med. Ctr., Inc.,* No. 14-4068 (N.D. Ill.);

- *Griffith v. Providence Health & Servs.,* No. 14-1720 (W.D. Wash.);

- *Carver v. Presence Health Network*, No. 15-2905 (N.D. Ill.);

- *Feather v. SSM Health*, No. 16-1669 (E.D. Mo.);

- *Hodges v. Bon Secours Health Sys., Inc.,* No. 16-1079 (D. Md.);

- *Jewett v. Franciscan All., Inc.,* No. 16-4589 (N.D. Ill.);

- *Smith v. OSF HealthCare Sys*., No. 16-467 (S.D. Ill.);

- *In re Mercy Health ERISA Litig.*, No. 16-441 (S.D. Ohio);

- *Sanzone v. Mercy Health*, No. 16-923 (E.D. Mo.);

- *Garbaccio v. St. Joseph's Hosp. & Med. Ctr. & Subsidiaries*, No. 16-2740 (D.N.J.);

- *Butler v. Holy Cross Hosp.*, No. 16-5907 (N.D. Ill.);

- *In re: Wheaton Franciscan ERISA Litig.***,** No. 16-6782 (N.D. Ill.)

- *Holcomb v. Hosp. Sisters Health Sys.,* No. 16-3282 (C.D. Ill.).

- *Lann v. Trinity Health Corp.*, No 8:14-cv-2237 (D. Md).

39. In addition to the firm's specific experience litigating Church Plan cases, Cohen Milstein has many years of experience litigating ERISA and non-ERISA class actions, and has negotiated numerous class settlements that have been approved by courts throughout the country.

40. Cohen Milstein has extensive class action experience in federal courts throughout the country. For example, Cohen Milstein has been Lead or Co-Lead Counsel in the following

14

cases: *Redington v. Goodyear Tire & Rubber Co.*, No. 07-1999 (N.D. Ohio); *Chesemore v. All. Holdings, Inc.*, No. 09-413 (W.D. Wis.); *In re Merrill Lynch & Co., Inc. Sec., Derivative & "ERISA" Litig.*, No. 07-10268 (S.D.N.Y.); *Hans v. Tharaldson*, No. 05-115 (D.N.D.); *Beam v. HSBC Bank USA*, No. 02-682 (W.D.N.Y.); *Hargrave v. TXU Corp.*, No. 02-2573 (N.D. Tex.); *Dynegy, Inc. ERISA Litig.*, No. 02-3076 (S.D. Tex.); *Wagener v. SBC Pension Benefit Plan – Nonbargained Program*, No. 03-769 (D.D.C.); *Barnes v. AT&T Pension Benefit Plan – Nonbargained Program*, No. 08-4058 (N.D. Cal.); *Mehling v. N.Y. Life Ins. Co.*, No. 99-5417 (E.D. Pa.); *Zhu v. Fujitsu Grp. 401(k) Plan*, No. 03-1148 (N.D. Cal.); *Simpson v. Fireman's Fund Ins. Co.*, No. 05-225 (N.D. Cal.); *Tuten v. United Airlines, Inc.*, No. 12-1561 (D. Colo.); *Slipchenko v. Brunel Energy, Inc.*, No. 11-1465 (S.D. Tex.).  Cohen Milstein has also been appointed to leadership roles in *In re Merck & Co., Inc. Sec., Derivative & "ERISA" Litig.*, No. 05-2369 (D.N.J.) (member of the Merck Lead Counsel Committee); *In re Marsh ERISA Litig.*, No. 04-8157 (S.D.N.Y.) (member of the Executive Committee); and the instant case.

41.     A true and correct copy of the firm resume detailing the experience of Cohen Milstein in ERISA cases and Church Plan cases is attached hereto as Exhibit A.

42.     Having prosecuted numerous ERISA cases, Cohen Milstein possesses extensive litigation experience.  They fully support this Settlement and have concluded, based upon their experience and the facts of this case, that it is fair, reasonable, and adequate.

### III.     REQUEST FOR ATTORNEYS' FEES AND EXPENSES

43.     As noted above, pursuant to § 7.1.4 of the Settlement Agreement, Defendants have agreed to pay up to $3,500,000 million for attorneys' fees and expenses and potential class representative incentive awards to the Named Plaintiffs, subject to Court approval.

