# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (BALTIMORE DIVISION)

| | |
|---|---|
| ARLENE HODGES, et al.       ) | |
|            ) | |
|        Plaintiffs,       ) | |
|            ) | |
|     v.           ) | |
|            ) | |
| BON SECOURS HEALTH SYSTEM, INC.,     ) | Civil No. 1:16-cv-01079-RDB |
| et al.,            ) | |
|        Defendants.      ) | |
|            ) | |
|            ) | |
|            ) | |

## DECLARATION OF ELIZABETH DEMKIN
## FOR UNITED FORMS FINISHING CORPORATION

Pursuant to section 1746 of Title 28 of the United States Code, I, Elizabeth Demkin, declare as follows:

1.      I am the President of United Forms Finishing Corporation ("UFF"). I am competent to testify to the facts stated below.

2.      I submit this Declaration in connection with the class action settlement proceedings related to *Hodges v. Bon Secours Health System, Inc.*, Case No. 1:16-cv-01079, pending in the United States District Court for the District of Maryland (the "Action"), at the request of Counsel for the Defendants.

3.      This Declaration is based upon my personal knowledge and upon information provided by my associates and staff.

4.      UFF is a vendor that provides certain mailing services to Bon Secours Health System, Inc. ("BSHSI") with respect to certain of its employee benefit plans. UFF was engaged by the Defendants to administer the distribution of class notices to members of the settlement

class regarding the settlement of the Action (the "Settlement"), including printing and mailing the Notice of Proposed Settlement of ERISA Class Action Litigation, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement of Expenses (the "Class Notice").

5.   On or about August 28, 2017, BSHSI provided UFF with the Court-approved final Class Notice, which Defendants' Counsel formatted for printing and mailing.

6.   In accordance with the Court's Order preliminarily approving settlement (Dkt. 107 at 5-6) (the "Preliminary Order"), Defendants provided UFF with a data file containing the last known addresses and name on file for the class members for the finalized mailing list.  On September 8, 2017, Class Notices were sent to the last known address of each of the 27,410 Group A class members.  The 530 Group B class members were also sent Class Notices on that day, long with an additional notice informing them of their membership in Group B. Copies of the Class Notice and the Group B notice are attached as Exhibit 1.  In accordance with the Preliminary Order, the Class Notice advised class members that, on or before October 31, 2017, they could submit to Plaintiffs' counsel, Defendants' counsel, and the Court an objection and/or a notice of intention to appear at the Final Fairness Hearing.

7.   As of October 12, 2017, 1,905 (one thousand nine hundred five) Class Notices were returned as undeliverable.

8.   The total cost for the administration of this aspect of the Settlement is estimated to be $ 24,720.13.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 12, 2017.

Elizabeth Demkin
*President, UFF Corp.*

2

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (BALTIMORE DIVISION)

| | |
|---|---|
| ARLENE HODGES, CAROLYN MILLER ) <br> and GARY T. BROWN, on behalf of ) <br> themselves, individually, and on behalf of ) <br> the Bon Secours Plans, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BON SECOURS HEALTH SYSTEM, ) <br> INC., BON SECOURS, INC., The ) <br> BENEFIT PLAN ADMINISTRATIVE ) <br> COMMITTEE, JOHN and JANE DOES 1- ) <br> 20, members of the Benefit Plan ) <br> Administrative Committee, each an ) <br> individual, and JOHN and JANE DOES 21- ) <br> 40, each an individual, ) <br> ) <br> Defendants. ) | Civil No. 1:16-cv-01079-RDB |

**NOTICE OF PROPOSED SETTLEMENT OF ERISA CLASS ACTION LITIGATION,
SETTLEMENT FAIRNESS HEARING, AND MOTION FOR ATTORNEYS' FEES
<u>AND REIMBURSEMENT OF EXPENSES</u>**

This notice ("Notice") advises you of the Class Action Settlement Agreement (the "Settlement") of the class action lawsuit, *Hodges v. Bon Secours Health System, Inc.* In this lawsuit, the Plaintiffs allege that the Defendants did not comply with certain provisions of the Employee Retirement Income Security Act ("ERISA") with respect to certain defined benefit pension plans sponsored by Bon Secours Health System, Inc. You are receiving this Notice because you may be a past or present participant, or a beneficiary of a participant, in one of those plans.

**PLEASE READ THIS NOTICE CAREFULLY.
A FEDERAL COURT AUTHORIZED THIS NOTICE.
THIS IS NOT A SOLICITATION.
YOU HAVE NOT BEEN SUED.**

As described in more detail below, the case concerns allegations that Defendants incorrectly operated the Plans as ERISA-exempt "Church Plans" and, in so doing, failed to comply with

1

certain requirements of ERISA.  Defendants maintain that the plans have been properly operated as Church Plans exempt from coverage under ERISA and, therefore, deny all allegations of wrongdoing.  The plans at issue are the following defined benefit pension plans: Bon Secours Health System, Inc. Frozen Pension Plan, Bon Secours Kentucky Health System, Inc. Pension Plan, Bon Secours New York Health System Pension Plan, Employees' Retirement Plan of Bon Secours Baltimore Health Corporation, Employees' Retirement Plan of Bon Secours St. Mary's Hospital, Memorial Regional Medical Center Pension Plan, and Retirement Plan of Bon Secours Hampton Roads (the "Plans").

