**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)**

| | |
|---|---|
| ARLENE HODGES, et al.,       ) | |
|            ) | |
|          Plaintiffs,      ) | |
|            ) | Civil No. 1:16-cv-01079-RDB |
|       v.           ) | |
|            ) | |
| BON SECOURS HEALTH SYSTEM, INC., et al., ) | |
|            ) | |
|          Defendants.     ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED
MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT
OF EXPENSES AND FOR INCENTIVE AWARDS TO NAMED PLAINTIFFS**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. CLASS COUNSEL'S EFFORTS AND THE RESULTS OBTAINED .......................... 2

    A. Initial Investigation into the ERISA Church Plan Exemption. ............................. 3

    B. Class Counsel's Vigorous Prosecution of These Cases. ...................................... 5

    C. The Mediator Supervised Settlement Negotiations and Made a Mediator's Proposal on Attorneys' Fees. ................................................................................ 6

III. THE COURT SHOULD AWARD THE REQUESTED FEES AS A MEDIATOR-PROPOSED, MARKET-SET FEE AGREEMENT .................................. 8

IV. THE AWARD IS REASONABLE ........................................................................... 9

    A. The Requested Fees and Expenses Are Reasonable Under the Percentage-of-the-Fund Method. ........................................................................................... 9

        1. Results Obtained for the Class ............................................................. 11

        2. Quality, Skill, and Efficiency of Attorneys ........................................... 12

        3. Risk of Nonpayment .......................................................................... 12

        4. Objections .......................................................................................... 13

        5. Awards in Similar Cases ...................................................................... 13

        6. Duration and Complexity of the Case .................................................. 14

        7. Public Policy ...................................................................................... 14

    B. The Fee Award Is Reasonable Based on the Lodestar Method. ......................... 15

        1. Time and Labor Expended/Similar Complex Class Actions. ................. 16

        2. Attorneys' Opportunity Costs in Pressing the Litigation. ...................... 18

        3. The Customary Fee. ............................................................................ 19

V. THE COURT SHOULD AWARD THE REQUESTED EXPENSES .......................... 19

VI. THE COURT SHOULD AWARD THE REQUESTED INCENTIVE AWARDS ....... 20

VII. CONCLUSION .................................................................................................. 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arnold v. Burger King Corp.*,
  719 F.2d 63 (4th Cir. 1983) ................................................16

*Barber v. Kimbrell's, Inc.*,
  577 F.2d 216 (4th Cir. 1978) ..............................................15

*Berry v. Schulman*,
  807 F.3d 600 (4th Cir. 2015) ............................................8, 9

*Blum v. Stenson*,
  465 U.S. 886 (1984) ......................................................18, 19

*Boyd v. Coventry Health Care Inc.*,
  299 F.R.D. 451 (D. Md. 2014) ..................................15, 18, 20

*In re Continental Illinois Securities Litig.*,
  962 F. 2d 566 (7th Cir. 1992) ................................................8

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ..............................................20

*Decohen v. Abbasi, LLC, et al.*,
  299 F.R.D. 469 (D. Md. 2014) .................................19, 20, 21

*Deloach v. Phillip Morris Cos.*,
  No. 00-01235, 2003 WL 23094907 (M.D.N.C. Dec. 19, 2003) ............19

*Dignity Health v. Rollins*,
  137 S. Ct. 547 (Dec. 2, 2016) ................................................5

*Evans v. Jeff D.*,
  475 U.S. 717 (1986) ........................................................2, 8

*Fangman v. Genuine Title, LLC*,
  No. 14-0081, 2017 WL 86010 (D. Md. Jan. 10, 2017) ........................15

*In re Fine Paper Antitrust Litig.*,
  751 F. 2d 562 (3d Cir. 1984) ................................................8

*Goldenberg v. Marriott PLP Corp.*,
   33 F. Supp. 2d 434 (D. Md. 1998) (Messitte, J.) .................................................19

*Hensley v. Eckherhard*,
   461 U.S. 424 (1983) ..........................................................................................8, 15

*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ..........................................................................15, 16

*Jones v. Dominion Res. Servs., Inc.*,
   601 F. Supp. 2d 756 (S.D. W. Va. 2009) ...............................................................21

*Kaplan v. Saint Peter's Healthcare Sys.*,
   810 F.3d 175 (3d Cir. 2015) .....................................................................................4

*Kaplan v. Saint Peter's Healthcare Sys.*,
   No. 13-2941, 2014 WL 1284854 (D.N.J. Mar. 31, 2014) ........................................4

*Medina v. Catholic Health Initiatives*,
   No. 13-1249, 2014 WL 4244012 (D. Colo. Aug. 26, 2014) .....................................4

*In re Microstrategy, Inc.*,
   172 F. Supp. 2d 778 (E.D. Va. 2001) .....................................................................18

*Overall v. Ascension*,
   23 F. Supp. 3d 816 (E.D. Mich. 2014) .....................................................................4

*Overall v. Ascension Health*,
   No. 13-11396 (E.D. Mich. Sept. 17, 2015) ............................................................18

*Rollins v. Dignity Health*,
   19 F. Supp. 3d 909 (N.D. Cal. 2013) ........................................................................4

*Rollins v. Dignity Health*,
   830 F.3d 900 (9th Cir. 2016) ....................................................................................4

*Saint Peter's Healthcare Sys. v. Kaplan*,
   137 S. Ct. 546 (Dec. 2, 2016) ...................................................................................5

*Savani v. URS Prof'l Sols. LLC*,
   121 F. Supp. 3d 564 (D.S.C. 2015) .........................................................................21

*Spell v. McDaniel*,
   852 F.2d 762 (4th Cir.1988) ...................................................................................20

*Stapleton v. Advocate Health Care Network*,
   76 F. Supp. 3d 796 (N.D. Ill. 2014) ..........................................................................4

iii

*Stapleton v. Advocate Health Care Network*,
817 F.3d 517 (7th Cir. 2016) ..........................................................................4

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ..........................................................................20

**STATUTES**

26 U.S.C. § 414(e) ...........................................................................................3

29 U.S.C. § 1002(33) .......................................................................................3

ERISA ............................................................................................... *passim*

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure Rule 23(h)......................................................8, 19

Plaintiffs Arlene Hodges, Carolyn Miller, and Gary Brown ("Named Plaintiffs") respectfully file this memorandum in support of their motion for an Order[1] approving awards of attorneys' fees and expenses to their attorneys Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein")  Keller Rohrback L.L.P. ("Keller Rohrback"), Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz"), and Izard, Kindall and Raabe, LLP ("Izard Kindall"), and the grant of incentive awards to themselves as class representatives.