44.     When measured against the readily-ascertainable monetary value of the Settlement ($98,300,000), the requested attorneys' fees, expenses, and incentive awards

represent just over 3.5% of the relief obtained.  More importantly, this does not take into account

the significant non-monetary relief provided by the Settlement, such as equitable relief for the

Settlement Class.  Thus, the requested amount is fair and reasonable, and far below fees typically

awarded in Fourth Circuit courts.  *See Fangman v. Genuine Title, LLC,* No. 14-0081, 2017 WL

86010, at *3 (D. Md. Jan. 10, 2017) (Bennett, J.) (awarding 25% of the common fund as

attorneys' fees); *Boyd v. Coventry Health Care Inc.,* 299 F.R.D. 451, 462, 465 (D. Md. 2014)

(awarding approximately 28% of the common fund as attorneys' fees).

45.     Moreover, the firms seek only a modest 1.81 multiplier on their lodestar.  This

multiplier is justified given the time and labor required to prosecute this action; the novelty and

difficulty of the questions involved; the requisite legal skill; the preclusion of other employment

during the pendency of this case; the customary fees charged; the contingent nature of this case;

the reasonableness of the hourly rates billed; the experience and ability of the attorneys involved;

and the excellent results obtained for the Settlement Class.

**A.     <u>The Time and Labor Devoted to this Case by the Firms was Reasonable.</u>**

46.     To date, Cohen Milstein has expended a total of 2,349.75 attorney and

professional hours to develop, investigate, and prosecute this action.  Cohen Milstein had no

guarantee of payment for the hours spent litigating this case.

47.     Cohen Milstein kept files contemporaneously documenting all time spent

developing, investigating, and prosecuting the claims in this action.  These time and expense

reports are summarized herein and attached as Ex. B hereto.

48.     The 3,265.75 hours that all the firms collectively expended on these cases were

reasonably spent, especially given the high-stakes, high-risk nature of this litigation and the

excellent results obtained.  At the firms' respective hourly rates, which are comparable to those

of other class action attorneys, this amounts to a lodestar of $1,898,930.50.  The total requested

fee of $3,500,000 is inclusive of unreimbursed litigation costs totaling $35,179.71, plus the requested awards for Plaintiffs in the amount of $30,000 total. After reimbursement of expenses and awards for Plaintiffs, the requested attorneys' fees total $3,434,820.29 and amount to a modest 1.81 multiplier on the combined lodestar of $1,898,930.50.

49.     Work was allocated to maximize efficiency. Class Counsel carefully assigned work to minimize the fees in this case; thus, senior attorneys did not do the work that could be accomplished by more junior attorneys, and attorneys did not do the work that could be completed by paralegals. Class Counsel assigned tasks depending on a number of considerations, with the goal of minimizing duplication of effort. If Class Counsel had not been stringent in these efforts, the number of hours devoted to the case would have been much higher.

50.     The hours expended on this case are reasonable in light of the complexity of the work performed and the results obtained. All of Class Counsel's efforts were conducted efficiently and with cost-savings in mind. Because Class Counsel was working on a contingency fee basis, they had an incentive to do whatever they could to flatten the learning curve in these cases, and to likewise take significant precautions to avoid duplication of efforts. Class Counsel also aimed to prevent unauthorized work. Work was assigned to lawyers in areas in which they had experience, and where professionally feasible, work was assigned to associates and paralegals with lower billing rates, to provide quality work at the lowest cost. Class Counsel's extensive efforts toward developing, prosecuting, and eventually settling this action are detailed in Sections I(A) and (B) above.

51.     Presenting an ERISA case of this type on the merits is a massive undertaking, with substantial risks, expense, and delay. Defendants have forcefully defended their actions with respect to the Plans to date, and there is no reason to believe they would not continue to do

17

so through trial and on appeal if necessary.  Their counsel, Groom Law Group, Chartered, is highly experienced in defending complex ERISA class actions.  They presented a formidable opposition, which further required sufficient devotion of time and resources to this case.

52.     Class Counsel has served in leadership positions in the past, and the hours spent on this case are consistent with Class Counsel's experience in those cases.

53.     The schedule attached as Ex. B is a summary of time spent by Cohen Milstein attorneys and other professional support staff and the lodestar calculation based on the firm's current billing rates from the inception of the case through October 6, 2017.  For personnel who are no longer employed by the firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by Cohen Milstein.  The hourly rates charged by Cohen Milstein in this case are prevailing rates in the community, have been approved in many judicial settlement hearings, and are consistent with rates approved in this Circuit and others in many recent class action cases.