The Effective Date of the Settlement is thirty (30) days after the Court enters its Final Order approving the settlement and the time to appeal has expired.  The Settlement provides a cash contribution of $98 million (ninety eight million dollars) to the Plans, over a seven year period, to settle the claims against Defendants.  Because the Plans are defined benefit pension plans and not defined contribution plans with individual accounts, like a 403(b) plan or 401(k) plan, ***the cash amount will be contributed to the Plans as a whole***, *rather than to individual Plan participants and beneficiaries*.  **Your pension benefit will not increase as a result of the Settlement.**  Additionally, the Settlement provides significant non-monetary equitable consideration, in that current participants in the Plans will receive certain ERISA-like financial and administrative protections.

The Settlement also provides a $300,000 payment in the aggregate to the 530 former participants in the Retirement Plan of Bon Secours Hampton Roads ("Hampton Roads Plan") who terminated service after January 1, 2008, having completing at least three, but fewer than five, years of vesting service with a positive account balance as of January 1, 2016; this payment will be made to those in **Group B** on a proportional basis dependent on the value of each individual's cash balance account as of January 1, 2016 (as described below).

**The Settlement resolves all claims against Defendants and applies to all past and present, vested and non-vested, participants in the Plans and their beneficiaries.  The Settlement provides specific benefits to two groups of people, summarized below. These groups do not overlap.  If you are entitled to benefits under the Settlement, you can only be in one of the groups.**

---

**Group A**
**Current Participants and Beneficiaries in the Plans**

There are approximately 23,355 current participants in the Plans, which includes active participants and inactive participants with deferred vested benefits in the Plans.  These participants constitute Group A.  **The Plans will receive a total cash contribution of $98,000,000 ($98 million), payable over seven years.**  The cash contributions will benefit the current participants in Group A by making their retirement benefits more secure.

The contributions will be distributed among the seven Plans proportionally depending on the relative funded status of each Plan.  Because the Plans are defined benefit pension plans, the aggregate total of the $98 million cash amount will be contributed to the Plans as a whole and

---

2

will not increase any participant's accrued pension benefit. ***Your pension benefit will not increase as a result of this Settlement.*** Rather, the $98 million contribution will be used to pay retirement benefits to the Plans' participants and beneficiaries that are or will become eligible to receive benefits according to the terms of the Plans, along with Plan expenses. Therefore, by improving the funded status of the Plans, ***the Settlement increases retirement security*** for current participants in Group A. The $98 million figure represents the collective amount of the Plans' underfunding on an ERISA basis at the time the Settlement was reached. The Settlement also provides significant financial and administrative protections through August 31, 2025, such as a guarantee of benefits owed to participants under the terms of the Plans, an anti-cutback provision, and requirements regarding information disclosure to participants in the Plans. These non-monetary protections are described in greater detail in Section 3 of this Notice, as well as in Sections 7.1.1 and 8 of the Settlement Agreement, available at http://www.cohenmilstein.com/bon-secours-settlement.

---

**Group B**
**Former Participants in the Hampton Roads Plan Who Were Credited with More Than Three Years of Vesting Service, But Fewer Than Five Years of Vesting Service under the Plan's Terms**

The Hampton Roads Plan is the only Plan that uses "a cash balance formula" and requires that a participant have *five* years of "vesting service" in order to be 100% vested in their benefits. Since January 1, 2008, ERISA has required that cash balance benefits typically must be 100% vested after *three* years of vesting service (one year of vesting service is 1,000 hours within a given calendar year). Individuals in Group B left employment after that date with more than 3 years of vesting service, but fewer than 5 years of vesting service, with a positive account balance as of January 1, 2016, and thus they did not become fully vested in their cash balance benefits according to the terms of this Plan.

As consideration for the release of this claim, **Defendants will pay $300,000 in total to the members of Group B.** The $300,000 payment will be distributed to Group B members on a proportional basis dependent on the value of each individual's cash balance account as of January 1, 2016. This payment will be made within thirty days of the Effective Date of the Settlement. For more details about Group B, see Section 3 of this Notice, as well as Section 7.1.2 of the Settlement Agreement, available at http://www.cohenmilstein.com/bon-secours-settlement.

If you are in Group B, you received along with this Notice a letter indicating that you are in Group B.

---

Some members of the class will not receive any benefits under the Settlement because they are past participants who either: (i) did not vest in their Plan's benefits under such Plan's terms and who are not members of Group B; or (ii) elected and received a lump sum distribution of their full benefits due under the terms of the Plans. Because these individuals are no longer

participants in the Plans, they will not benefit from the contributions Bon Secours will make to the Plans or from the financial and administrative protections required by the Settlement, nor will they receive any individual monetary payments. Such former participants are receiving this Notice because they are members of the Settlement Class.

The Court in charge of the case still has to decide whether to approve the Settlement. The payments and other settlement terms described above will be made only if the Court approves the Settlement and that approval is upheld if there are any appeals. This process is explained in greater detail below.