## I.        INTRODUCTION

Plaintiffs' counsel at the law firms of Cohen Milstein and Keller Rohrback developed the legal theories in this case after years of research and investigation into the history and application of the "Church Plan" exemption from the Employee Retirement Income Security Act ("ERISA").  After a year of active litigation in this case, the parties entered into a comprehensive Settlement Agreement that achieves an excellent result for the Settlement Class members.

Specifically, the Settlement[2] provides that Bon Secours Health System Inc. ("BSHSI") makes—over the course of the next seven years—a $98 million contribution to the seven defined benefit pension plans at issue ("Plans") that will benefit the participants in the Plans and their beneficiaries. The Settlement also offers many of the protections that current participants would have received if the case had been litigated to a conclusion and Plaintiffs had prevailed.  Finally, the Settlement provides $300,000 as monetary recovery for certain former participants. [3]

The requested fee award is the product of negotiation between the parties, which occurred only after the parties agreed on all other principal terms of the Settlement and the third-party

---

[1] A proposed order granting the relief sought herein is attached as Exhibit 2 ("Ex.") to Plaintiffs' Memorandum in Support of the Unopposed Motion for Final Approval of Settlement Agreement and Certification of Settlement Class ("Final Approval Motion"), filed contemporaneously herewith.

[2] A copy of the Settlement Agreement is attached to the Final Approval Motion as Ex. 1. The Settlement Agreement is referred to herein as "Settlement" or "Settlement Agreement." Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Settlement Agreement.

[3] The Settlement consideration is described in greater detail in Section II(C) of Plaintiffs' Memorandum in Support of the Motion for Final Approval, filed concurrently with this Motion; Plaintiffs incorporate this section by reference.

mediator (Robert Meyer, Esq.) made a mediator's proposal regarding the amount of attorneys' fees, expenses, and class representative incentive awards to Named Plaintiffs.   Defendants will not oppose a request for up to $3.5 million for attorneys' fees and expenses and incentive awards to Named Plaintiffs, subject to the Court's approval. Ex. 1 at § 7.1.4.  If awarded, **these amounts will in no way reduce the $98,300,000 in monetary recovery to the Settlement Class**, or otherwise abridge non-monetary relief. *Id.*

The parties to a class action may negotiate not only the settlement of the action, but also the payment of attorneys' fees. *Evans v. Jeff D.*, 475 U.S. 717, 734-35, 738 n. 30 (1986).   The negotiated fee satisfies the Court's standards for reasonableness of a fee request, whether analyzed as a percentage of a constructive common fund or with the lodestar-crosscheck method. As discussed below, the negotiated attorneys' fees, expenses, and Named Plaintiff awards are reasonable given (i) the work performed by Plaintiffs' Counsel, (ii) their skill and efficiency, (iii) the excellent results they obtained, (iv) the contingent and highly risky nature of the representation, and (v) the time and effort they expended while litigating this case, and which they will continue to devote in completing the settlement process. The requested fees and expenses are consistent with the benefits the Settlement confers on the Settlement Class; the negotiated award totals slightly more than 3.5% of the monetary component of the Settlement ($98,300,000); and the requested award represents a modest multiplier of 1.81 on the $1,898,930.50 lodestar that Class Counsel expended developing and pursuing this action against BSHSI and the other Defendants.  The requested incentive awards of $10,000 to each Named Plaintiff are also fair and reasonable in light of their substantial commitment of time and effort to the litigation, which made the Settlement possible.

## II.     CLASS COUNSEL'S EFFORTS AND THE RESULTS OBTAINED

As detailed in Karen Handorf's Declaration and *infra*, Plaintiffs' counsel committed considerable time and resources to develop and prosecute this matter—without any guarantee of payment. *See* Declaration of Karen Handorf in Support of (1) Plaintiffs' Unopposed Motion for

Final Approval of Settlement Agreement and Certification of Settlement Class; and (2) Plaintiffs' Motion for Awards of Attorneys' Fees and Expenses, and Incentive Awards to the Named Plaintiffs ¶¶ 46, 68  ("Handorf Decl."), submitted contemporaneously herewith.  This litigation involved extensive investigation of Plaintiffs' claims, review of publicly available financial information and confidential plan documents, motions practice regarding case consolidation and leadership, drafting of two consolidated amended complaints, and factual and legal research on the arguments put forth in Defendants' motion to dismiss, culminating in a highly favorable Settlement for Plaintiffs and the Class.  Handorf Decl. ¶¶ 19–22, 24.

## A.    Initial Investigation into the ERISA Church Plan Exemption.

This case is one of a number of cases pending around the country that challenge whether hospital systems like BSHSI are entitled to claim that their pension plans are exempt from ERISA as "Church Plans," as defined in 29 U.S.C. § 1002(33).  Cohen Milstein and Keller Rohrback, working together as co-counsel, developed this area of the law over the course of several years, with the assistance of the Pension Rights Center ("PRC"). Handorf Decl. ¶¶ 2, 13; *see also* Declaration of Lynn Sarko ¶ 2 ("Sarko Decl."). PRC is the main public interest organization concerned with pension rights.  Handorf Decl. ¶ 13. Through the PRC, Class Counsel learned that thousands of hospital employees were being denied ERISA's protections, including funding, vesting, and required disclosures, because hospitals claimed their defined benefit pension plans were exempt from ERISA as Church Plans.  *Id.*

Cohen Milstein and Keller Rohrback devoted many hours to researching the definition of a "Church Plan" found in both ERISA and the Internal Revenue Code, 29 U.S.C. § 1002(33) and 26 U.S.C. § 414(e), including analyzing the statutory text, its interaction with other provisions in the U.S. Code, the legislative history of the statute, and agency and court interpretations of the statute.  *Id.* ¶ 14. The teams at Cohen Milstein and Keller Rohrback concluded from their investigation that large hospital systems like BSHSI were improperly claiming the exemption for their defined benefit pension plans.  *Id.* ¶ 14.  Specifically, the firms concluded that there were

three independent and alternative statutory prerequisites for a plan to be a Church Plan – that it be "established" by a church, that it be "maintained" by either a church or a so-called "principal-purpose organization," and that the participants be employed by either a church or an entity "controlled by or associated with" a church, as those terms were defined under ERISA. *Id*. The firms concluded that with respect to a typical hospital pension plan, *none* of these requirements were met. *Id*.; Second Am. Compl. ¶¶ 5–11, ECF No. 77.