54.     If these hours had been billed on a "straight" hourly basis (*i.e.*, no contingency and no risk of non-payment), the lodestar (hours times current billing rates) for the professional time incurred by Cohen Milstein would be $1,260,087.50.  On a firm-by-firm basis, the lodestar calculations are as follows:

| *Hodges v. BSHSI* | Hours | Lodestar |
|---|---|---|
| **Cohen Milstein Sellers & Toll, PLLC** | | |
| Attorneys | 1,982.50 | $1,157,678.75 |
| Professionals | 367.25 | $102,408.75 |
| Totals | 2,349.75 | $1,260,087.50 |
| | | |
| **Keller Rohrback L.L.P.** | | |
| Attorneys | 538.90 | $444,707.50 |
| Professionals | 76.40 | $20,426.50 |
| Totals | 615.30 | $465,134.00 |
| | | |

18

| Kessler Topaz Meltzer & Check, LLP | | |
|---|---:|---:|
| Attorneys | 170.20 | $89,162.50 |
| Professionals | 22.50 | $5,625.00 |
| Totals | 192.70 | $94,787.50 |
| | | |
| **Izard, Kindall & Raabe, LLP** | 108 | $78,921.50 |
| Attorneys | 0 | $0 |
| Professionals | 108 | $78,921.50 |
| Totals | | |
| | | |
| **TOTAL:** | **3,265.75** | **$1,898,930.50** |

### B.   Cohen Milstein's Hourly Rates Are Reasonable.

55.     The lodestar figures provided above are based on the given firm's current billing

rates and contemporaneous time records regularly prepared and maintained by our respective

firms.  Expense items are billed separately and such charges are not duplicated in a firm's billing

rates.

56.     Cohen Milstein's rates range from $280 to $880 for 2,349.75 hours performed.

Keller Rohrback's rates range from $260 to $940 for 615.30 hours performed; Kessler Topaz's

rates range from $250 to $850 for 192.70 hours performed; and Izard Kindall's rates range from

$350 to $925 for 108 hours performed. *See* Ex. B attached hereto; Ex. A to the Sarko Decl.;

Gyandoh Decl. ¶ 4; Kindall Decl. ¶ 4. The lower end represents rates charged by support staff

such as paralegals, while the higher end represents rates charged by the senior partners.

57.     These rates are reasonable given the size and complexity of the case, which, as

mentioned previously, involved nuanced factual and legal issues against the backdrop of a fast-

developing and hotly disputed area of the law.

58.     The rates are justified when considering the host of risks present to Plaintiffs in

this contingent litigation.  While this case was progressing, the threshold issue of whether a

Church Plan must be established by a church reached the Supreme Court.  Oral argument on this

issue was held on March 27, 2017, and settlement negotiations in this case were held just over two weeks after the argument.  Plaintiffs were well aware of the risks of an adverse decision by the Supreme Court throughout the pendency of this case.  Additionally, Plaintiffs recognize that post-*Advocate*, additional factual and legal issues remain in this litigation, including how the Supreme Court's ruling will apply to the specific facts of this case; class certification; liability; and damages.

59.     Cohen Milstein's rates have been approved in other cases, including two other recent Church Plan cases in which they reported hourly rates at amounts comparable to those sought herein. *See* Plaintiffs' Motion for Attorney Fees and Expenses, and Incentive Fees to Named Plaintiffs, *Lann v. Trinity Health Corporation* , No. 8:14-cv-2237,  (D. Md. April 17, 2017),  ECF No. 103-1 (seeking fees at identical attorney rates to this action); Order Finally Approving Class Settlement, *Trinity*, No. 8:14-cv-2237 (D. Md. May 31, 2017), ECF No. 11, attached hereto as Ex. C (approving fees at identical attorney rates to this action); Pls' Motion for Attorney Fees and Expenses, and Incentive Fees to Named Pls., *Griffith v. Providence Health & Services,* No. 14-01720 (W.D. Wash. Feb. 3, 2017), ECF No. 57 (seeking fees at identical attorney rates to this action); Order Finally Approving Class Settlement ¶ 10, *Griffith v. Providence Health & Services*, No. 14-cv-1720 (W.D. Wash. Mar. 21, 2017), ECF No. 69, attached hereto as Ex. D  (approving fees at identical attorney rates to this action); *see also* Pl.'s Mot. for Awards of Att'ys' Fees, Expenses & Incentive Fee, *Overall v. Ascension Health,* No. 13-11396 (E.D. Mich. Aug. 17, 2015), ECF No. 97; Order and Final Judgment ¶ 8, *Overall v. Ascension Health*, No. 13-11396 (E.D. Mich. Sept. 17, 2015) ECF No. 115, attached hereto as Ex. E.