Additionally, the Parties acknowledge that a ruling on ERISA's church plan exemption by a court of law or the Internal Revenue Service ("IRS"), or action by the United States Congress or the Roman Catholic Church, is possible in the future. Mindful of these possibilities, Plaintiffs and Class Counsel sought to best protect the Settlement Class by allowing the Class to get the benefit of certain potential developments in the litigation landscape which would positively impact the Class's claims. These benefits are reflected in the release provision of the Settlement Agreement, which contains a series of specific carve outs that would be triggered by any one of the five possible contingencies, and would allow class members to pursue  claims for relief arising under ERISA with respect to any event occurring after:

- the IRS issues a written ruling that the Bon Secours Plans do not qualify as Church Plans under the Internal Revenue Code;

- Bon Secours elects for the Plans to be covered by ERISA;

- A court of law issues a definitive ruling that the Bon Secours Plans are not Church Plans;

- the Roman Catholic Church disassociates itself from Bon Secours; or

- the U.S. Congress amends ERISA to eliminate the Church Plan exemption.

See Section 3.1.4 of the Settlement Agreement; see also Section 4 of this Notice.

However, even if one of the carve outs above is triggered, Group B still will receive the payment described above as consideration to release its claims. Once the payment is made to the Group B participants, it is theirs to keep.

See Answer to Question #4, "**What happens if a contingency 'carve out' is triggered?**" below.

Notably, Plaintiffs and the entire Settlement Class will be in the same or better position with respect to their prospective benefits under the Plans, regardless of whether the contingent carve outs are triggered. In other words, the contingencies could only positively impact the prospective rights of the Plaintiffs and the Settlement Class as the occurrence of any one of them may require church-affiliated hospitals that establish church plans to comply with ERISA.

4

**Your legal rights are affected if you are a member of the Settlement Class Whether or Not You Act. "Settlement Class" means:** All vested or non-vested present and past participants of the Plans (or their beneficiaries) as of the Effective Date of the Settlement.  See also Schedule A of the Settlement Agreement for the list of the Plans covered by the Settlement.

**Identification of Key Terms:** This Notice contains summary information with respect to the Settlement. The terms and conditions of the Settlement are set forth in the Class Action Settlement Agreement (the "Settlement Agreement"). The Settlement Agreement, and additional information with respect to this lawsuit and the Settlement, is available at http://www.cohenmilstein.com/bon-secours-settlement.

**Reasons for the Settlement:** The Settlement resolves all claims in the lawsuit against the Defendants regarding the Plans. The Settlement is not, and should not be construed as, an admission of any fault, liability, or wrongdoing whatsoever by any of the Defendants, who continue to deny any and all of the allegations of the Complaint. Plaintiffs and Class Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. Plaintiffs and Class Counsel believe that the Settlement provides substantial benefits to all participants in and beneficiaries under the Plans as compared to the risks, costs, and delays of proceeding with this litigation against Defendants.

**Identification of Claims Administrator and Class Counsel:** Any questions regarding which Group you belong to or your pension benefits in general should be directed the Bon Secours Health System, Inc. Human Resources Operations Center at (804) 887-7600 or (855) 336-7600 (toll free).

Class Counsel is available to respond to all other questions.  Please contact:  Mary Bortscheller, Jamie Bowers, or Scott M. Lempert, Cohen Milstein Sellers & Toll, PLLC, 1100 New York Avenue, N.W., Suite 500, West Tower, Washington, D.C. 20005. Class Counsel has established a toll-free number, 1-888-347-4600, if you have questions or comments. Class Counsel may also be contacted via email at bonsecourssettlement@cohenmilstein.com. Please do not contact the Court. Its personnel will not be able to answer your questions.

**PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS. YOU ARE NOT BEING SUED IN THIS MATTER. YOU DO NOT HAVE TO APPEAR IN COURT, AND YOU DO NOT HAVE TO HIRE AN ATTORNEY IN THIS CASE. IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU NEED NOT DO ANYTHING. IF YOU DISAPPROVE, YOU MAY OBJECT TO THE SETTLEMENT PURSUANT TO THE PROCEDURES DESCRIBED BELOW.**

| ACTIONS YOU MAY TAKE IN THE SETTLEMENT | |
|---|---|
| NO ACTION IS NECESSARY. | If you do not wish to object to the Settlement, you do not need to do anything. |
| YOU CAN OBJECT NO LATER THAN | If you wish to object to any part of the |

5

| **OCTOBER 31, 2017**. | Settlement, you can write to the Court and explain why you do not like the Settlement. |
| YOU CAN GO TO THE HEARING ON **NOVEMBER 28, 2017** BY FILING A NOTICE OF INTENTION TO APPEAR NO LATER THAN **NOVEMBER 5, 2017**. | If you have submitted a written objection to the Court, you can ask to speak in Court about the fairness of the Settlement. You may enter your appearance in Court through an attorney if you so desire. |

## WHAT THIS NOTICE CONTAINS

**Summary of Settlement** ....................................................................................**7**
**Basic Information**............................................................................................**9**
    1.   Why did I get this Notice package? ...............................................  9
    2.   How do I know whether I am part of the Settlement? ..................10
    3.   What does the Settlement provide?...............................................10
    4.   What happens if a contingency "carve out" is triggered? When does the Settlement Agreement terminate?.................................................11
    5.   What is the lawsuit about? What has happened so far? ..................12
    6.   Why is this case a class action? ...................................................12
    7.   Why is there a Settlement? ..........................................................12
    8.   How will the Settlement be distributed?.......................................13
    9.   What rights am I giving up in the Settlement? ..............................13
    10.  Can I exclude myself from the Settlement?...................................13

**The Lawyers Representing You** ..................................................................**13**
    11.  Do I have a lawyer in the case? ...................................................13
    12.  How will the lawyers be paid?......................................................14