Cohen Milstein and Keller Rohrback also understood from their research that this Church Plan case and others challenged many years of private letter rulings from the IRS and informal Advisory Opinions of the Department of Labor, which determined that hospital systems like BSHSI operated pension plans that met the ERISA definition of "Church Plan." Handorf Decl. ¶ 15; Second Am. Compl. ¶ 36. They also knew that the defense would maintain that the small amount of Church Plan case law then in existence would favor a defense reading of the Church Plan exemption. Handorf Decl. ¶ 15. And they knew that once even a few of the cases were filed, the major hospitals claiming the exemption, which employ hundreds of thousands of people, would be arrayed against them. *Id*.

Nevertheless, Cohen Milstein and Keller Rohrback decided to take on this high-stakes, high-risk litigation; they were the only lawyers to do so at that time. *Id*. ¶ 16. The early results in the district courts were mixed,[4] but when the first three cases reached the appellate courts, Cohen Milstein and Keller Rohrback achieved unanimous rulings in favor of plaintiffs in the Third, Seventh, and Ninth Circuit.[5] *Id*. Those courts held that the hospital plans there at issue were not Church Plans because they were not established by a church; none of the courts reached the

---

[4] *Compare, e.g.*, *Kaplan v. Saint Peter's Healthcare Sys.*, No. 13-2941, 2014 WL 1284854 (D.N.J. Mar. 31, 2014); *Rollins v. Dignity Health*, 19 F. Supp. 3d 909 (N.D. Cal. 2013); *and Stapleton v. Advocate Health Care Network*, 76 F. Supp. 3d 796 (N.D. Ill. 2014), *with Overall v. Ascension*, 23 F. Supp. 3d 816 (E.D. Mich. 2014); *Medina v. Catholic Health Initiatives*, No. 13-1249, 2014 WL 4244012 (D. Colo. Aug. 26, 2014).
[5] *See Rollins v. Dignity Health*, 830 F.3d 900, 905 (9th Cir. 2016); *Stapleton v. Advocate Health Care Network*, 817 F.3d 517 (7th Cir. 2016); *Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015).

plaintiffs' alternative statutory arguments.  *Id.*  The defendants sought review in the United States Supreme Court, which was granted in December 2016.[6]  The Supreme Court reversed the holding of the three appellate courts, holding that a plan maintained by a "principal-purpose organization" qualifies as a "Church Plan," regardless of who established it.  *See Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1663 (2017) ("*Advocate*").

In the wake of the *Advocate* decision, Cohen Milstein and Keller Rohrback continue to pursue the plaintiffs' other arguments—which were expressly not reached by the Supreme Court in *Advocate*—that the pension plans of hospital systems like BSHSI are not Church Plans.  *See Advocate*, 137 S. Ct. at 1657 n.2, 1658 n.3 (stating that the Court would not reach plaintiffs' arguments regarding whether the plans at issue were maintained by principal-purpose organizations or whether the employer was "controlled by or associated with" a church); Handorf Decl. ¶ 17.  The Settlement could not have been achieved without the firms' total immersion in these issues and continual commitment to the participants of these plans.  Handorf Decl. ¶ 18.

**B.      Class Counsel's Vigorous Prosecution of These Cases.**

Before filing the Complaint in this case, Cohen Milstein and Keller Rohrback developed the legal theories in the case, consulted with constitutional experts and analyzed the facts relating to the Plans.  Handorf Decl. ¶ 19.  Cohen Milstein and Keller Rohrback examined documents related to the Plans, financial statements, and information supplied by the Plaintiffs themselves.  *Id*.  Cohen Milstein and Keller Rohrback used this research to carefully draft the 45-page Complaint filed in the District of Maryland against BSHSI, asserting eight counts against two Defendants (not including the Doe defendants).  *Id*.

One week after the initial Complaint was filed, a similar class action complaint was filed in the same district against the same Defendants; the plaintiff in that case was represented by

---

[6] *Dignity Health v. Rollins*, 137 S. Ct. 547 (Dec. 2, 2016); *Saint Peter's Healthcare Sys. v. Kaplan*, 137 S. Ct. 546 (Dec. 2, 2016); *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 546 (Dec. 2, 2016).

Kessler Topaz and Izard Kindall. *See Miller v. Bon Secours Health System, Inc.*, No. 1:16-cv-1150-RDB, ECF No. 1 (D. Md.). That complaint alleged nearly identical claims to the Complaint in this case—namely, that BSHSI was improperly operating seven of its defined benefit plans as Church Plans. *Id.* Cohen Milstein and Keller Rohrback moved, on behalf of Plaintiff Hodges, to consolidate the two ERISA actions and appoint Plaintiff Hodges as Interim Lead Plaintiff and Cohen Milstein and Keller Rohrback as Interim Co-Lead Counsel. ECF No. 19. After full briefing in both this case and the *Miller* case, which lasted approximately three months, the Court ultimately consolidated the two cases into the instant action, appointed Plaintiffs Hodges and Miller as Interim Lead Plaintiffs, and appointed Cohen Milstein as Interim Lead Class Counsel (hereinafter, "Class Counsel"[7]), directing Plaintiffs to file a Consolidated Amended Complaint. ECF No. 57.

Plaintiffs filed a Consolidated Amended Complaint on October 6, 2016. ECF Nos. 66, 69. On December 5, 2016, Defendants moved to dismiss the Consolidated Amended Complaint for lack of jurisdiction and failure to state a claim. ECF No. 70.