2282428.1

60.     District courts have granted final approval and awarded fees to Cohen Milstein based on the firm's then-current rates in several ERISA cases.  *See, e.g.*, *Redington v. Goodyear Tire & Rubber Co.*, No. 07-1999 (N.D. Ohio Sept. 22, 2008), ECF Nos. 109-1, 113 (awarding then-current attorneys' rates between $575 and $625); *Chesemore v. All. Holdings, Inc.*, No. 09-413, 2014 WL 4415919, at *6 (W.D. Wis. Sept. 5, 2014) (awarding then-current attorneys' rates between $395 and $895); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003 (D. Colo. 2014) (awarding then-current attorneys' rates between $395 and $570); *In re Beacon Assocs. Litig.*, No. 09-777 (S.D.N.Y. May 29, 2013), ECF No. 485 (awarding attorneys' rates between $295 and $895); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 08-8093 (S.D.N.Y. May 27, 2015), ECF Nos. 271, 273-4B, 287 (awarding attorneys' rates between $210 and $915); *N.J. Carpenters Health Fund v. RALI Series 2006-Q01 Trust*, No. 08-8781 (S.D.N.Y. July 31, 2015), ECF Nos. 347, 353 (awarding attorneys' rates between $240 and $915); *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 12-5125 (C.D. Cal. Dec. 5, 2013), ECF Nos. 182, 320 (awarding attorney's rates between $330 to $835); *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 09-2063 (D. Colo. July 31, 2014), ECF Nos. 505, 527 (awarding attorneys' rates between $250 and $895).

61.     Additionally, Cohen Milstein's rates are on a par with, or even below, plaintiffs' firms litigating similar large cases. For example, on May 27, 2015, the Southern District of New York approved fees for attorneys at Bernstein Litowitz Berger & Grossmann ranging from $340 to $975 per hour.[7]  And, as a further example, on March 3, 2015, the Southern District of New York approved fees for attorneys at Labaton Sucharow LLP and Berman DeValerio ranging

---

[7] *See* Stickney Decl. at Ex. 1, *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, No. 08-08093 (S.D.N.Y), ECF No. 273-6.

from $300 to $975 and $300 to $835 per hour, respectively.[8]  And on June 4, 2014, the District

of West Virginia approved fees for attorneys at Labaton Sucharow LLP and Robbins Geller

Rudman & Dowd LLP ranging from $275 to $975 per hour.[9]

      62.    Cohen Milstein's rates are also below those of defense firms that are defending

other Church Plan cases. The *National Law Journal*'s annual survey of law firm billing rates in

2014 shows that the 2014 billing rates for attorneys at Proskauer Rose LLP, defense counsel in

several Church Plan cases, ranged from $295 to $950.[10]  Similarly, the 2014 billing rates for

attorneys at Arnold & Porter LLP, defense counsel in the *Dignity* Church Plan case, ranged from

$345 to $950.[11]

## IV.    COHEN MILSTEIN'S EXPENSES

      63.    Class Counsel has advanced significant unreimbursed expenses in these Actions.

      64.    Class Counsel has advanced or incurred $20,142.10 in expenses to date.  *See* Ex.

B (summaries of Cohen Milstein fees and expenses).[12] The expenses incurred in developing and

---

[8] *See* Tubbs Decl. at Ex. A & DeValerio Decl. at Ex. A, *In re Fannie Mae 2008 Sec. Litig.*, No. 08-7831 (S.D.N.Y.), ECF Nos.  542-9 & 542-10.

[9] *See* Bernstein Decl. at Ex. B & Reise Decl. at Ex. B, *In re Massey Energy Co. Sec. Litig.*, No. 10-00689 (S.D. W.Va.), ECF Nos. 197-7 & 197-8.

[10] *See Billing Rates Across the Country: The National Law Journal's Annual Survey of Law Firm Billing Rates for Partners & Associates*, Nat'l L. J. (Jan. 13, 2014), http://www.nationallawjournal.com/id=1202636785489/ Billing-Rates-Across-the-Country?slreturn=20150704133227 (last accessed Oct. 13, 2017).

[11] *See Billing Rates Across the Country: The National Law Journal's Annual Survey of Law Firm Billing Rates for Partners & Associates*, Nat'l L. J. (Jan. 13, 2014), http://www.nationallawjournal.com/id=1202636785489/ Billing-Rates-Across-the-Country?slreturn=20150704133227 (last accessed Oct. 13, 2017).

[12] The expenses incurred prosecuting these complex class actions include filing fees; travel expenses, court appearances and mediation; copying, delivery and telecommunications charges; computer legal research charges; mediator's charges; and similar litigation expenses. These expenses are typically billed by attorneys to paying clients, and are calculated based on the actual expenses of these services in the markets in which they have been provided. Cohen Milstein maintains appropriate back-up documentation for each expense.