**Objecting to the Settlement**........................................................................**14**
    13. How do I tell the Court if I don't like the Settlement? ......................14

**The Court's Fairness Hearing** ....................................................................**15**
    14.  When and where will the Court decide whether to approve the Settlement? .15
    15.  Do I have to come to the hearing? ...............................................16
    16.  May I speak at the hearing? .........................................................16

**If You Do Nothing** ......................................................................................**16**
    17.  What happens if I do nothing at all? ............................................16

**Getting More Information** ..........................................................................**17**
    18.  How do I get more information?...................................................17

The case was filed in federal district court in Maryland against Bon Secours Health System, Inc., and the various other defendants named in the complaint (collectively, the "Defendants").  The

**Questions? Visit http://www.cohenmilstein.com/bon-secours-settlement**
**DO NOT CALL THE COURT as they cannot answer your questions.**

Named Plaintiffs and Defendants collectively are referred to herein as the "Parties."

A copy of the Class Action Complaint ("Complaint") and other documents relevant to this Settlement are available at http://www.cohenmilstein.com/bon-secours-settlement.

## SUMMARY OF SETTLEMENT

The Settlement Class includes all vested or non-vested present and past participants and beneficiaries in the Plans as of the Effective date of Settlement. The Settlement provides specific monetary and non-monetary benefits to two separate, non-overlapping groups of class members—Groups A and B—as described in detail in Section 3 of this Notice and Sections 7 and 8 of the Settlement Agreement. You can only be in one group, based on your particular situation.

The Settlement requires that Bon Secours make a $98,000,000.00 cash contribution to the Plans. This payment will be made by annual contributions of $14,000,000.00 to the Plan for seven years.  Bon Secours may make these annual payments in a lump sum at any point during the year, or may split the annual payment into a number of payments throughout the year.  Bon Secours may also prepay all or part of these annual contributions at its discretion with no penalty.  The contributions will be distributed among the seven Plans proportionally depending on the relative funded status of each Plan.

Bon Secours also guarantees that, through August 31, 2025, the Plans' trust will have sufficient funds to pay the vested benefits owed to participants under the terms of the Plans as they come due.  Furthermore, the Settlement provides that no Plan amendment or termination may result in a reduction in a participant or beneficiary's accrued benefit for that time period.  The Settlement also provides that, in the event of a merger with or into another plan during that time, all participants and beneficiaries must receive the same (or greater) benefits as they enjoyed before the merger.   Additionally, the Settlement provides significant non-monetary equitable consideration. Through August 31, 2025, Plan participants will receive administrative protections comparable to those required by ERISA, including summary plan descriptions, summaries of any material modifications to the Plan, and claims procedures.  These payments and commitments benefit members of **Group A,** the current participants and beneficiaries under the Plans, including individuals who are currently receiving their benefits.

The Settlement also provides that, within thirty days of the Effective Date of the Settlement, Bon Secours will pay $300,000.00 total, on a proportional basis, to the 530 Nonvested Former Participants in the Hampton Roads Plan who left covered service under the Plan after completing at least 3, but fewer than 5, years of vesting service after January 1, 2008 with a positive account balance as of January 1, 2016.  This group is labeled **Group B.**

Certain class members will not benefit from the contributions Bon Secours will make to the Plans or from the financial and administrative protections required by the Settlement. These class members are all former participants in the Plans who have received the full benefits due to them (if any) under the terms of the Plans. Such class members include all former participants who

either: (i) did not vest in their respective Plan under the Plan's terms and who are not members of Group B; or (ii) elected and received a lump sum distribution of their benefits under the terms of their Plans.

As with any litigation, the Parties would face an uncertain outcome if the case were to continue. Continued litigation of this case against the Defendants may result in a judgment or verdict greater or less than the recovery under the Settlement Agreement, or in no recovery at all. Throughout the litigation, the Plaintiffs and Defendants have disagreed on both liability and damages. Defendants, among other things, (1) maintain that the Plans have been and continue to be properly administered as Church Plans under the appropriate Plans' terms and as defined in ERISA § 3(33), and are exempt from coverage under ERISA; therefore, they deny any and all liability to Plaintiffs, members of the Settlement Class and the Plans, and deny any and all allegations of wrongdoing; (2) maintain that all participants in and beneficiaries under the Plans have received and continue to receive all benefits they have been entitled to under the Plans; (3) maintain that the Plans have been and continue to be well funded; and (4) maintain that Bon Secours takes the administration of the Plans very seriously and has operated and continues to operate the Plans as Church Plans in the best interests of the Plans' participants and beneficiaries, consistent with Plan documents and the core values of Bon Secours as a Roman Catholic institution.

Named Plaintiffs, among other things, (1) have conducted an extensive investigation into the facts, circumstances, and legal issues associated with the allegations made in this case; (2) believe, based on the risks of litigation; the time necessary to achieve a complete resolution through litigation; the complexity of the claims set forth in the Complaint; and the benefit accruing to the Plans' participants and beneficiaries under the Settlement, that the Settlement will provide a benefit to the Settlement Class, and that, when that benefit is weighed against the risks of continuing the prosecution of the case, the Settlement represents a reasonable, fair, and adequate resolution of the claims of the Settlement Class; and (3) believe that the Settlement will provide the Settlement Class with the bulk of the protections they would have received if the case had been litigated to a conclusion and Named Plaintiffs had prevailed. The Named Plaintiffs note that the $98 million figure represents the collective amount of the Plans' underfunding on an ERISA basis at the time the Settlement was reached.