Plaintiffs then filed a Second Consolidated Amended Complaint with the consent of Defendants on January 13, 2017. ECF No. 77. The new Complaint rendered Defendants' motion to dismiss moot by the Court's Order. ECF No. 81. In the same Order, the Court also granted Plaintiffs' and Defendants' joint motion to stay the case pending the Supreme Court's decision in *Advocate*. *Id.*

**C.    The Mediator Supervised Settlement Negotiations and Made a Mediator's Proposal on Attorneys' Fees.**

The parties prepared for and participated in a formal mediation in New York on April 11, 2017, overseen by a third-party JAMS mediator, Robert Meyer, Esq. Handorf Decl. ¶ 23. Mr. Meyer has substantial experience mediating cases concerning ERISA and retirement plan issues,

---

[7] Though Cohen Milstein acted as sole lead Class Counsel pursuant to the Court's appointment, due to Cohen Milstein's co-counsel relationship with Keller Rohrback in other pending, related cases, Keller Rohrback consulted on this case when necessary. *See* Handorf Decl. ¶ 21; Sarko Decl. ¶ 3.

including cases involving the Church Plan exemption in ERISA. *Id.* The mediation date was just two weeks after the oral argument in *Advocate*, which counsel for both parties attended. *Id.* Prior to the formal mediation, both sides provided the mediator with their respective mediation statements, including the effect of the *Advocate* oral argument on the parties' respective positions. *Id.*

As described above, prior to and during these negotiations, Cohen Milstein and Keller Rohrback undertook a thorough investigation of the facts and relevant law related to this case, as well as to the broader Church Plan litigation ongoing in federal courts across the country. Handorf Decl. ¶¶ 19, 24. Class Counsel also received informal discovery regarding the Plans prior to mediation. *Id.* ¶ 24. As a result, Class Counsel was well informed about the strengths and weaknesses of the case.

Only after the parties reached agreement on the key terms for the Settlement Class did they turn to negotiations concerning attorneys' fees. Handorf Decl. ¶ 27. All of the negotiations were overseen by the mediator, Mr. Meyer. *Id.* Ultimately, Mr. Meyer assisted the parties in reaching an agreement on attorneys' fees by making a mediator's proposal. *Id.* The parties accepted this proposal, subject to the Court's approval. *Id.*

After memorializing the central provisions of the Settlement in a Term Sheet, Class Counsel drafted and filed the Settlement Agreement and Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement. ECF No. 90. The Court preliminarily approved the Settlement on July 10, 2017. ECF No. 107.

Pursuant to the Preliminary Approval Order, United Forms Finishing Corporation ("UFF") mailed the Class Notice on September 8, 2017 to 27,940 current and former Plan participants, and Class Counsel posted the Notice on their website. Handorf Decl. ¶ 33; UFF Affidavit ("UFF Aff.") ¶ 6. As of October 12, 2017, Class Counsel has received and responded to phone calls and e-mails from 112 Class members. Handorf Decl. ¶ 34. Class Counsel will continue to devote substantial time to answering inquiries from Class members regarding the Settlement. Accordingly, Class Counsel request an award of attorneys' fees and expenses for the

significant time they have devoted to this case, and an award of $10,000 to each of the Named Plaintiffs for their services to the Class in pursuing this case.

### III.    THE COURT SHOULD AWARD THE REQUESTED FEES AS A MEDIATOR-PROPOSED, MARKET-SET FEE AGREEMENT

The parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees. *Evans v. Jeff D.*, 475 U.S. 717, 734–35, 738 n.30 (1986).  The Supreme Court has made clear that settlements of attorneys' fee requests should be encouraged and respected, and that "[a] request for attorney's fees should not result in a second major litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.").  Rule 23(h) of the Federal Rules of Civil Procedure specifically authorizes the Court to award "reasonable attorney's fees and nontaxable costs . . . by the parties' agreement."

The Seventh Circuit observed that there ought to be a presumption of reasonableness where there has been an adversarial negotiation of attorneys' fees (by defendants who must pay the fee and want to minimize the payment and on behalf of lawyers who wish to receive it) because the negotiated amount acts as a market check on the propriety of the fee.  *In re Continental Illinois Securities Litig.*, 962 F. 2d 566, 573 (7th Cir. 1992).  Where the parties agree as to the amount of attorneys' fees, "the court can, [generally,] assume that the defendants closely scrutinized the [plaintiffs'] fee requests, and agreed to pay no more than was reasonable." *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 582 (3d Cir. 1984).

Recently, in *Berry v. Schulman*, the Fourth Circuit explained that where "class counsel's fee is to be paid entirely by [defendant]," a court's scrutiny of a fee award should be diminished because the requested fees do not reduce the class's overall recovery. 807 F.3d 600, 618, n.10 (4th Cir. 2015).  In *Berry*, the Fourth Circuit further noted that because class counsel negotiated their fee with defendants only *after* the substantive terms of settlement had been achieved, it was "far less likely that counsel could have traded off the interests of class members to advance their own ends."  *Id.*; *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 570 (7th Cir. 1992)

(the virtue in the negotiation of attorneys' fees by the adversarial parties to the settlement is that the "[m]arkets know market values better than judges do.").

Like in *Berry*, here the fees were negotiated after agreement was reached on the key terms of the Settlement for the Class; a well-respected, neutral mediator oversaw the negotiations; and the fees were based upon the mediator's proposal. Given that this agreement has been closely scrutinized by all sides—Plaintiffs, Defendants, and the mediator—the requested fee should be approved.

## IV.     THE AWARD IS REASONABLE

The requested fee is reasonable under both of the two approaches used to assess reasonableness of fees in the Fourth Circuit:  (1) percentage of the fund; and (2) lodestar plus a risk multiplier.  *Fangman v. Genuine Title, LLC*,  No. RDB-14-0081, 2017 WL 86010, at *3 (D. Md. Jan. 10, 2017) ("There are two primary methods of calculating attorneys' fees: the lodestar method and the 'percentage of recovery' method.") (quoting *Whitaker v. Navy Fed. Credit Union*, No. RDB-09-2288, 2010 WL 3928616, at *4 (D. Md. Oct. 4, 2010) (Bennett, J.)).   The goal of both methods is to ensure that "counsel is fairly compensated."  *Singleton v. Domino's Pizza, LLC*, 976. F. Supp. 2d 665, 681 (D. Md. 2013).[8]  Because the requested fees and expenses are reasonable under either method, Class Counsel's petition should be granted.

**A.     The Requested Fees and Expenses Are Reasonable Under the Percentage-of-the-Fund Method.**

The percentage-of-the-fund method may be used to cross-check a negotiated fee amount. *See, e.g.*, *Fangman*, 2017 WL 86010, at *3.  This method "involves an award based on a percentage of the class recovery, set by the weighing of a number of factors by the court." *Id.* (quoting *Whitaker*, 2010 WL 3928616, at *4).