22

prosecuting this case are commercially reasonable and are reflected on the books and records of each firm. These books and records are prepared from expense vouchers, check records, and other source materials and represent an accurate recordation of the expenses incurred.

65.    The categories of expenses for which Class Counsel seek reimbursement are the type of expenses routinely charged to hourly clients and should therefore be reimbursed here. These costs included, *inter alia*: filing fees; travel expenses, court appearances and mediation; copying, delivery and telecommunications charges; computer legal research charges; mediator's charges; and similar litigation expenses. These expenses are typically billed by attorneys to paying clients, and are calculated based on the actual expenses of these services in the markets in which they have been provided. Counsel maintains appropriate back-up documentation for each expense. These expenses incurred were necessary to secure the resolution of this litigation.

66.    On a firm-by-firm basis, the expenses incurred are as follows:

| Firm | Expenses |
| --- | --- |
| Cohen Milstein Sellers & Toll, PLLC | $20,142.10 |
| Keller Rohrback L.L.P | $13,591.41 |
| Kessler Topaz Meltzer & Check | $1,324.70 |
| Izard, Kindall & Raabe, LLP | $121.50 |
| **TOTAL** | **$35,179.71** |

67.    Summaries of each firms' expenses are available at Ex. B to this declaration, Ex. A to the Sarko Decl., Gyandoh Decl. ¶ 5, and Kindall Decl. ¶ 5.

68.    These expenses were advanced with no guarantee of recovery. As a result, Cohen Milstein had a strong incentive to keep costs to a reasonable level and did so.

## V.    INCENTIVE AWARDS FOR THE NAMED PLAINTIFFS

69.    Class Counsel also wishes to note the considerable efforts made on behalf of the Class by the three Named Plaintiffs— Arlene Hodges, Carolyn Miller, and Gary Brown.

23

70.    The Named Plaintiffs came forward to file a Complaint in this action, and thereafter remained in frequent contact with Class Counsel.  The Named Plaintiffs collected numerous documents relating to their employment at BSHSI and their participation in the Plans; reviewed drafts of the Complaints and approved the filing of the final version; stayed abreast of the pleadings, motion to dismiss, and settlement negotiations; monitored developments in the other Church Plan cases pending in the courts of appeal and the Supreme Court; and were actively involved in the mediation and ultimate settlement of this litigation.  The Named Plaintiffs communicated with Class Counsel and the other Plaintiffs' counsel throughout this lawsuit.  They contributed time that could otherwise have been devoted to work and family obligations, and did so in order to help the members of the Settlement Class achieve significant relief—a total of $98 million in contributions to the Plans, and a $300,000 total payment to Group B class members who left covered service under the Bon Secours Hampton Roads Plan after completing at least three but less than five years of vesting services and who, as a result, allegedly forfeited a benefit accrued under a cash balance or pension equity formula; and significant other, non-monetary relief.

71.    Class Counsel accordingly asks the Court to recognize their efforts by awarding incentive awards to the Named Plaintiffs in the amount of $10,000 each.

72.    The Class Notice sent to the members of the Settlement Class disclosed that Class Counsel would seek incentive awards for these Plaintiffs, payable by Defendants from the additional monetary contribution described in § 7.1.5 of the Settlement Agreement.  The incentive awards to the Named Plaintiffs, if awarded, will not reduce the Class Settlement Amount and will be paid separate and apart from that relief.  To date, no objections to these awards have been received.

73.     Class Counsel believes that payment of incentive awards to these Plaintiffs is justified in this case, and that the amounts are fair and reasonable in light of the benefits that Plaintiffs helped achieve for the Settlement Class.

## VI.     CONCLUSION

74.     For the reasons discussed herein, Class Counsel has concluded that the Settlement is a fair, reasonable, and adequate resolution of the claims against Defendants in this hard-fought ERISA class action.  The requested fees, expenses, and class representative incentive awards to the Named Plaintiffs are warranted as well.  Thus, Named Plaintiffs and Class Counsel respectfully request that the Court grant their Unopposed Motion for Final Approval of Settlement Agreement and Certification of Settlement Class and approve attorneys' fees and expenses, grant incentive awards to the Named Plaintiffs, and enter the final order and judgment in its entirety.

75.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13th day of October, 2017.

COHEN MILSTEIN SELLERS & TOLL, PLLC

By:  s/ Karen Handorf
    Karen Handorf, Pro Hac Vice
    1100 New York Avenue, N.W.
    Suite 500, West Tower
    Washington, D.C.  20005
    Tel: (202) 408-4600
    Fax: (202) 408-4699
    Email: khandorf@cohenmilstein.com

2282428.1