Defendants have denied, and continue to deny, the validity of any and all claims asserted in the Complaint.  The Settlement is not evidence of liability of any type.  Plaintiffs deny any and all theories of defense asserted in Defendants' Motion to Dismiss. Nevertheless, the Parties have taken into account the uncertainty and risks inherent in the litigation of the case, particularly their complex nature, and have concluded that it is desirable that the case be fully and finally settled on the terms and conditions set forth in the Settlement Agreement, solely to avoid further risk, cost, expense, and time associated with litigation.

Visit http://www.cohenmilstein.com/bon-secours-settlement if you have additional questions.

## BASIC INFORMATION

**1.     Why did I get this Notice package?**

Either you or someone in your family may have been a participant in or beneficiary of one of the Plans during the Class Period. The Court has directed that this Notice be sent to you because, as a potential member of the Settlement Class, you have a right to know about the proposed Settlement before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and all related objections and appeals are favorably resolved, the Defendants will provide specific monetary and non-monetary relief to the Class, as described in detail in Section 3 of this Notice and Sections 7 and 8 of the Settlement Agreement.  This includes the aggregate contribution of $98,000,000 over seven years to the Plans, as well as other specific monetary and non-monetary relief.

This Notice explains the case, the Settlement, and your legal rights. An additional purpose of this Notice is to inform you of a hearing (the "Fairness Hearing") to be held by the Court to consider the fairness, reasonableness, and adequacy of the proposed Settlement, and to consider the application of Class Counsel for their attorneys' fees and reimbursement of litigation expenses, as well as an application for Incentive Awards for the Plaintiffs.

The Fairness Hearing will be held at 4:00 p.m. on November 28, 2017 before the Honorable Richard D. Bennett in the United States District Court for the District of Maryland, Baltimore Division, 101 West Lombard Street, Baltimore, MD 21201, to determine:

(a)     Whether the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court;

(b)     Whether final judgment approving the Settlement Agreement should be entered;

(c)     Whether the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23;

(d)     Whether the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class;

(e)     Whether the requirements of the Class Action Fairness Act have been satisfied;

(f)     Whether to grant Incentive Awards to Named Plaintiffs, and, if so, the amount; and

(g)     Whether to award attorneys' fees and litigation expenses to counsel who represent members of the Settlement Class and, if so, the amounts.

9

The issuance of this Notice is not an expression of the Court's opinion on the merits of any claim in this case, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement, the payments by Defendants described above will be made after all related appeals, if any, are favorably resolved. It is always uncertain whether such appeals can be favorably resolved, and resolving them can take time, perhaps more than a year.

**2.     How do I know whether I am part of the Settlement?**

The Court has certified the Bon Secours case as a class action for settlement purposes only. You are a member of the Settlement Class if you are or were, on or before the date this Settlement becomes effective, a vested or non-vested participant in or beneficiary of the following defined benefit pension Plans maintained and/or sponsored by Bon Secours: (1) Bon Secours Health System, Inc. Frozen Pension Plan, (2) Bon Secours Kentucky Health System, Inc. Pension Plan, (3) Bon Secours New York Health System Pension Plan, (4) Employees' Retirement Plan of Bon Secours Baltimore Health Corporation, (5) Employees' Retirement Plan of Bon Secours St. Mary's Hospital, (6) Memorial Regional Medical Center Pension Plan, and (7) Retirement Plan of Bon Secours Hampton Roads.

**3.     What does the Settlement provide?**

The Settlement provides specific monetary and non-monetary benefits to two separate groups of class members—Groups A and B—as described in detail in Sections 7 and 8 of the Settlement Agreement. You can only be in one group, based on your particular situation.  The groups do not overlap.

**Group A Settlement Benefits.** Defendants will make an aggregate $98,000,000 contribution to the Plans over the course of seven years, with payments of $14 million each year. Bon Secours may make larger payments in any given year to reduce the contribution in following years.  See Settlement Agreement Section 7.1.1.  The contributions will be distributed among the seven Plans proportionally depending on the relative funded status of each Plan.  The $98 million figure represents the collective amount of the Plans' underfunding on an ERISA basis at the time the Settlement was reached.  Additionally, the Settlement provides significant non-monetary protections for participants in the Plans through August 31, 2025. During that time, the Plans will remain Church Plans exempt from ERISA, but Defendants will guarantee that the Plans will have sufficient funds to pay the accrued benefits payable to participants under the terms of the Plans. Defendants have made similar financial commitments with respect to the Plans should there be a plan termination or merger.  In addition, the Defendants have agreed that, until August 31, 2025, no amendment to a Plan shall decrease the accrued benefit of any participant in the Plans. The Settlement also includes equitable consideration, modeled after certain provisions of ERISA, concerning plan administration, summary plan descriptions, notices (pension benefits statements, current benefit values), and the Plans' claim review procedure. These payments, and the non-monetary terms of the Settlement, benefit the current participants in and beneficiaries under the Plans, including retirees. For more details, see Sections 7.1.1 and 8 of the Settlement Agreement.