Although the requested fee award will be paid separately from the Settlement amount, the percentage-of-the-fund method may still be used to assess the reasonableness of the requested

---

[8] The Fourth Circuit has not yet endorsed one method over the other.  *Singleton*, 976 F. Supp. 2d at 681.

award because the settlement benefits and the negotiated attorneys' fees can create a "constructive common fund" when they are negotiated from the same source. *Fangman*, No. RDB-14-0081, ECF No. 411 at 9–11 (D. Md. Nov. 8, 2016). As this Court noted in *Fangman*, several United States Courts of Appeals have endorsed the use of the percentage-of-the-fund method of assessing reasonable attorneys' fees when the fees come from the same source as the class members' settlement benefits. *See Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

The award sought here is a total of up to $3.5 million total for attorneys' fees, expenses, and incentive awards for the three Named Plaintiffs. In comparison, the total amount of monetary compensation to the Settlement Class is $98.3 million. The requested award represents 3.56% of the readily-quantifiable monetary component of the settlement, which is far below fees typically awarded in Fourth Circuit courts. *See Lann v. Trinity Health Corporation*, No. 8:14-cv-2237, ECF No. 111 (D. Md. May 31, 2017) ("*Trinity*") (approving attorneys' fees constituting just over 10% of monetary relief to the Class); *Fangman*, 2017 WL 86010, at *3 (granting attorneys' fees constituting 25% of monetary relief to Class); *Boyd v. Coventry Health Care Inc.,* 299 F.R.D. 451, 465 (D. Md. 2014) (noting that courts compare percentages awarded in cases of similar size, finding that "under the 'percentage-of-recovery' method in settlements under $100 million, [attorneys' fees] have ranged from 15% to 40%") (citation omitted); Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008,* 7 J.Emp.L.Studies 248, 265 T.7 (June 2010) (attorneys' fees in cases with recovery between $69.6 million and $175.5 million range from 19.4% to 19.9%).

Although the Fourth Circuit has not designated factors for courts to apply under the "percentage of the fund method," district courts in this Circuit typically use the following seven factors: (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and

duration of the case; and (7) public policy. *Fangman*, 2017 WL 86010, at *3–4 (citing *Singleton*, 976 F. Supp. 2d at 682). Here, these factors all support award of the requested fee.

### 1.    Results Obtained for the Class

In the Fourth Circuit, "the most critical factor in calculating a reasonable fee award is the degree of success obtained." *McDonnell v. Miller Oil Co.,* 134 F.3d 638, 641 (4th Cir. 1998) (citation and internal quotation omitted). Given that the Settlement closely approximates the protections that the Class would have received at judgment, it cannot be disputed that Class Counsel has obtained excellent results for Plaintiffs and the proposed Settlement Class.

The Settlement provides substantial monetary and equitable consideration for the Class. The $98 million contribution to the Plans represents the collective underfunding of the Plans on an ERISA basis at the time of negotiations. Handorf Decl. ¶ 8. This contribution directly benefits all current participants in the Plans, "Group A" in the Settlement, because it enhances the fund from which their benefits will be paid. *Id.* Class Counsel also negotiated for a $300,000 total payment to certain former participants, "Group B," who did not vest in the Bon Secours Hampton Roads Plan due to a vesting schedule that was not compliant with ERISA. *Id.* Outside of monetary consideration, the participants in the Plans will receive certain ERISA-like protections through August 31, 2025, including the guarantee that should the Plans not have sufficient funds to pay participants' accrued benefits during that time period, BSHSI will supplement the assets of the trust fund, assuring all accrued benefits are paid. *Id.* Lastly, the Settlement also protects the Plans' participants by providing ERISA-like provisions regarding plan administration and the Plans' claim review procedure, in addition to requiring BSHSI to provide summary plan descriptions and annual summaries, pension benefits statements, and current benefit value statements to participants. *Id.* In short, the Settlement offers protections similar to what the Class would have received following a favorable judgment. *Id.* Therefore, this factor weighs in favor of approving the requested fee.

### 2.  Quality, Skill, and Efficiency of Attorneys

Cohen Milstein is among the leading ERISA plaintiffs' firms and possess unparalleled expertise in the specific types of ERISA claims brought in this lawsuit. Handorf Decl. ¶¶ 37–42; Ex. A to Handorf Decl. (resume of Cohen Milstein).  As this Court noted when appointing Cohen Milstein as lead counsel over competing counsel, Class Counsel "have the most experience litigating this complicated issue of statutory and constitutional interpretation."  ECF No. 57 (citing counsel's success in the Circuit courts and the pending cases before the U.S. Supreme Court).[9]

Moreover, Class Counsel litigated this action in an efficient manner.  Class Counsel were able to negotiate a Settlement with protections similar to what the Class would receive following a favorable judgment, and the Settlement Agreement was executed only slightly over a year after the case was filed.  The swift compromise resolution of the case benefits the Class and emphasizes the skill and efficiency of Class Counsel.  This factor also weighs in favor of approval of the requested fees.

### 3.  Risk of Nonpayment

From the outset, Class Counsel litigated this matter on a contingent basis and placed at risk their own resources to do so.  Absent this Settlement, the Settlement Class and their counsel risked obtaining no recovery at all.  The contingent nature of these cases therefore favors the award of fees. *See Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 482 (D. Md. 2014) ("public policy favors the requested award" where risk of non-payment exists "because the relevant public policy considerations involve the balancing of the policy goals of encouraging counsel to pursue meritorious … litigation.") (citation and internal quotations omitted);  *In re Royal Ahold N.V.*

---

[9] Defense counsel similarly are well-respected and experienced.  *See, e.g.*, Groom Law Group, Chartered, *Church Plans*, http://www.groom.com/assets/pdf/area_72.pdf (including several publications by Groom on the state of the law surrounding Church Plan litigation). Given this formidable opposition, a high level of experience was required for success. *See, e.g.*, *In re Royal Ahold N.V. Securities & ERISA Litig.*, 461 F. Supp.2d at 387 (Class Counsel competence in conjunction with highly qualified defense counsel weighs in favor of awarding requested attorneys' fees).

*Securities & ERISA Litig.,* 461 F. Supp.2d 383, 387 (D. Md. 2006) (granting lodestar with 2.57 multiplier where, despite finding case not "undesirable," contingent nature of representation resulted in class counsel "devot[ing] exceptional resources to the prosecution, facing some risk of non-recovery").