**Questions? Visit http://www.cohenmilstein.com/bon-secours-settlement**
**DO NOT CALL THE COURT as they cannot answer your questions.**

**Group B Settlement Benefits.** Defendants will pay $300,000 to the 530 former participants in the Hampton Roads Plan who left covered service under the Plan after January 1, 2008, having completing at least 3 but less than 5 years of vesting service, and who had a positive account balance as of January 1, 2016. The $300,000 payment to Group B will be distributed on a pro rata basis, so that each member of Group B will receive a share of the payment that is proportional to the value of his or her cash balance account as of January 1, 2016. See Settlement Agreement Section 7.1.2. Defendants will make this payment within thirty days of the Effective Date of the Settlement Agreement. Payments returned as undeliverable will be paid back to the Hampton Roads Plan.

All of the monetary and non-monetary relief described above constitutes consideration for release of all claims against Defendants, subject to the carve outs described below.

Some members of the class will not receive any benefits under the Settlement because they are past participants who either: (i) did not vest in the Plans under the Plans' terms and are not members of Group B; or (ii) elected and received a lump sum distribution of their full benefits due under the terms of their Plans.

Additionally, Defendants have agreed to pay up to $3,500,000 to be used to fund Class Counsel's requested attorneys' fees, out of pocket expenses, and incentive awards to the Named Plaintiffs. The District Court has the sole discretion as to whether to award attorneys' fees, reimbursement of expenses, or incentive awards to the Named Plaintiffs and, if so, in what amounts up to $3,500,000. See Settlement Agreement Sections 7.1.4 and 7.1.5.

The above description of the operation of the Settlement is only a summary. The governing provisions are set forth in the Settlement Agreement, which is available at http://www.cohenmilstein.com/bon-secours-settlement.

### 4.    What happens if a contingency "carve out" is triggered?  When does the Settlement Agreement terminate?

The carve outs provided for in the Settlement Agreement serve to better protect the Settlement Class in the event that the Plans may no longer be exempt from ERISA under the Church Plan exemption.  This may happen in several different ways: (1) the IRS issues a ruling that the Plans are NOT Church Plans; (2) the Plan Sponsor elects to be governed by ERISA; (3) a court of law issues a definitive ruling that the Plans are not Church Plans; (4) the Roman Catholic Church disassociates itself from Bon Secours; or (5) an amendment to ERISA is enacted and becomes effective as a law of the United States eliminating the Church Plan exemption.  If any of these five situations occurs, the Settlement Agreement does not release any future claims that the Class would have arising under ERISA.

If any of the Bon Secours Plans become subject to ERISA during the duration of this Settlement Agreement, Defendants' obligations under the Settlement with respect to such Plan shall end.

**Questions? Visit http://www.cohenmilstein.com/bon-secours-settlement**
**DO NOT CALL THE COURT as they cannot answer your questions.**

**5.     What is the lawsuit about? What has happened so far?**

On April 11, 2016, a putative class action complaint was filed in the United States District Court for the District of Maryland against Bon Secours alleging violations of ERISA. The complaint alleged that Bon Secours denied the Plans' participants and beneficiaries the protections of ERISA by claiming that the Plans qualified as ERISA exempt "Church Plans." The complaint also alleged that the Plans sponsored by Bon Secours—a non-profit Catholic healthcare provider—did not qualify as ERISA-exempt Church Plans.   Plaintiffs filed a Consolidated Amended Class Action Complaint on October 6, 2016.

Defendants maintain that the Plans qualify as valid Church Plans exempt from the requirements of ERISA and deny all allegations of wrongdoing in the lawsuit.   On December 2, 2016, Defendants sought to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a plausible claim for relief.   In response, Plaintiffs filed a Second Amended Consolidated Class Action Complaint on January 13, 2017, which rendered Defendants' motion to dismiss moot.   The Parties agreed to file a motion requesting that the case be stayed, pending the outcome of three similar "Church Plan" cases in the Supreme Court, *Advocate Health Care Network v. Stapleton*, No. 16-74; *Saint Peter's v. Kaplan*, No. 16-86; *Dignity Health v. Rollins*, No. 16-258.   The Parties participated in mediation and filed a joint notice of settlement on April 12, 2017.   The Settlement is the product of intensive, arm's-length negotiations between Class Counsel and Defendants' Counsel, with the assistance of an experienced third-party mediator.

**6.     Why is this case a class action?**

In a class action, one or more plaintiffs, called "Named Plaintiffs," sue on behalf of people who have similar claims. In the Bon Secours case, the Named Plaintiffs are Arlene Hodges, Carolyn Miller, and Gary Brown.  All of the individuals on whose behalf the Named Plaintiffs in this case are suing are "Class members," and they are also referred to in this Notice as members of the Settlement Class. The Court resolves the issues for all Class members. The Honorable Richard D. Bennett, United States District Judge, is presiding over this case.

**7.     Why is there a Settlement?**

Under the proposed Settlement, the Court will not decide the merits of the case in favor of either the Plaintiffs or the Defendants. By agreeing to a Settlement, both the Plaintiffs and the Defendants avoid the costs, risks, and delays of litigating the Action.

This Settlement is the product of extensive arm's-length negotiations between Plaintiffs' Counsel and the Defendants' Counsel, including utilizing the services of an experienced mediator. Plaintiffs' Counsel believes that the proposed Settlement is fair, reasonable, and adequate, and in the best interest of the Class.

**8.      How will the Settlement be distributed?**

Members of the Settlement Class do not need to do anything with respect to the Settlement in this Action. After the Final Approval Order approving the Settlement becomes Final and non-appealable, Bon Secours will begin making annual $14 million contributions to the Plans, for a total of $98,000,000 in contributions in the aggregate over seven years.  Although the members of **Group A** will not receive any cash award or any change in the benefits due them under their Plans, these contributions will benefit members of Group A by improving the funding of their Plans and increasing their retirement security.