### 4.  Objections

Although the objection date has not yet run, so far no material objections to the attorneys' fees, expenses or incentive awards have been filed.  Handorf Decl. ¶ 35.  Class Counsel will respond to any objections filed after this petition but before the objection deadline in their reply in support of final approval.

### 5.  Awards in Similar Cases

Courts approving fee requests in other Church Plan settlements have approved awards similar to the award requested here.  In *Trinity*, the Court approved a fee award of $7.885 million for expenses, attorneys' fees, and incentive payments.  *Trinity*, No. 8:14-cv-2237, ECF No. 111. The total monetary consideration to the *Trinity* class was $76,650,400, and the Class members received the same ERISA-like protections as the Class in this case.  *See* Ex. C to Handorf Decl., ¶ 15.  In *Griffith v. Providence Health & Servs.*, No. C14-1720-JCC, ECF No. 69 (W.D. Wash. Mar. 21, 2017) ("*Providence*"), the Western District of Washington approved a $6.5 million award to compensate Class Counsel for expenses, work performed, and an award for Named Plaintiffs.  The Settlement consisted of $351.9 million in monetary relief and similar equitable ERISA-like protections to the protections received in this case.  *See* Ex. D to Handorf Decl., ¶ 18.  Finally, in *Overall v. Ascension Health*, No. 2:13-cv-11396, ECF No. 115 (E.D. Mich. September 17, 2015), the Eastern District of Michigan approved a $8 million settlement and $2 million in attorneys' fees, expenses and incentive awards.  *See* Ex. E to Handorf Decl., ¶ 8.  The requested fee award in this case is on par with the fee awards approved in other Church Plan cases.

6.      **Duration and Complexity of the Case**

As noted, this area of law is a rapidly developing area of ERISA jurisprudence.  The first Church Plan cases were filed in March 2013 and three of those cases reached the Supreme Court only four years later.  Handorf Decl. ¶ 16–17.  The Supreme Court reversed the holdings of the Third, Seventh and Ninth Circuit Courts, holding that plan that is maintained by a principal-purpose organization qualifies as a Church Plan, regardless of who established the Plan.  *Id.* ¶ 17. The Supreme Court expressly did not address the plaintiffs' remaining arguments; those theories are currently being litigated in multiple district courts and in the Tenth Circuit Court of Appeal.[10] Because of the continuously developing law around the Church Plan exemption and the uncertainty that existed throughout the litigation of this action, Class Counsel needed a high degree of legal skill, both to settle the matter and to be prepared to litigate the issues through trial and on appeal, if necessary.  Class Counsel's experience handling the most prominent Church Plan cases and their complete immersion on the issue helped them successfully advance this case and procure a beneficial result for the Class.  The complex nature of this case warrants approval of the requested fee award.

7.      **Public Policy**

When assessing the reasonableness of attorneys' fees award in a class action settlement, the "court must strike the appropriate balance between promoting the important public policy that attorneys continue litigating class action cases that 'vindicate rights that might otherwise go unprotected,' and perpetuating the public perception that 'class action plaintiffs' lawyers are overcompensated for the work that they do."  *Fangman*, 2017 WL 86010, at *6 (citing *Singleton*, 976 F. Supp. 2d at 687).  This case does not raise serious public policy concerns, as no Class members have presently objected to the requested fee and the attorneys' fees were negotiated separately from the Class settlement benefits; accordingly, this factor supports approval of the requested award.

In sum, the seven factors that district courts in the Fourth Circuit use to assess the

---

[10] *Medina v. Catholic Health Initiatives*, No. 16-1005 (10th Cir.)

reasonableness of a fee award all weigh in favor of approving the requested award; accordingly, the Court should find that the requested fee is reasonable under the percentage-of-the-fund method and should be awarded.

**B.      The Fee Award Is Reasonable Based on the Lodestar Method.**

The lodestar method can also be used to cross-check a negotiated fee amount.  *Fangman*, 2017 WL 86010, at *3 ("using the percentage of fund method and supplementing it with the lodestar cross-check ... take[s] advantage of the benefits of both methods.") (internal quotations and citations omitted); *Boyd,* 299 F.R.D. at 467 ("The purpose of a lodestar cross-check is to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the lodestar") (citation omitted).  After examining the time and labor required, the Court may apply a multiplier to the lodestar.  The Fourth Circuit has expressly adopted the criteria established in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), *abrograted on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989), for determining the reasonableness of the hours and rate claimed.  *See Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n.28 (4th Cir. 1978).  The twelve *Johnson* factors are as follows:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney[s]; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.*  In conducting this analysis, the Fourth Circuit has noted that

> the district court is not required to engage in a lengthy discussion concerning what portion of the award is attributable to [which *Johnson*] factor … [for], as the United States Supreme Court noted in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), many of the *Johnson* factors "are subsumed with the initial calculation of hours reasonably expended at a reasonably hourly

rate and need not be further considered at all"

*Arnold v. Burger King Corp.,* 719 F.2d 63, 67 n.4 (4th Cir. 1983).

The lodestar method confirms the reasonableness of Plaintiffs' fee request. Class Counsel and the other firms expended a total of 3,265.75 hours developing and prosecuting this case. Handorf Decl. ¶ 48, Ex. B to Handorf Decl. (summary of Cohen Milstein attorneys' fees); Sarko Decl. ¶ 6, Ex. A to Sarko Decl. (summary of Keller Rohrback attorneys' fees); Declaration of Mark Gyandoh ¶ 4 ("Gyandoh Decl.") (summary of Kessler Topaz attorneys' fees); Declaration of Mark Kindall ¶ 4 ("Kindall Decl.") (summary of Izard Kindall attorneys' fees). At Class Counsel's and the other firms' hourly rates, which are comparable to those of other class action attorneys, this amounts to a combined lodestar of $1,898,930.50.[11] Handorf Decl. ¶ 48. Plaintiffs' requested fee of $3,434,820.29 (the total request of $3.5 million less expenses and incentive awards for Named Plaintiffs) amounts to a modest 1.81 multiplier on the combined lodestar of $1,898,930.50. *Id.* This multiplier is warranted under the pertinent *Johnson* factors discussed below.[12]

### 1.    Time and Labor Expended/Similar Complex Class Actions.

The 3,265.75 hours the firms collectively expended on these cases were reasonably spent, especially given the high-stakes, high-risk nature of this litigation and the excellent results obtained. Handorf Decl. ¶ 48; Sarko Decl. ¶ 4; Gyandoh Decl. ¶ 3; Kindall Decl. ¶ 3. Class Counsel: (1) learned of the widespread use of the Church Plan exemption by major hospital

---

[11] Summaries of the professional time and expenses advanced in the prosecution of this action by Cohen Milstein, Keller Rohrback, Kessler Topaz, and Izard Kindall included in Ex. B to the Handorf Decl., Ex. A to the Sarko Decl., Gyandoh Decl. ¶¶ 4–5, and Kindall Decl. ¶¶ 4–5. If the Court would like to review the detailed daily time records of the firms in connection with this motion, the firms would request to submit such records under seal in order to protect the confidential attorney work product reflected therein.