Bon Secours will cause checks to be issued to members of **Group B** at the time set forth in Section 3 of this Notice.

For more information about these payments, see Section 3.

**9.      What rights am I giving up in the Settlement?**

If the Settlement is approved, the Court will enter a judgment. Subject to the carve outs described in Section 4 of this Notice, this judgment will fully, finally, and forever release, relinquish, and discharge all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses, and costs arising out of the allegations of the Second Amended Consolidated Class Action Complaint that were brought or could have been brought as of the date of the Settlement Agreement by any member of the Settlement Class, including any current or prospective challenge to the "Church Plan" status of the Plans.  See Section 3 of the Settlement Agreement, available at http://www.cohenmilstein.com/bon-secours-settlement.

**10.     Can I exclude myself from the Settlement?**

You do not have the right to exclude yourself from the Settlement. For settlement purposes, the Class was certified under Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2) (non-opt-out class) because the Court determined the requirements of that rule were satisfied. Thus, it is not possible for any of the members of the Settlement Class to exclude themselves from the Settlement. As a member of the Settlement Class, you will be bound by any judgments or orders that are entered in the case for all claims that were or could have been asserted in the case against the Defendants or are otherwise included in the release under the Settlement.

Although members of the Settlement Class cannot opt out of the Settlement, they can object to the Settlement and ask the Court not to approve the Settlement.

## THE LAWYERS REPRESENTING YOU

**11.     Do I have a lawyer in the case?**

The law firm of Cohen Milstein Sellers & Toll, PLLC represents the Plaintiffs and the Settlement Class ("Class Counsel"). Other law firms also represented Plaintiffs at stages of the case. You

13

will not be charged by any lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 12.    How will the lawyers be paid?

At the Fairness Hearing, Class Counsel will apply for an award of attorneys' fees, expenses, and incentive awards to the Named Plaintiffs. Such application for attorneys' fees, expenses, and incentive awards will not exceed $3,500,000; this amount will be paid entirely by the Defendants. See Sections 7.1.4 and 7.1.5 of the Settlement Agreement. The attorneys' fees are separate from the $98,000,000 contribution to the Plans for the benefit of **Group A** and the payments to members of **Group B**—the attorneys' fees will not reduce these amounts.

To date, Class Counsel have not received any payment for their services in prosecuting this case on behalf of the Settlement Class, nor have Class Counsel been reimbursed for their out-of-pocket expenses. The fees requested by Class Counsel would compensate all of Plaintiffs' counsel for their efforts in achieving the Settlement for the benefit of the Settlement Class and for their risk in undertaking this representation on a contingency basis. The Court will determine the actual amount of the award.

## OBJECTING TO THE SETTLEMENT

## 13.    How do I tell the Court if I don't like the Settlement?

Any member of the Settlement Class who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, to any term of the Settlement Agreement, to the application for payment of attorneys' fees and expenses, or to the application for Incentive Awards for certain Plaintiffs, may file an "Objection" in writing. If you wish to file an Objection, the written Objection and supporting papers must: (1) clearly identify the case name and number "*Hodges v. Bon Secours Health System, Inc.*, Case No. 1:16-cv-1079-RDB; (2) be filed with the Court and postmarked and mailed to Class Counsel and Defendants' Counsel at the addresses below on or before twenty-eight (28) days before the Fairness Hearing; (3) set forth your full name, current address, and telephone number; (4) set forth a statement of the position you wish to assert, including the factual and legal grounds for the position; (5) set forth the names and a summary of testimony of any witnesses that you might want to call in connection with the Objection; (6) provide copies of all documents that you wish to submit in support of your position; (7) provide the name(s), address(es) and phone number(s) of any attorney(s) representing you; (8) state the name, court, and docket number of any class action litigation in which you and/or your attorney(s) has previously appeared as an objector or provided legal assistance with respect to an objection; and (9) include your signature.

The addresses for filing Objections with the Court and service on counsel are listed below. **Your written Objection must be filed with the Court, and mailed to the counsel listed below, postmarked (or sent via facsimile) by no later than October 31, 2017:**

**File with the Clerk of the Court:**

> Clerk of the Court
> United States District Court
> District of Maryland
> Baltimore Division
> 101 West Lombard Street
> Baltimore, MD 21201

**And, by the same date, serve copies of all such papers by mail and fax to each of the following:**

CLASS COUNSEL:

Jamie Bowers
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, N.W.
Suite 500
Washington, D.C. 20005
Fax: (202) 408-4699

DEFENDANTS' COUNSEL:

Lars Golumbic
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Fax:  (202) 639-4503

**UNLESS OTHERWISE ORDERED BY THE COURT, ANY MEMBER OF THE SETTLEMENT CLASS WHO DOES NOT OBJECT IN THE MANNER DESCRIBED HEREIN WILL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL BE FOREVER FORECLOSED FROM MAKING ANY OBJECTION TO THE PROPOSED SETTLEMENT AND THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS TO THE NAMED PLAINTIFFS.**

## THE COURT'S FAIRNESS HEARING

**14.     When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at 4:00 p.m. on November 28, 2017, at the United States District Court for the United States District Court, District of Maryland, Baltimore Division, 101 West Lombard Street, Baltimore, MD 21201.