[12] Several of the *Johnson* factors overlap with or are nearly identical to the seven factors applied under the percentage-of-the-fund method. Accordingly, this footnote cross-references the factors similar to the *Johnson* factors to avoid duplicative argument : (1) results obtained for the class, *supra* section IV(A)(1); (2) the novelty and difficulty of the questions asked and the skill required, *supra* section IV(A)(2) and (6); (3) the attorneys' expectations at the outset of the case, *supra* section IV(A)(3); (4) the experience, reputation, and ability of the attorneys, *supra* section IV(A)(2); and (5) awards in similar cases, *supra* section IV(A)(5).

chains to avoid compliance with ERISA; (2) researched the law bearing on the Church Plan exemption and concluded large hospital systems were not entitled to the exemption; (3) investigated the non-profit hospital business as it bore on liability and defenses; (4) investigated the facts of this case, and drafted and filed the Complaint; (5) reviewed hundreds of pages of documents, including publicly available information about the plans and confidential production from Defendants; (6) conducted factual and legal research; (7) engaged in motion practice to consolidate the *Hodges* action with the *Miller* action, appoint interim lead counsel, and appoint interim lead plaintiffs; (8) amended the Complaint twice, first to provide a consolidated amended complaint and second to respond to a motion to dismiss;  (9) propounded a request for production; (10) monitored developments in all the Church Plan cases in order to determine the impact on this case; (11) negotiated and crafted a comprehensive Settlement Agreement after arm's-length negotiations overseen by a third-party mediator; (12) successfully moved for preliminary approval of the Settlement; (13) drafted the Class Notice materials and posted them on a dedicated settlement website; and (14) responded to class member inquiries concerning the Class Notices, the Settlement, and this litigation.  *See* Handorf Decl. ¶ 36. Moreover, Class Counsel's work is not yet done.  Class Counsel still need to complete the final approval process, assist class members with inquiries, respond to any potential objections, and handle any resulting appeal.  *Id.*

The hourly rates Class Counsel charged to perform this work, which range from $250 to $940 per hour, are reasonable.[13]  *See* Handorf Decl. ¶¶ 55–62, Ex. B to Handorf Decl.; Sarko

---

[13] Appendix B to the Local Rules for this District sets out Guidelines for Hourly Rates. *See* Local Rules Appendix B (D. Md. 2016).  But as this Court recognizes, rates higher than those suggested by the Guidelines are appropriate when the attorneys have extensive, specialized experience litigating a particular type of action.  *See Whitaker*, 2010 WL 3928616, at *6 (determining that a reasonable hourly rate was higher than the rates suggested by Appendix B because the attorney had a "wealth of experience in litigating class actions under federal consumer protection statutes."); *see also McDaniels v. Westlake Servs., LLC*, No. ELH-11-1837, 2014 WL 556288, at *14 (D. Md. Feb. 7, 2014) (approving rates higher than those set out in Appendix B, noting that the Guidelines only provide "practical guidance" and are not binding). And as discussed *infra*, the rates here have been consistently approved for Class Counsel's work in other Church Plan cases.

Decl. ¶¶ 4–8, Ex. A to Sarko Decl.; Gyandoh Decl. ¶ 3; Kindall Decl. ¶ 3. These rates are "prevailing market rates," for similar services by lawyers of "reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984). The reasonableness of these rates is evidenced by other cases approving similar rates. *See, e.g.*, *Boyd,* 299 F.R.D. at 467 (2014 case using attorney rates of $325 to $700, and paralegal rates of $175 to $250 in lodestar cross-check); *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001) (approving rates high for district, finding "where the market for class action attorneys is nationwide and populated by very experienced attorneys with excellent credentials" the hourly rates charged by counsel, are "within the range of reasonableness").

In addition, Class Counsel recently submitted fee petitions in other Church Plan cases in which they reported hourly rates identical to those sought herein, and courts approved the fee awards (including a 2017 case in the District of Maryland). *See Trinity*, Pls.' Memorandum in Support of Motion for Attorney Fees and Expenses, and Incentive Fees to Named Plaintiffs, No. 8:14-cv-2237, ECF No. 103-1 (D. Md. May 31, 2017); Ex. C to Handorf Decl. (*Trinity* Order Finally Approving Class Settlement ¶ 10 (approving attorneys' fees at identical rates as sought here)); *Providence*, Pls.' Motion for Attorney Fees and Expenses, and Incentive Fees to Named Plaintiffs, No. 14-01720, ECF No. 57 (W.D. Wash. Feb. 3, 2017); Ex. D to Handorf Decl. (*Providence* Order Finally Approving Class Settlement ¶ 10 (approving attorneys' fees at identical rates as sought here)); *see also Overall v. Ascension Health,* Pl.'s Mot. for Awards of Att'ys' Fees, Expenses & Incentive Fee, No. 13-11396, ECF No. 97 (E.D. Mich. Aug. 17, 2015); Ex. E to Handorf Decl. (Order and Final Judgment ¶ 8 (approving fees at similar rates)).

## 2.     Attorneys' Opportunity Costs in Pressing the Litigation.

As noted above, the litigation and negotiated settlement of this case required a substantial amount of time. Immediately after the case was filed, Class Counsel engaged in time-consuming motion practice to consolidate a similar case filed in the District of Maryland and appoint interim lead counsel and interim lead plaintiff. After appointment of interim lead counsel, Class Counsel

filed two Consolidated Amended Complaints, conducted legal and factual research to oppose Defendants' motion to dismiss, and requested and reviewed informal discovery regarding the BSHSI Plans in preparation for mediation.  Even while this case was stayed, Class Counsel monitored the developments in the other pending Church Plan cases, and informed the Named Plaintiffs of those developments.  Handorf Decl. ¶¶ 36, 70.  Class Counsel navigated a contentious Settlement negotiation process and crafted a Settlement Agreement that was fair and reasonable for the Class.  *Id*. ¶ 8, 26.  After reaching agreement on the principal terms of the Settlement with Defendants, the parties continued to negotiate over the details of the Settlement Agreement for over a month before both parties were satisfied.  Consequently, the substantial amount of time spent on this litigation precluded Class Counsel from accepting other potentially profitable work.