15

**IF YOU DO NOT WISH TO OBJECT TO THE PROPOSED SETTLEMENT OR THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS TO THE PLAINTIFFS, <u>YOU DO NOT NEED TO ATTEND</u> THE FAIRNESS HEARING.**

At the hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the Fairness Hearing, the Court will decide whether to approve the Settlement. The Court will also rule on the motions for attorneys' fees and expenses and incentive awards to the Named Plaintiffs. We do not know how long these decisions will take.

### 15.    Do I have to come to the hearing?

No. Class Counsel will answer any questions Judge Bennett may have. You are welcome to come at your own expense. If you send an Objection, you do not have to come to Court to talk about it. As long as you mailed your written Objection on time, it will be before the Court when the Court considers whether to approve the Settlement as fair, reasonable, and adequate. At your own expense, you may also have your own lawyer attend the Fairness Hearing, but such attendance is not necessary.

### 16.    May I speak at the hearing?

If you are a member of the Settlement Class and you have filed a timely Objection, you may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter or other paper called a "Notice of Intention to Appear at Fairness Hearing in '*Hodges v. Bon Secours Health System, Inc.*, Case No. 1:16-cv-1079-RDB.'"  Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be served on the attorneys listed above, postmarked and sent via facsimile no later than November 5, 2017, and must be filed with the Clerk of the Court, postmarked no later than November 5,2017.

The Fairness Hearing may be delayed by the Court without further notice to the Class. If you wish to attend the Fairness Hearing, you should confirm the date and time with a member of Class Counsel.

### IF YOU DO NOTHING

### 17.    What happens if I do nothing at all?

If you do nothing and you are a Class member, you will participate in the Settlement as described above in this Notice if the Settlement is approved.

**Questions? Visit http://www.cohenmilstein.com/bon-secours-settlement**
**DO NOT CALL THE COURT as they cannot answer your questions.**

## GETTING MORE INFORMATION

**18.     How do I get more information?**

This Notice summarizes the proposed Settlement. Full details of the Settlement are set forth in the Settlement Agreement. You may obtain a copy of the Settlement Agreement by making a written request to a member of Class Counsel listed above under item 13. Copies of the Settlement Agreement, as well as the Preliminary Motion seeking preliminary approval of the Settlement Agreement, and the Preliminary Approval Order, may also be viewed at http://www.cohenmilstein.com/bon-secours-settlement.


DATED:        September 8, 2017                    By Order of the Court
                                                  Hon. Richard D. Bennett
                                                  United State District Judge

17

*Hodges et al. v. Bon Secours Health System, Inc., et al.*, 1:16-cv-01079-RDB
**Draft Letter to Group B Class Members:** Former Participants in the Hampton Roads Plan Who Were Credited with More than Three, but Fewer than Five, Years of Vesting Service under the Plan's Terms

Dear Class Member:

You are receiving this letter, along with the Notice of Proposed Settlement of ERISA Class Action Litigation, Settlement Fairness Hearing, and Motion for Attorneys' Fees and Reimbursement (hereinafter, "Notice"), because the records from your former employer indicate that **you qualify as a Class Member in Group B** of the proposed Settlement Class. As a member of Group B, you are not entitled to the benefits of Group A.

**Group B consists of 530 former participants in the Retirement Plan of Bon Secours Hampton Roads ("Hampton Roads Plan") who terminated employment after January 1, 2008 with more than three but fewer than five years of "vesting service" credit and had a positive account balance on January 1, 2016.** The Hampton Roads Plan has a cash balance formula which requires that a participant have five years of "vesting service" in order to be 100% vested in their benefits. Under ERISA, cash balance benefits must be 100% vested after three years of vesting service (one year of vesting service is 1,000 hours within a given calendar year). People in Group B left employment at Bon Secours Health System, Inc. after more than 3 years of vesting service, but fewer than 5 years of vesting service, and thus were not fully vested in their cash balance benefit according to the terms of the Hampton Roads Plan.

As consideration for Plaintiffs releasing their claim that the vesting schedule was improper, Defendants will pay $300,000 in total to the members of Group B. Plaintiffs and Defendants compromised on $300,000 to release the claim due to the difficulty in litigating this claim. The $300,000 will be distributed among the members in Group B on a proportional basis, depending on the amount accrued in each individual's cash balance account as of January 1, 2016. The payment that each Group B class member will receive under the Settlement therefore will vary from person to person. For the dollar amount of the award, you can call Lindsey Stiles at the following number: (202) 861-6602. This payment will be made after the Court issues its Final Approval Order in the case. For more details about Group B, see Section 3 of the Notice, as well as Section 7.1.2 of the Settlement Agreement, available at http://www.cohenmilstein.com/bon-secours-settlement.

**<u>Questions Regarding Group B Should Be Directed to the Claims Administrator</u>**

If you believe that you are not a member of Group B, you can call the Bon Secours Health System, Inc. Human Resources Operations Center at (804) 887-7600 or (855) 336-7600 (toll free). The Human Resources Operations Center can answer any questions you have regarding which Group you belong to. For the dollar amount of the award, you can call Lindsey Stiles at the following number: (202) 861-6602. If you have any questions regarding the Settlement Agreement, please contact Class Counsel at 202-408-4600 or 1-888-347-4600 (ask for Jamie Bowers). Do not contact the court regarding the Settlement, as court personnel cannot answer your questions.