### 3.      The Customary Fee.

The modest multiplier of 1.81 requested by Class Counsel falls well within the range of multipliers approved by Fourth Circuit courts.  *See Fangman*, 2017 WL 86010, at *7 ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.") (quoting *Singleton*, 976 F. Supp. 2d at 689); *Decohen*, 299 F.R.D. at 483 (same); *Deloach v. Phillip Morris Co.*, No. 1:00-cv-01235, 2003 WL 23094907, at *10–11 (M.D.N.C. Dec. 19, 2003) (approving multiplier of 4.45 given superior result for Class); *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 439, n. 6 (D. Md. 1998) (lodestar within 3 – 4.5 range appropriate).

Altogether, the relevant *Johnson* factors demonstrate that the 1.81 multiplier requested by Class Counsel is reasonable and should be awarded.

### V.      THE COURT SHOULD AWARD THE REQUESTED EXPENSES

This Court may award reasonable expenses authorized by the parties' agreement. Fed. R. Civ. P. 23(h). Trial courts may determine what is reasonable based on an objective standard of reasonableness, *i.e.*, the prevailing market value of services rendered. *Blum*, 465 U.S. at 895. The

Fourth Circuit has explained that such costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir.1988).

Here, based on the Declarations of attorneys Handorf, Sarko, Gyandoh and Kindall filed contemporaneously herewith, Class Counsel requests reimbursement for common and routinely reimbursed litigation expenses incurred by Class Counsel and the other firms in the amount of $35,179.71. Handorf Decl. ¶ 64–66, Ex. B to Handorf Decl. (summary of Cohen Milstein expenses); Sarko Decl. ¶ 9, Ex. A to Sarko Decl. (summary of Keller Rohrback expenses); Gyandoh Decl. ¶ 5 (summary of Kessler Topaz expenses); Kindall Decl. ¶ 5 (summary of Izard Kindall expenses).[14] This request is reasonable and should be approved. *Decohen,* 299 F.R.D. at 483 (finding costs such as those sought here necessary in class litigation).

## VI.   THE COURT SHOULD AWARD THE REQUESTED INCENTIVE AWARDS

Class Counsel respectfully requests that the Court approve an award of $10,000 to each of the three Named Plaintiffs. These stipends do not affect or reduce the benefits to the Class in any way and will be paid solely out of the allocation of $3.5 million that Defendants will not oppose as attorneys' fees, expenses and incentive awards. *See* Ex. 1 §§ 7.1.4–7.1.5.

It is well-recognized that "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Boyd,* 299 F.R.D. at 468 (quoting *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)); *see also Decohen,* 299 F.R.D. at 483 ("named plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). Such enhancements compensate class representatives

---

[14] The expenses incurred prosecuting this complex class action include filing fees; travel expenses, court appearances and mediation; copying, delivery and telecommunications charges; computer legal research charges; mediator's charges; and similar litigation expenses. These expenses are typically billed by attorneys to paying clients, and are calculated based on the actual expenses of these services in the markets in which they have been provided. Class Counsel maintain appropriate back-up documentation for each expense. Handorf Decl. ¶ 64; Sarko Decl. ¶ 9.

for their time, effort, and inconvenience. *Decohen,* 299 F.R.D. at 483.  Here, each of the Named Plaintiffs made substantial contributions to the litigation, including: collecting and producing documents; maintaining regular contact with Class Counsel; reviewing and approving the Complaints; staying abreast of the pleadings, motions, and settlement negotiations; and involving themselves in the mediation and settlement of this litigation.  Handorf Decl. ¶ 70. The requested $10,000 incentive award to each Named Plaintiff is consistent with awards made by other courts in the Fourth Circuit.  *See, e.g.*, *Savani v. URS Prof'l Sols. LLC,* 121 F. Supp. 3d 564, 577 (D.S.C. 2015) (awarding incentive award of $15,000, and finding that "[a] substantial incentive award is appropriate in this complex ERISA case given the benefits accruing to the entire class in part resulting from [class representative's] efforts); *Decohen,* 299 F.R.D. at 483 (awarding $10,000); *Jones v. Dominion Res. Servs., Inc.,* 601 F. Supp. 2d 756, 767–68 (S.D. W. Va. 2009) (awarding $15,000).  Moreover, a $10,000 incentive award was recently granted to the Named Plaintiffs in a similar Church Plan case in the District of Maryland.  *Trinity,* No. 8:14-cv-2237, ECF No. 111 ¶ 11 (order finally approving the settlement and approving a $10,000 incentive award to each Named Plaintiff).

As the Court no doubt appreciates, the activities of these Plaintiffs required a considerable investment of time.  But, even more importantly, this responsibility demanded attention and anxiety that no other class members had to shoulder.  By stepping forward, each Named Plaintiff greatly benefitted the members of the Settlement Class and thus the requested awards to Named Plaintiffs are appropriate.

## VII.   CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiffs' motion for an award of attorneys' fees, reimbursement of expenses, and incentive awards for the Named Plaintiffs.  A proposed order granting the relief sought herein is attached as Ex. 2 to the Final Approval Motion.

Dated: October 13, 2017

Respectfully submitted,

COHEN MILSTEIN SELLERS & TOLL PLLC


/s/ Julia Horwitz

Julia Horwitz (MD Bar #19841)
Karen L. Handorf (admitted *pro hac vice*)
Mary J. Bortscheller (admitted *pro hac vice*)
Jamie Bowers (admitted *pro hac vice*)
1100 New York Avenue, N.W.
Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
Email: jhorwitz@cohenmilstein.com
khandorf@cohenmilstein.com
mbortscheller@cohenmilstein.com
jbowers@cohenmilstein.com


**Counsel for Plaintiffs**

## **CERTIFICATE OF SERVICE**

I certify that on October 13, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ Julia Horwitz
Julia Horwitz